**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| ST. MARGARET'S HEALTH-PERU and ST. MARGARET'S HEALTH - SPRING VALLEY, | ) | Case no. 23-11641 (Jointly Administered) |
| | ) | |
| Debtor-in-Possession. | ) | Hon. David D. Cleary |
| | ) | |
| | ) | Hearing Date: March 27, 2024 |
| | ) | Hearing Time: 10:00 a.m. |

**NOTICE OF MOTION TO CONVERT CHAPTER 11**
**CASE TO CHAPTER 7 CASE AND TO LIMIT NOTICE**

PLEASE TAKE NOTICE that on Wednesday, March 27, 2024 at 10:00 a.m., I will appear before the Honorable David D. Cleary, or any judge sitting in that judge's place, **either** in Courtroom 644 of the Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, **or** electronically as described below, and present the *Motion to Convert Chapter 11 Case to Chapter 7 Case and to Limited Notice*, a copy of which is available through the Debtors' claims and noticing agent's website (https://dm.epiq11.com/case/stmargarets/dockets) or may be requested from the undersigned counsel via email.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet,** go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and password**. The meeting ID for this hearing is **161 122 6457** and the passcode is **Cleary644**. The meeting ID and passcode can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

DATED: March 6, 2024 By: */s/ Nathan Q. Rugg*

Nathan Q. Rugg (ARDC No. 6272969)
Stanley F. Orszula (ARDC No. 6257162)
Alexander F. Berk (ARDC No. 6329444)
John Andreasen (ARDC No. 6332408)
Barack Ferrazzano Kirschbaum
& Nagelberg LLP
200 West Madison Street, Suite 3900
Chicago, IL 60606
(E) nathan.rugg@bfkn.com
(E) stan.orszula@bfkn.com
(E) alexander.berk@bfkn.com
(E) john.andreasen@bfkn.com
(T) (312) 984-3100
(F) (312) 984-3150

*Attorneys for Spring Valley City Bank*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ST. MARGARET'S HEALTH – PERU and ST. MARGARET'S HEALTH – SPRING VALLEY, | ) | Case No. 23-11641 (Jointly Administered) |
| | ) | Honorable David D. Cleary |
| Debtors. | ) | |

**MOTION TO CONVERT CHAPTER 11 CASE**
**TO CHAPTER 7 CASE AND TO LIMIT NOTICE**

Secured creditor Spring Valley City Bank ("SVCB"), through its undersigned counsel and for its *Motion to Convert Chapter 11 Case to Chapter 7 Case and to Limit Notice* (the "Motion") respectfully states as follows:

## I. Preliminary Statement

1. Creditors of St. Margaret's Health – Peru ("SMH-Peru") and St. Margaret's Health – Spring Valley ("SMH-Spring Valley" and with SMH-Peru, the "Debtors") no longer benefit from the chapter 11 cases commenced on August 31, 2023 (the "Bankruptcy Cases") continuing in chapter 11. The Bankruptcy Cases require only one fiduciary with one set of professionals to liquidate the assets remaining in the Debtors' estates (the "Estates").

2. The Debtors had no operations as of the filing of the Bankruptcy Cases, which were filed solely to liquidate assets from the outset. While significant progress towards that limited goal was made in the first few months of the Bankruptcy Cases, the liquidation efforts have stalled while professional fees and other administrative expenses related to the remaining assets have continued accruing, leaving the Estates without sufficient liquidity to timely pay the substantial expenses incurred to date. In lieu of debtors-in-possession and a creditors committee with a

combined six sets of professionals, a chapter 7 trustee will be best positioned to expeditiously and more efficiently liquidate assets and distribute the proceeds to creditors, rendering conversion in the best interests of all creditors. Accordingly, SVCB now moves to convert the Bankruptcy Cases from chapter 11 to cases under chapter 7.

## II. Jurisdiction and Venue

3. The United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court") has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334(a). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The statutory predicates for relief are 11 U.S.C. §§ 105(a) and 1121(b)(1) (the "Bankruptcy Code") and section 2002(a)(4) of the Federal Rules of Bankruptcy Procedure.

## III. Background

5. The Debtors ceased operating **months** before commencing the Bankruptcy Cases on August 31, 2023 (the "Petition Date"). *Declaration of Timothy A. Muntz in Support of Chapter 11 Cases and First-Day Motions* [Dkt. No. 23] (the "Muntz Declaration"), ¶ 50. Similarly, the Debtors entered into an asset purchase agreement for the sale of the majority of the Estates' assets (i.e. the "OSF Sale" described below) on or about June 13, 2023. *Id.*, ¶¶ 37–39.

6. As described in greater detail in the Muntz Declaration, two of the Bankruptcy Cases' principal purposes were to "effectuate with all dispatch a sale of the Peru Hospital (and certain other assets) and resume much needed healthcare services to the Illinois Valley community" and "construct a workable framework to liquidate remaining assets[.]" *Id.*, p. 1.

7. Concerning these goals, the Muntz Declaration identified the Estates' four largest assets as: "Assets Contained in OSF Sale" worth $32.35 million, "Spring Valley A/R" worth $11.5

million, "Peru A/R" worth $3 million, and "Spring Valley Equipment" worth $800,000 to $1,000,000. *Id.* at ¶ 52. Concerning the "OSF Sale," the Debtors immediately sought authority to close a private transaction under section 363 of the Bankruptcy Code. Dkt. No. 46. Concerning the Spring Valley and Peru A/R, the Debtors indicated that there would be "difficulties" and "obstacle[s]" to collecting such A/R and that it was likely the Estate's actual recovery would be at less than face value. Muntz Decl. ¶ 52 n. 16, 17. Concerning the "Spring Valley Equipment," the Muntz Declaration indicated that the Debtors would eventually seek to liquidate such assets. *Id.* ¶ 61.

8. On September 13, 2023, the Office of the United States Trustee for Region 11 (the "UST") filed a Notice of Appointment of Official Unsecured Creditors Committee, thereby appointing an official committee of unsecured creditors (the "Committee"). *See* Dkt. No. 42.

9. Due to the Debtors' significant delay in filing their respective schedules and statement of financial affairs (which forced the Debtors to file four motions to extend the relevant deadlines (*See* Dkt. Nos. 16, 61, 104, 161)), the initial meeting of creditors under section 341 of the Bankruptcy Code did not occur until October 12, 2023, and was continued multiple times to February 21, 2024.

10. The Bankruptcy Court approved the "OSF Sale" on October 25, 2023. Dkt. No. 147. The sale closed on November 16, 2023 (the "OSF Closing").

11. The Debtors sold additional assets to the Carle Foundation in a private 363 sale that closed on October 31, 2023. *See* Dkt. Nos. 106, 146.

12. The OSF Closing completed a value-maximizing transaction of the SMH-Peru's most valuable asset, the Peru hospital complex, which transaction had been largely negotiated and

finalized prior to the filing of the Bankruptcy Cases. Unfortunately, the Debtors' efforts to liquidate their remaining assets have largely stalled in the four months since the OSF Closing.

13. Since the OSF Closing, the Debtors have **neither** liquidated any meaningful assets nor filed and commenced solicitation of a liquidating plan.[1]

14. The Debtors asserted one other "key objective" for the Bankruptcy Cases, to prosecute any claims or causes of action resulting from a setoff implemented by SVCB prior to the Petition Date (the so-called "SVCB Litigation Claims"). *Muntz Declaration*, ¶ 63. Neither the Debtors nor the Committee has commenced an action to prosecute the SVCB Litigation Claims. Indeed, SVCB executed a remedy of setoff that was contractually available to it under its loan agreements with the SMH-Spring Valley, which setoff is not avoidable under section 553 or any other provision of the Bankruptcy Code. SVCB affirmatively submitted to the parties a detailed memorandum that explains why the Estates have no viable claims, providing factual and legal support for an absolute absence of exposure.

15. Notwithstanding the failure to complete any other key objectives of the Bankruptcy Cases, the Estates have continued to incur substantial professional fees since the OSF Closing. Presently, the Estates are responsible for paying three law firms, two financial advisors, and one investment banker. Four of these six groups of professionals bill hourly and seek payment from the Estates monthly. The other two groups of professionals are paid either via a flat fee or commission.

16. Through the end of January 2024, the Estates have incurred at least $2,118,969.36 in total professional fees, which break down as follows:

a. Adelman & Gettleman Ltd. (Debtors' counsel) - $1,040,565.50.

b. Hinshaw & Culbertson LLP (Debtors' special counsel) - $247,847.26.

[1] Plan exclusivity under section 1121(b) of the Bankruptcy Code expired on December 29, 2023.

c. Huron Consulting Services, LLC (Debtors' Financial Advisor) - $266,028.00.

d. Levenfeld Pearlstein, LLC (Counsel to the Committee) - $564,528.60.

17. Three of these four groups of professionals submitted monthly fee statements for January of 2024, with the exception of the Debtors' special counsel that has only submitted fee statements through December 2023. In the last **month** for which fee statements are available, the Estates incurred $303,319.90 in total professional fees, which break down as follows:

a. Adelman & Gettleman Ltd. - $89,272.50 incurred in January 2024.

b. Hinshaw & Culbertson LLP - $46,647.50 incurred in December 2023.

c. Huron Consulting Services, LLC - $95,936.40 incurred in January 2024.

d. Levenfeld Pearlstein, LLC - $71,463.50 incurred in January 2024.

18. The Debtors are not current on their monthly reporting obligations. The Debtors' most recent monthly operating report filed on January 10, 2024, covered the reporting period that ended on **September 30, 2023**. Dkt. No. 201. As such, SVCB cannot conclusively ascertain the Debtors' current financial position and the viability of continuing to incur professional fees at the current rate, although, as discussed later herein, the Debtors' recent filings suggest that the current rate at which professional fees are being incurred is unsustainable. *Supra* ¶¶ 15–17.

19. The Debtors' recent filings reflect that the Estates are experiencing significant liquidity issues and are struggling to pay their expenses as they come due. For example, the Debtors described their liquidity issues in a motion filed on February 28, 2024 seeking to have SMH-Peru reimburse SMH-Spring Valley for $300,000 for services rendered by its employees. *See* Dkt. No. 226, ¶¶ 18, 20. Such motion suggests that liquidity issues are exacerbated by overlapping work completed by the Debtors' and Committee's counsel. *Id.*, n. 3 ("Counsel for the Committee has correctly raised the issue as to whether the instant relief gives rise to the need to conduct a more

through [*sic*] examination of the propriety of substantive consolidation ("**SubCon**"). The Debtors have consistently recognized there may be compatible synergies resulting from substantively consolidating these estates and that the requested relief herein bolsters the significance of the underlying inquiry. Notwithstanding the relief sought in this Motion, it behooves the Debtors and the Committee to undergo an independent examination of the ultimate impact of SubCon on the rights and claims of the creditors of the respective estates. This in turn mandates that each of the creditor pools are balanced against the respective asset pools.").

20. The Debtors' liquidity issues are further evidenced by a recent administrative expense application filed by Sisters of Mary of the Presentation Health System ("SMP Health"), which is the Debtors' non-debtor parent entity, which revelated that the Debtors are **not paying** their CEO, Tim Muntz, and CFO, Lisa Lynch directly. Dkt. No. 212. SMP Health's application seeks allowance and payment of $316,214.23 in unreimbursed payroll expenses incurred by SMP Health Mr. Muntz and Ms. Lynch over the first three months of the Bankruptcy Cases. *Id.*, ¶ 15. SMP Health's application also indicates that the Debtors were **not paying** Mr. Muntz or Ms. Lynch for a significant period prepetition as SMP Health maintains prepetition claims against the Debtors totaling approximately $1.4 million for unreimbursed payroll expenses. *Id.*, ¶ 8.

21. In addition, the Debtors have advised SVCB that the Estates do not have sufficient liquidity to pay for the carrying costs for certain real property assets that have not been liquidated to date.

22. Notwithstanding their liquidity issues, the Debtors elected not to pursue certain avenues to bring property into the Estates. For example, the Debtors chose not to pursue turnover of more than $3.2 million in certain retirement plan benefits and the Committee ultimately obtained derivative standing to pursue turnover of such assets. Dkt. Nos. 199, 204 (the "Derivative Standing

Motion"). As set forth in the Derivative Standing Motion filed two months ago, **both** the Debtors and the Committee have researched and investigated the viability of pursuing the turnover action. *Id.* ¶¶ 9-11). While the Court approved the Derivative Standing Motion and conferred the Committee standing on January 17, 2024, the Committee has not initiated a contested matter or adversary proceeding concerning these potential assets.

23. SVCB remains a creditor in the case. As set forth in that certain *Motion for Relief from Automatic Stay* (Dkt. No. 231), SVCB currently has a claim of no less than $5,131,725.03. While SVCB retains first-priority liens on certain collateral, it is unclear whether the remaining SVCB claim is fully secured. SVCB is appreciative of the early efforts in the Bankruptcy Cases to complete the OSF Sale transaction and to finalize the OSF Closing. Nonetheless, the Estates face a liquidity crisis that has no apparent or immediate resolution, thus necessitating a streamlining of efforts and significant reduction of expenses through conversion of the Bankruptcy Cases to cases under chapter 7.

## IV. Argument

24. Section 1112(b)(1) of the Bankruptcy Code mandates conversion of a chapter 11 case to a chapter 7 case or dismissal of the case on the request of a party in interest after notice and hearing upon a showing of cause. 11 U.S.C. 1112(b)(1).

25. Section 1112(b)(4) provides a non-exhaustive list of circumstances which meet the definition of "cause." *See In re Kowalski*, No. BR 18-09130, 2018 WL 6841355, at *1 (Bankr. N.D. Ill. Nov. 30, 2018) ("Cause is defined in § 1112(b)(4); that list is not exclusive.") (citing *In re Aurora Memory Care, LLC*, 589 B.R. 631,638 (Bankr. N.D. Ill. 2018)).

26. As relevant to this Motion, "[S]ubstantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation[,]" "unexcused failure to satisfy

timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter[,]" and "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court" each constitute cause within the meaning of this section. 11 U.S.C. §§ 1112(b)(4)(A), (F), (J).

27. Likewise, courts have consistently found administrative insolvency to constitute "cause" under section 1112. *See e.g. Loop Corp. v. U.S. Tr.*, 290 B.R. 108, 113 (D. Minn. 2003), aff'd, 379 F.3d 511 (8th Cir. 2004) (affirming a bankruptcy court's order converting cases based on "mounting legal and administrative costs."); *see also, e.g., In re Pittsfield Weaving Co.*, 393 B.R. 271, 274 (Bankr. D.N.H. 2008) ("The unfortunate reality of this case is that significant administrative debt continues to increase and there is no consensual plan of reorganization."); *see also, e.g., In re Midwest Commc'ns Inc.*, 269 B.R. 40, 43 (Bankr. N.D. Iowa 2001) ("This is particularly so when a debtor is administratively insolvent, the debt load is continuing to increase and the rights of creditors are being impaired."). Administrative insolvency resulting from the accrual of legal fees **alone** has been found sufficient to find "cause." *See Morreale v. 2011-SIP-1 CRE/CADC Venture, LLC*, 533 B.R. 320, 324 (D. Colo. 2015) (on appeal from a bankruptcy court's order converting a case, stating ". . . the Court is not convinced that looking only to accruing professional fees is error.").

28. There are numerous bases for finding cause to convert the Bankruptcy Cases from chapter 11 to cases under chapter 7.

29. ***First***, the Estates' limited assets are being diminished by both the carrying costs to maintain those assets pending liquidation and the substantial professional fees being incurred. On this point, it is apparent that the Debtors lack sufficient internal staffing to operate as debtors-in-possession. While the Estates' professionals have stepped in to fill these gaps, that is an inefficient

and expensive solution that has contributed to the diminishment of the Estates' limited resources in a manner prejudicial to creditors. *Supra* ¶¶ 15–19.

30. ***Second***, the Debtors never had the intention nor the possibility of "rehabilitation" because, since the Bankruptcy Cases commenced, the Debtors had no operations and had only one stated mission: Liquidating their assets. Such liquidation has proceeded slowly, and it remains the only path available to complete the Bankruptcy Cases as the Debtors simply do not have any ability to reorganize.

31. ***Third***, there is a significant risk that the Estates are or will soon be administratively insolvent, given the substantial, ongoing accrual of professional fees compared and the Debtors' lack of any operations or meaningful income. As the recent filings in the Bankruptcy Cases demonstrate, the Debtors are experiencing liquidity issues and taking only minimal steps to solve them, to the extent that is possible under the circumstances. Even when the Debtors are taking steps to try to solve their liquidity issues, there is overlap among the work done by the Estates' professionals that necessarily contributes to the ongoing accrual of substantial professional fees. *See* Dkt. No. 226, n. 3.

32. ***Fourth***, the Debtors have not complied with their duties to file monthly operating reports and there is no evidence on the docket or otherwise that this requirement was excused. This has left creditors like SVCB to project the Debtors' past and present financial condition from their pleadings.

33. ***Fifth***, the Debtors did not file a plan or disclosure statement by the expiration of exclusivity under section 1121 of the Bankruptcy Code (December 29, 2023), and still have not done so more than two months after exclusivity expired.

34. Accordingly, there are numerous bases for finding cause pursuant to section 1112(b) of the Bankruptcy Code and relevant case law, only one of which is required to grant the Motion.

35. Once "cause" is established, dismissal or conversion is mandatory. *See In re Draiman*, 450 B.R. 777, 825 (Bankr. N.D. Ill. 2011) ("Congress amended § 1112(b) in 2005 . . . and curtailed a court's discretion to grant or deny a motion to convert or dismiss a case upon a finding of cause."). Following a determination of cause, the courts must determine whether conversion or dismissal "is in the best interests of creditors and the estate[.]" 11 U.S.C. § 1112(b)(1); *see also In re Aurora Memory Care*, 589 B.R. at 643 ("The only remaining question is whether dismissal or conversion is appropriate."). "What is in the best interest of creditors 'is a simple matter': creditors are best served by the course of action that results in the largest number of creditors being paid the largest amount of money in the shortest amount of time." *In re Rey*, No. 04B22548, 2006 WL 2457435, at *9 (Bankr. N.D. Ill. Aug. 21, 2006) (internal citations omitted).

36. Here, SVCB requests conversion to chapter 7—not dismissal—because conversion will maximize the value of the Estates' remaining assets and allow for the most expeditious, orderly recovery by all creditors in accordance with the Bankruptcy Code's priority scheme. As opposed to the present circumstances, conversion to chapter 7 will streamline administration of the Estates and reduce substantial administrative expenses by vesting a **single fiduciary** with the responsibility to liquidate remaining assets. By contrast, dismissal of the Bankruptcy Cases would favor only those creditors with the financial wherewithal to move quickly toward reducing their claims against the Debtors to judgment and result in the loss of a unified forum for creditors to have their claims adjudicated.

## V. Notice

37. In an abundance of caution, SVCB requests that its provision of the notice of motion filed concurrently herewith—instead of providing a complete paper copy of the Motion—to all creditors listed on the Debtors' most recent creditor matrix filed at Dkt. No. 195 be deemed good and sufficient notice pursuant to Fed. R. Bankr. Proc. 2002(a)(4).

38. Bankruptcy courts outside of this district have characterized the events enumerated in Fed. R. Bankr. Proc. 2002(a) as "actions that commonly occur in bankruptcy cases that may affect all creditors generally, but none specifically." *In re Greenwell*, 649 B.R. 1, 7 (Bankr. W.D. Ky. 2023) (citing *In re Ass'n of Volleyball Prof'ls*, 256 B.R. 313, 319 (Bankr. C.D. Cal. 2000)). Because of the general applicability of the actions enumerated in Fed. R. Bankr. Proc. 2002(a) to all creditors, these decisions support the idea that mailing notice to creditors is sufficient to comply with Fed. R. Bankr. Proc. 2002(a) and that copies of the Motion do not need to be provided alongside such notice.

39. The Debtors' engagement of Epiq as it claims and noticing agent also supports SVCB's requested relief. As described on the notice of motion filed contemporaneously herewith, all creditors have free access to digital copies of the Motion at the following URL: https://dm.epiq11.com/case/stmargarets/dockets. Counsel will also provide copies to creditors upon request.

40. Likewise, SVCB is not seeking to have the motion heard on shortened notice and all creditors will have 21-days to consider the relief sought in this Motion before it is up for initial presentment.

## VI. Conclusion

41. For the foregoing reasons, SVCB respectfully requests entry of the proposed form of order filed contemporaneously herewith converting the Bankruptcy Cases from chapter 11 to cases under chapter 7, and for such other and further relief that is appropriate under the circumstances.

DATED: March 6, 2024

By: */s/ Nathan Q. Rugg*
Counsel to Spring Valley City Bank
Nathan Q. Rugg (ARDC No. 6272969)
Stanley F. Orszula (ARDC No. 6257162)
Alexander F. Berk (ARDC No. 6329444)
John Andreasen (ARDC No. 6332408)
Barack Ferrazzano Kirschbaum
& Nagelberg LLP
200 West Madison Street, Suite 3900
Chicago, IL 60606
(E) nathan.rugg@bfkn.com
(E) stan.orszula@bfkn.com
(E) alexander.berk@bfkn.com
(E) john.andreasen@bfkn.com
(T) (312) 984-3100
(F) (312) 984-3150