**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ST. MARGARET'S HEALTH-PERU | ) | Case No. 23-11641 |
| and ST. MARGARET'S HEALTH- | ) | (Jointly Administered) |
| SPRING VALLEY, | ) | |
| | ) | Honorable David D. Cleary |
| Debtors. | ) | |
| | ) | |
| | ) | |

**ORDER APPROVING RECORDS SERVICE AND STORAGE AGREEMENT WITH
CARRIEND, LLC AND SHORTENING AND LIMITING NOTICE THEREOF**

THIS CAUSE coming to be heard on the motion (the "**Motion**") of St. Margaret's Health – Peru and St. Margaret's Health – Spring Valley, debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004, for entry of an order approving the agreement with Cariend, LLC attached as Exhibit A hereto (the "**Agreement**"), and limiting and shortening notice thereof; capitalized terms not defined herein having the meaning ascribed to such terms in the Motion; the Court being satisfied with the representations in the Motion that the relief requested therein is necessary and is in the best interests of the Debtors, their estates and their creditors; it appearing that proper and adequate notice and an opportunity to object have been given and that no other or further notice is necessary; the Court having considered the Motion and otherwise being fully advised; and it appearing that there is good cause to grant the relief requested;

**NOW, THEREFORE, IT IS HEREBY ORDERED , ADJUDGED, AND DECREED THAT:**

1. The Motion is granted to the extent provided herein.

1321810v2

2. The Agreement is approved, and Debtors are authorized to enter into and perform under the Agreement.

3. Notice of the Motion provided by the Debtors, including service of the Motion upon the Committee, is found to be sufficient under the circumstances pursuant to Bankruptcy Rules 2002(a)(2), 2002(i), and 6004(a), and no other or further notice is required.

4. This order shall take effect immediately upon its entry, notwithstanding the provisions of Bankruptcy Rule 6004(h).

Dated: May 22, 2024

_____
United States Bankruptcy Judge

*This order prepared by:*
Henry B. Merens, Esq. (ARDC #6181695)
Steven B. Chaiken, Esq. (ARDC #6272045)
Erich S. Buck, Esq. (ARDC #6274635)
Adelman & Gettleman, Ltd.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Counsel for the Debtors**

1321810v2

# EXHIBIT A

Cariend, LLC

# SERVICE AND STORAGE AGREEMENT

This Service and Storage Agreement ("Agreement") entered into this X day of April 2024 by and between Cariend, LLC (hereinafter referred to "Cariend") and St. Margaret's Health – Peru and St. Margaret's Health – Spring Valley, hereinafter referred to as "Client"). FOR AND IN CONSIDERATION OF THE MUTUAL TERMS AND COVENANTS CONTAINED HEREIN, Cariend agrees to accept for storage and service under its records management systems, Client's materials as delineated below and described further in the Scope of Work (hereinafter referred to as "materials"), subject to all of the terms and conditions contained herein, including those incorporated as attachments hereto.

1. SERVICES AND TERM: Cariend agrees to provide storage for the materials and services to Client and third parties pertaining to Client's materials all as further described in the scope of work document attached hereto and incorporated herein as Attachment A ("Scope of Work") and this Agreement. Cariend shall store and service Client's materials deposited with Cariend or made available to Cariend via a third-party hosted platform and as more particularly described in paragraph 2 for the term beginning on the date noted above and terminating on the date all materials are either destroyed or returned to Client pursuant to this Agreement. This Agreement shall supersede any contrary provisions that may be contained in any purchase order issued to Cariend by Client.

2. DESCRIPTION OF MATERIALS: Materials may include paper records and documents, digital images and records made available to Cariend on a hosted platform, microfilms, x-rays, servers and any other medium Cariend expressly agrees in writing to accept under this Agreement. Material that is unique, fragile, and/or requires special handling in transport and/or release of information must be disclosed by Client prior to executing this agreement, so the handling of such Material can be addressed in the Scope of Work. Such Material may include, but not limited to: Pathology material, Mammography films, dental impressions, prosthetic devices. Except as expressly agreed otherwise in writing by Cariend, "material" shall not include unique, fragile, or special handling items as noted above, and Cariend shall assume no liability for the management or storage of, any other medium not expressly listed above, including, without limitation, the following: magnetic tapes, CDs, DVDs, removable storage devices, external hard drives, laptops, or PCs

3. OWNERSHIP OF PROPERTY: Client represents and warrants that it is the owner or legal custodian of the material free and clear of all liens and security interests and/or has full authority to tender to Cariend for storage the material in accordance with the terms of this Agreement. Client further represents and warrants that Client is solely responsible for compliance with any local, state or federal laws or regulations pertaining to public notification requirements related to the services being provided hereunder. In addition, Client represents and warrants that it has full authority to order all services to be provided by Cariend under this Agreement, and it authorizes Cariend to perform these services on Client's behalf. Client shall reimburse Cariend for reasonable expenses incurred as a result of Cariend's compliance with Client instructions in the event of any dispute of the ownership or disposition of material, and/or any misrepresentation by the Client. Client shall not at any time store with Cariend any narcotics, controlled substances, contraband or other illegal materials, any materials considered to be highly flammable, explosive, toxic, radioactive, nitrate film, film producing acidic fumes, or any organic material which might attract vermin or insects or any other materials which are otherwise dangerous and/or unsafe to store or handle using Cariend' standard procedures and facilities. Materials will be accepted for storage only when packaged in a manner acceptable to Cariend and when accompanied by a properly executed processed form(s) or work order required by Cariend. Cariend reserves the right to open and inspect any materials sent for storage. Cariend may, at its sole discretion, elect to reject any type or form of material, which it considers unfit, improper or unsafe for storage.

4. RATES: Client agrees to pay Cariend for its storage and services according to the Scope of Work. Cariend shall be entitled to utilize a third party to provide some or all of the services hereunder. For all pick-ups Client agrees to provide an unobstructed access route into its facilities and a legal, cost-free parking area for utilization by Cariend. Charges for any services not set forth in the Scope of Work will be addressed through Amendments to the Scope of Work and billed at Cariend's then-current rates.

5. THIRD-PARTY ACCESS TO MATERIALS: Except as otherwise set forth in the Scope of Work, Client expressly authorizes Cariend to provide copies of the materials to patients or their authorized representatives and any other third parties entitled to receive such copies in accordance with applicable law authorizing such access (collectively, "Authorized Requestors"). Cariend shall require patients requesting records to complete a release of information authorization form and provide reasonable proof of identity. Cariend shall assess fees to third parties for access to the materials in accordance with the Scope of Work and as permitted by applicable law. Cariend will comply with any subpoena or similar requests. Except as set forth below, Client expressly acknowledges and agrees that Cariend will not deliver the original records embodied in the materials; rather, Cariend will provide Authorized Requestors with either electronic or physical copies of the requested materials. Client acknowledges that certain types of materials may not be copied based on the nature of the materials (unique materials as defined in paragraph 2, such as pathology blocks and slides, certain types of films or other physical samples), in which cases the original records will be released to Authorized Requestors, and such records are not to be returned to Cariend; provided, however, Cariend shall require Authorized Requestors to complete a form acknowledging and consenting to receipt of such original records. Under no circumstances will Authorized Requestors be permitted to access Cariend's facilities.

6. CLIENT ACCESS TO MATERIALS: All access by Client to Cariend facilities shall be subject to Cariend's security procedures, which may be amended by Cariend from time to time. Cariend shall grant access to materials or follow the written instructions (which may include email instructions) of individuals authorized by Client or any other individuals that Cariend reasonably believes under the circumstances to be authorized to act on behalf of Client (collectively "Authorized Representatives," and each, an

CONFIDENTIAL

"Authorized Representative"). Client shall be responsible for notification to Cariend of deletions or additions to such list in writing utilizing proper Cariend forms and procedures. Client's Authorized Representative shall have the right, at reasonable times and upon reasonable notice during normal business hours, to examine its materials. Client represents that the Authorized Representatives(s) have full authority to order available services and to deliver and receive materials. Such order will only be valid if given in writing or some form of verified electronic communication. Cariend shall have a reasonable time to comply with any request for the delivery of any materials requested by Provider. Cariend reserves the right to deny access or delivery of materials should the Client be in default of this Agreement. Unless Cariend receives written notice to the contrary, it shall be authorized to receive materials or deliver materials to or at the direction of any Authorized Representative. For deliveries to Client, unless Client instructs Cariend otherwise in writing, Client specifically authorizes Cariend to leave materials with the Client representative who meets the Cariend courier, regardless of whether such individual is an Authorized Representative.

7. TRANSPORTATION OF MATERIALS: Client acknowledges that, Cariend's primary business is storing and providing services related to materials and that Cariend is not a "common carrier." Cariend shall not be liable for damage to, loss of or destruction of Client materials in transit. Cariend shall have no liability, and Client shall bear the risk of loss, for the materials while they are in transit until such materials are received and processed at a Cariend facility, even in the case where Cariend provides assistance to Client in organizing, preparing for shipment and/or arranging for shipment of the materials.

8. ADDRESS AND CHANGE: Any notice required under this Agreement or required under applicable law shall be sent by Cariend to Client or from Client to Cariend at the address shown below. Should there be a change to a party's address, the party shall provide written notice of such change to the other party and upon acknowledgment by the receiving party of such change; all notices thereafter shall be sent to such new address. For purposes of any notices under this Agreement, they shall be given as follows:

   As to Client:    St. Margaret's Health—Peru and
                    St. Margaret's Health—Spring Valley
                    Attn: Tim Muntz, President & CEO
                    600 East First Street
                    Spring Valley, IL 61362

   With a copy to:  Adelman & Gettleman, Ltd.
                    Attn: Steven Chaiken and Erich Buck
                    53 W. Jackson Blvd., Suite 1050
                    Chicago, IL 60604

   As to Cariend:   For Overnight Delivery:
                    Cariend, LLC
                    Attn: Christopher Powell Jones
                    105 Baybrook St
                    Thomasville, GA 31792
                    For U. S. Mail:
                    Cariend, LLC
                    Attn: Christopher Powell Jones
                    Post Office Box 1866
                    Thomasville, GA  31799-1866

9. DESTRUCTION OF MATERIALS: (a) Execution of this agreement constitutes full authority for Cariend to destroy any/all materials at the end of the term or any incemental retention dates as set forth in the Scope of Work or as otherwise indicated by Client in writing. No further approvals for destruction will be sought or required. Client releases Cariend from any and all liability to any third party by reason of the whole or partial destruction of materials performed pursuant to Client's instructions. (b) Client acknowledges that Cariend may dispose of the materials by shredding, puncturing, incinerating or any other means that is generally accepted in the industry for disposing of similar material. References herein to "destroy" shall be understood to include all such methods of disposal. In accordance with generally accepted industry standards and practices, Client acknowledges that Client's materials may be commingled with destroyed materials of others prior to destruction and that Client's materials may be recycled after they are destroyed. (c) Client acknowledges that Client is aware of its obligation properly to dispose of "consumer information" and any other information the disposal of which is regulated by any laws or regulations governing disposal of information, including, without limitation, those commonly known as "FACTA," "FERPA","GDPR," "GLBA","SOX" "HIPAA" and "HITECH" or similar state, federal and international laws ("Privacy Laws").

10. COMPLIANCE: Attached hereto as Attachment B is the Business Associate Agreement Addendum between Cariend and Client ("BA Agreement Addendum"). Cariend shall endeavor to comply with the BA Agreement Addendum and all applicable laws that govern the services provided under this Agreement. In the event Cariend receives a subpoena or written instruction or demand from any regulatory, legal or judicial authority pertaining to the materials, Cariend shall provide written notice to Client of such instruction or demand and shall exercise commercially reasonable judgment in complying with such instruction or demand. In any case, Cariend shall not be liable for any actions taken or not taken in response to any such instruction or demand until the Chapter 11 Cases close, and the obligations of the Business Associate Agreement will survive the closure of the Chapter 11 Cases.

11. DISPUTE RESOLUTION; GOVERNING LAW: The parties agree that the exclusive venue for any action against Cariend shall be the United States Bankruptcy Court for the Northern District of Illinois, Eastern, Division (the "Bankruptcy Court"), where the Client's jointly-administered chapter 11 cases are pending, Case No. 23-11641 (the "Chapter 11 Cases"). To the extent it is determined by final order of the Bankruptcy Court that it lacks jurisdiction to decide such action, then in such event, the venue for any action against Cariend shall be the state and federal courts located in or closest to Thomas County, Georgia. As a material inducement to Cariend to enter into this Agreement, the Client hereby WAIVES ITS RIGHT TO A TRIAL BY JURY and consents to any action arising pursuant hereto to be heard by bench trial.

12. LIMITATION OF LIABILITY: (a) Client recognizes that Cariend is not an insurer of its materials. Client is urged to obtain insurance for itself sufficient to protect its interest in such materials should they be lost, damaged, destroyed or otherwise compromised. Cariend is not required to insure materials against loss or injury, however caused, and Client's sole remedy for any losses or claims shall be as set forth in this Agreement. Client has been advised and fully understands and acknowledges that deterioration and aging of materials is normal and an unavoidable occurrence anticipated

CONFIDENTIAL

over time. Cariend shall not be liable for any damage to or loss or destruction of materials or unauthorized access, however caused, unless such loss, damage, destruction or unauthorized access is solely caused by Cariend's gross negligence or willful misconduct, in which case Cariend's liability shall be limited by this paragraph 12. This Agreement is entered into subject to any delays, losses or damage which may be caused from (i) an act, omission or order of Client; (ii) insects, moths and vermin; (iii) ordinary wear and tear; (iv) defects or inherit vices of the article stored, including susceptibility to damage because of atmospheric conditions such as temperatures and humidity or changes therein; (v) war or hostile war like action in time of peace including insurrection, terrorism, rebellion, revolution or civil war; (vi) strikes, lockouts, labor disturbances, riots, civil commotions or the acts of any person or persons taking part in any such occurrence; or (vii) acts of God, nature, viruses, pandemics and similar occurrences and Cariend shall not be liable for any delays or failure to perform caused by or related to any such causes. Client acknowledges that Cariend will be utilizing technology, services, software and hardware owned by and/or managed by third parties in connection with its provision of some of its services. Cariend will endeavor to ensure the reliability and availability of all such third party technology, services, software and hardware; however, Cariend will not have any liability for any damages, claims or liabilities caused by the unavailability of or defects regarding such technology, services, software and hardware or any other damage, claims or other issues attributable to problems or issues or caused by such technology, services, software and hardware. IN NO EVENT SHALL CARIEND BE LIABLE FOR ANY LOSS OF PROFIT OR SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING WITHOUT LIMITATION LOST PROFITS, LOSS OF USE, DATA/INFORMATION BREACH NOTIFICATION REQUIREMENTS TO THIRD PARTIES UNDER STATE AND/OR FEDERAL LAW, LOST DATA/INFORMATION, AND RECONSTRUCTION, REGARDLESS OF THE FORM OF THE CLAIM AND REGARDLESS OF WHETHER ANY SUCH DAMAGES WERE FORESEEABLE AND REGARDLESS OF THE CAUSE OF SUCH DAMAGES. CLIENT SHALL CAUSE ITS INSURERS OF MATERIALS TO WAIVE ANY RIGHT OF SUBROGATION AGAINST Cariend. This limitation of liability shall apply irrespective of the cause of loss, damage or destruction of the stored materials. (b) Client recognizes and agrees that Cariend's liability under this Agreement for any and all claims shall be limited. Notwithstanding the limitations set forth in this paragraph, in no event shall Cariend's aggregate liability for any and all claims arising under this Agreement exceed the aggregate amounts paid by Client under this Agreement.

13. DEFAULT: Should Client or its Assigns fail to pay any sum due hereunder in accordance with this Agreement or fail to comply with any terms or provision of this Agreement, or fail to cooperate with Cariend in a manner that substantially hinders Cariend from providing its services under this Agreement, then Client shall be deemed in default. Upon default, Cariend may exercise any or all of its available remedies, including, without limitation, its lien rights as set forth in paragraph 14, demand that Client pick up its materials, deliver the materials to the delivery address or if none is specified, to the Client address, terminate this Agreement or exercise any other right it might have under Georgia law. In addition to the above, in the event of default and upon thirty (30) days advance written notice to Client, Cariend may destroy or otherwise dispose of the materials. In this regard, Client recognizes that, since the material has little or no market value, the sale of the material would be impossible, and disposal of Client materials is the only way for the Company to mitigate its damages. Cariend shall have, and may exercise, all rights granted to a warehouse by the Uniform Commercial Code as adopted in the State of Georgia. In the event Cariend takes any action upon the default of Client, it shall have no liability to Client, anyone claiming through it, or any third party. Cariend possesses a landlord's lien upon Client's materials for fees and charges hereunder. All remedies provided for in this Agreement are cumulative and may, at the election of Cariend, be exercised alternately, successively or in any other manner or in addition to any other rights provided by law. Cariend or the Client, as the case may be, shall be entitled to collect all reasonable attorneys' fees and costs incurred by it in connection with the enforcement of this Agreement.

14. LIEN: Cariend has a lien on all materials for any amounts due to Cariend from Client hereunder including, but not limited to, any other charges, present or in the future in relating to such materials, its movement, preservation, sale or other disposal or disposition pursuant to the terms of this Agreement. Without limiting the terms above, Cariend shall have a lien on such property to the full extent authorized under O.C.G.A. Section 11-7-210. No advances have been made or liabilities incurred by Cariend for which it claims a lien prior to the date of the execution of this Agreement.

15. EARLY TERMINATION: Cariend shall have the right, notwithstanding anything else contained in this Agreement to the contrary, to terminate the Agreement pursuant to the provisions of O.C.G.A. Section 11-7-206 or for any default as set forth in paragraph 13 upon ten (10) days written notice to Client.

16. TAX: All charges and fees to be paid to Cariend under this Agreement are exclusive of any applicable taxes required by law to be collected from Client (including withholding, sales, use, excise or services taxes, which may be assessed on the provision of the storage or services hereunder). If a withholding, sales, use, excise or services tax is assessed on the provision of any of the storage or services provided under this Agreement, Client shall pay directly, reimburse or indemnify Cariend for such tax. The parties shall cooperate with each other in determining the extent to which any tax is due and owing under the circumstances and shall provide and make available to each other any resale certificate, information regarding out-of-state use of materials, services or sale, and other exemption certificates or information reasonably requested by the other party.

17. ASSIGNMENT: Client shall have the right to assign this Agreement, including any Scope(s) of Work and BA Agreement Addendum, and all of Client's rights, obligations, title and interest in, to and under this Agreement, to any successor in interest or third party, including but not limited to any creditor trustee appointed under a confirmed plan of liquidation in the Chapter 11 Cases. Cariend shall not have the right to assign this Agreement, or any of its rights, title, obligations or interests in, to or under this Agreement, to any third party absent the express written consent of Client or its assignee, as the case may be.

18. SUCCESSORS AND ASSIGNS: This Agreement and the obligations hereunder shall be binding and inure to any successors or assigns of the parties.

CONFIDENTIAL

19. CONFIDENTIALITY: Cariend shall implement and maintain reasonable safeguards designed to protect the confidentiality of Client's information and the materials.

20. COMPLETE AGREEMENT: This Agreement, including the attachments referenced herein and attached hereto, embodies the entire Agreement and understanding of the parties hereto and supersedes any and all prior written agreements or understandings. This Agreement may be modified only by written instrument signed by each of the parties hereto. The provisions provided for herein are deemed to be severable.

The undersigned Client acknowledges and agrees that it, by and through its undersigned representative, has read this Agreement in its entirety and understands and acknowledges all of the terms and conditions. Client agrees to be bound by all of said terms and conditions.

Client:

_____
Print Name

_____         _____
Signature          Client(Provider)                                  Date

_____         _____
Signature          Client(Provider)

**Cariend**
Post Office Box 1866
Thomasville, GA  31799-1866

_____         _____
By:                                                                       Date

Attachment: Scope of Work

<span style="color:red">**CONFIDENTIAL**</span>

# CARIEND

Attachment A
Scope of Work

This Scope of Work ("SOW") for Custodial Records Services is entered into by and between Cariend, LLC ("Cariend") and St. Margaret's Health – Peru and St. Margaret's Health – Spring Valley, ("Client"). This SOW is incorporated into and made part of the Service and Storage Agreement between Client and Cariend, along with the applicable schedules, exhibits and attachments (collectively, "Agreement"). Any capitalized terms not defined herein shall have the meaning given to such terms in the Service and Storage Agreement. This SOW supersedes and terminates any prior SOW or components thereof between Client and Cariend for the same or similar type of Services described below.

This SOW is effective as of the date of Client signature below (the "Effective Date"). The term of this SOW will commence on the Effective Date and continue through April X, 2034 ("Term").

Pricing contained within this SOW is only valid for acceptance by Client for a period of ninety (90) calendar days from April X, 2024 unless extended by a revised SOW issued by Cariend or execution of this Agreement.

The Parties agree as follows:

1. **Provision of Service.**

Commencing on the Effective Date of this SOW, in consideration of Client's payment of the applicable fees set forth herein, Cariend shall provide to Client that level and type of Service purchased by Client, as set forth in Schedule 1. Any variance in the volumes or scope reflected on Schedule 1 may result in a price adjustment based on the actual new volumes or scope or Services. Client agrees to pay any price adjustment based on such new volumes or scope.

2. **Services Description.**

As set forth in Schedule 1.

3. **Pricing.**

3.1     For the entire scope of the Services provided to Client by Cariend under this SOW, Client agrees to pay 25% of the total SOW amount indicated on Schedule 1 (plus applicable taxes) within seven (7) days of entry of a final order of the Bankruptcy Court in the Chapter 11 Cases authorizing Client to enter into the Agreement (the "Court Order"); 25% within 90 days of entry of the Court Order; 25% within 180 days of entry of the Court Order; and any remaining balance within 270 days of entry of the Court Order. Any variance to the volume or scope of services listed in this Agreement will result in an amended Agreement, including applicable changes to the pricing. All fees shall be invoiced and paid by Client in United States currency.



Each person signing below represents and warrants that (i) he or she is duly authorized and has legal capacity to execute and deliver this SOW, (ii) the execution and delivery of this SOW and the performance of such Party's obligations hereunder have been duly authorized, (iii) this SOW is a valid and legal agreement binding on such Party and enforceable in accordance with its terms and conditions, and (iv) this SOW may be delivered by either or both Parties by delivery of scanned copies of signed signature pages, and will thereupon be legally effective and binding for all purposes.

**Client:** _____

Individual Signing: _____
    (*print name*)

Title: _____

*Signature*: _____
Date: _____

Authorized Requestor(s): _____
*(optional, in addition to Client above)*

**Cariend:**

Individual Signing: _____
    (*print name*)

Title: _____

*Signature*: _____
Date: _____

*Invoicing information (if different from Client location)*:

Invoicing Contact: _____
Mailing Address: _____
_____
_____

Phone Number: _____



## Schedule 1
Service Description and Pricing

1. Physical records – Cariend will provide all labor and materials to remove and transport all the records listed below during a mutually agreed upon one week period. Cariend will assess records based on retention guidelines provided by Client, separating medical and business records, indexing retained Medical and Employee records at the file-level and non-medical records at the box level:
    a. Approximately 5,000 boxes in the Spring Valley warehouse
    b. Approximately 250 boxes of Orthopedic group medical records inside SMH offices
    c. Approximately 80 boxes/plastic containers of pathology specimens, including accession information required to locate individual pathology cases
    d. Approximately 320 boxes of Business/Finance records inside SMH offices
    e. Approximately 250 boxes at Cardone Records (release must be obtained first)
    f. Approximately 140 boxes at Iron Mountain (release must be obtained first)
2. Radiology Records – Cariend will receive DICOM data from Client servers:
    a. Approximately 20 Terabytes in DICOM format
3. Electronic Medical Records – Cariend will receive exported, unencrypted SQL data and external document folders from SMH servers or cloud storage systems. Cariend will convert SQL exports to one PDF file (or folder, if multiple files) per-patient. For Meditech data, if SQL/External folder data is not available, Cariend can pull directly from individual Meditech applications – VPN access to Meditech servers will be required in this approach, and additional charges may be incurred from Meditech or third-party vendors to extract the data in this scenario. Athena provides complete medical records in PDF format and will not require conversion.
    a. Meditech – Expanse, Maestro, and client/server with multiple applications
    b. Athena – Standard PDF export provided by Athena
    c. Fast Track, OBIX, Paragon, HPF, Traceview, Allscripts archive, and legacy EMR data currently residing with Ellkay Systems.
4. Client authorizes Cariend to provide Release of Information (ROI) Services for medical records during the Term on behalf of Client. Cariend reserves the right to bill third party requestors of medical records, or any requests for non-medical records, subject to and in accordance with all federal and state laws, rules and regulations. Client shall indicate Authorized User on the signature page of this Agreement for Cariend to coordinate the release of non-medical records.
5. Cariend will store medical records for 10 years past the last service date, and business records for 7 years past the indicated year, based on retention information provided by Client.
6. At the end of the retention period indicated by Client, records will be removed from storage and securely destroyed. Execution of this Agreement shall constitute full and complete authorization of destruction upon completion of the Term or incrementally throughout the Term based on retention schedule indicated by Client.
7. The total projected price for all items listed in this Agreement is $274,080 (plus any applicable taxes and subject to revision based on any changes to the volume or scope of services.)

8. Upon execution of this Agreement, Cariend will supply Client with medical records release contact information for Client to include in their closing notifications.

**BUSINESS ASSOCIATE ADDENDUM TO SERVICE AND STORAGE AGREEMENT**

**(Attachment B)**

THIS BUSINESS ASSOCIATE AGREEMENT ADDENDUM (this "BA Agreement Addendum") is entered into by and between Cariend, LLC ("Business Associate") and St. Margaret's Health – Peru and St. Margaret's Health – Spring Valley, ("Covered Entity") (collectively, the "Parties").

WHEREAS, Covered Entity is a covered entity, and Business Associate is a business associate of Covered Entity, as those terms are defined in the Health Insurance Portability and Accountability Act of 1996, as amended by the Health Information Technology for Economic and Clinical Health Act, and the regulations promulgated thereunder (collectively "HIPAA");

WHEREAS, Covered Entity and Business Associate have entered into that certain [Service and Storage Agreement], as amended, modified, or restated from time to time (the "Service and Storage Agreement" or "Agreement") pursuant to which Business Associate will provide to Covered Entity and certain third parties certain services (the "Services") which may require Business Associate to use and disclose Protected Health Information ("PHI") on behalf of Covered Entity; and

WHEREAS, Business Associate and Covered Entity are committed to complying with HIPAA.

NOW, THEREFORE, Business Associate and Covered Entity agree as follows:

1. **Definitions**. Capitalized terms used, but not otherwise defined, in this BA Agreement Addendum shall have the same meanings as those terms are given in HIPAA.

2. **Obligations and Activities of Business Associate**

    2.1. **Limits on use and further disclos**ure. Business Associate agrees not to use or disclose PHI other than as permitted or required by this BA Agreement Addendum or the Agreement.

    2.2. **Appropriate safeguards**. Business Associate agrees to use appropriate safeguards, and comply with Subpart C of 45 CFR Part 164 with respect to E-PHI, to prevent use or disclosure of PHI other than as permitted or required by this BA Agreement Addendum.

    2.3. **Reporting Requirements**. Business Associate agrees to report to Covered Entity any use or disclosure of PHI not provided for by this BA Agreement Addendum of which it becomes aware, including Breaches of Unsecured PHI as required by 45 C.F.R. § 164.410, and any Security Incident of which it becomes aware.

    2.4. **Subcontractors and agents**. In accordance with 45 C.F.R. §§ 164.502(e)(1)(ii) and 164.308(b)(2), Business Associate agrees to ensure that any Subcontractors that create, receive, maintain or transmit PHI on behalf of Business Associate agree to

the same restrictions, conditions, and requirements that apply to Business Associate with respect to such information

**2.5.** **Right of access to PHI**. At the request of Covered Entity, Business Associate agrees to provide access to PHI maintained in a Designated Record Set to Covered Entity to allow Covered Entity to respond to a request under 45 C.F.R. § 164.524 by an Individual. Such access shall be granted upon request by Covered Entity for a specific record or records to be delivered by Business Associate to Covered Entity. The delivery of a record or records by Business Associate to Covered Entity under this Section shall be subject to all terms of the Storage Agreement, including any and all applicable fees.

**2.6.** **Amendment of PHI**. At the request of Covered Entity, Business Associate agrees to make amendments and/or corrections to PHI maintained in a Designated Record Set to the extent required by 45 C.F.R. § 164.526. In the event of such a request, Covered Entity shall identify the record or records requiring amendment and/or correction and Business Associate shall deliver such record or records to Covered Entity to allow Covered Entity to make the requested amendments and/or corrections. The delivery of a record or records by Business Associate to Covered Entity under this Section shall be subject to all terms of the Service and Storage Agreement, including any and all applicable fees.

**2.7.** **Provide accounting**. Business Associate agrees to maintain and make available the information required to provide an accounting of disclosures to the Covered Entity as necessary to satisfy Covered Entity's obligations under 45 C.F.R. § 164.528.

**2.8.** **Carrying out Covered Entity's Obligations**. To the extent Business Associate is to carry out one or more of Covered Entity's obligation(s) under Subpart E of 45 C.F.R. Part 164, Business Associate agrees to comply with the requirements of Subpart E that apply to Covered Entity in performance of such obligation(s). It is not anticipated that Business Associate will carry out any of Covered Entity's obligations under Subpart E of 45 C.F.R. Part 164 other than as set forth in the Agreement.

**2.9.** **Access to books and records**. Business Associate agrees to make its internal practices, books, and records relating to the use, disclosure and maintenance of PHI received from, or created or received by Business Associate on behalf of, Covered Entity available to the Secretary for purposes of determining compliance with HIPAA.

**2.10.** **Notification of Breach**. During the term of this Agreement, Business Associate shall notify the Covered Entity within a reasonable time following the occurrence of any breach of security, intrusion or unauthorized use or disclosure of Covered Entity's PHI and/or any use or disclosure of Covered Entity's PHI not provided for by this Agreement. Business Associate shall notify Covered Entity, within 30 calendar days, of the discovery of an unauthorized acquisition, access, or disclosure

of "unsecured protected health information," as such term is defined in the HIPAA Standards. Such notice shall include:

i. the identification of each Individual whose Unsecured Protected Health Information has been, or is reasonably believed by Business Associate to have been, accessed, acquired, or disclosed during such Breach;

ii. a description of the nature of the Breach including the types of Unsecured Protected Health Information that were involved, the date of the Breach and the date of discovery;

iii. a description of the type of Unsecured Protected Health Information acquired, accessed, used or disclosed in the Breach (e.g., full name, social security number, date of birth, etc.);

iv. the identity of the person who made and who received (if known) the unauthorized acquisition, access, use or disclosure;

v. a description of what the Business Associate is doing to mitigate the damages and protect against future breaches; and

vi. any other details necessary for Covered Entity to assess risk of harm to Individual(s), including identification of each Individual whose Unsecured Protected Health Information has been Breached and steps such Individuals should take to protect themselves.

2.11. **Cyber Insurance**. Business Associate shall maintain insurance for network security and privacy risk, including but not limited to unauthorized access, failure of security, breach of privacy perils, wrongful disclosure, collection, or other negligence in the handling of confidential information and privacy perils, including coverage for related regulatory defense and penalties, in an amount not less than One Million Dollars. The foregoing coverage will include coverage for data breach expenses in an amount not less than Two Million Dollars, and payable by Business Associate, including, but not limited to consumer notification, whether or not required by law, computer forensic investigations, public relations and crisis management firm fees, credit or identity monitoring, or remediation services.

3. **Permitted Uses and Disclosures by Business Associate**

Except as otherwise limited in this Service and Storage Agreement, Business Associate:

3.1. **For the specified purposes**. May use or disclose PHI as permitted or required by the Service and Storage Agreement or this BA Agreement Addendum.

3.2. **As Required by Law.** May use or disclose PHI as Required by Law.

13003\320706931.v2

    3.3.    **Prohibited use or disclosure**. May not use or disclose protected health information in a manner that would violate Subpart E of 45 CFR Part 164 if done by Covered Entity, except for the specific uses and disclosures set forth below.

    3.4.    **Use for management, administration and legal responsibilities**. May use PHI for the proper management and administration of Business Associate or to carry out the legal responsibilities of Business Associate.

    3.5.    **Disclosure for management, administration and legal responsibilities**. May disclose PHI for the proper management and administration of Business Associate or to carry out the legal responsibilities of Business Associate, provided that such disclosures are Required by Law or Business Associate obtains reasonable assurances from the person to whom the information is disclosed that it will be held confidentially and be used or further disclosed only as Required by Law or for the purpose for which it was disclosed to the person, and the person notifies Business Associate of any instances of which it is aware that the confidentiality of the information has been breached.

    3.6.    **Data aggregation.** May use or disclose PHI to provide data aggregation services as permitted by 45 CFR § 164.504(e)(2)(i)(B).

    3.7.    **De-identification**. May use PHI to create de-identified information provided such PHI is de-identified in accordance with 45 C.F.R. § 164.514(b).

4.    **Provisions for Covered Entity to Inform Business Associate of Privacy Practices and Restrictions**

    4.1.    **Notice of privacy practices**. Covered Entity shall notify Business Associate of any limitation(s) in its notice of privacy practices to the extent such limitation may affect Business Associate's use or disclosure of PHI.

    4.2.    **Changes in permission**. Covered Entity shall notify Business Associate of any changes in, or revocation of, permission by an Individual to use or disclose PHI, to the extent such changes may affect Business Associate's use or disclosure of PHI.

    4.3.    **Restrictions**. Covered Entity shall notify Business Associate of any restriction on the use or disclosure of PHI to which Covered Entity has agreed to the extent such restriction may affect Business Associate's use or disclosure of PHI.

5.    **Permissible Requests by Covered Entity.**

Covered entity shall not request Business Associate to use or disclose PHI in any manner that would not be permissible under Subpart E of 45 CFR Part 164 if done by Covered Entity, other than uses and disclosures permitted under Sections 3.4, 3.5, and 3.6 of this BA Agreement.

6.    **Term and Termination**

    **6.1.**    **Term**. The term of this BA Agreement Addendum shall commence on the effective date of the Service and Storage Agreement and continue so long as Business Associate continues to provide Services to Covered Entity under the Storage Agreement.

    **6.2.**    **Termination for Cause**. Upon a material breach of this BA Agreement by either party (the "Defaulting Party"), the other party (the "Non-Defaulting Party") may give written notice of such material breach to the Defaulting Party, and if such material breach is not cured within 45 days after such written notice is received by the Defaulting Party, or such longer period as agreed to by the Parties, then the Non-Defaulting Party may immediately terminate this BA Agreement Addendum and the Service and Storage Agreement.

    **6.3.**    **Obligations of Business Associate Upon Termination.**

        6.3.1.    Except as provided in Section 6.3.2 of this BA Agreement and the Storage Agreement, upon termination of this BA Agreement Addendum for any reason, Business Associate shall, as provided for in the Storage Agreement, return to Covered Entity or destroy all PHI received from Covered Entity, or created, maintained, or received by Business Associate on behalf of Covered Entity, that the Business Associate maintains in any form. Business Associate shall retain no copies of PHI. This provision shall also apply to PHI that is in the possession of Subcontractors of Business Associate.

        6.3.2.    In the event that returning or destroying PHI is not feasible, Business Associate shall provide to Covered Entity notification of the conditions that make return or destruction not feasible, and extend the protections and requirements of this BA Agreement Addendum and the Parties' respective rights and obligations hereunder so long as Business Associate maintains such PHI, and Business Associate shall limit further use and disclosure of such PHI to those purposes that make the return or destruction not feasible.

    **6.4.**    **Survival**. The respective rights and obligations of Business Associate under this Section shall survive the termination of this BA Agreement Addendum.

**7.**    **Miscellaneous**

    **7.1.**    **Statutory and regulatory references**. A reference in this BA Agreement to a statute or regulation means the statute or regulation as in effect or as amended, and for which compliance is required.

    **7.2.**    **Amendment.** The Parties agree to negotiate in good faith an amendment to this BA Agreement Addendum from time to time to enable them to comply with the requirements of HIPAA.

    **7.3.**    **Choice of Law.** This BA Agreement Addendum shall be governed by the law of Illinois without giving effect to its laws, rule or principles governing conflicts of laws.

 **7.4.** **Binding Nature and Assignment.** This BA Agreement Addendum shall be binding on the Parties hereto and their successors and assigns, but neither Party may assign this BA Agreement Addendum without the prior written consent of the other, which consent shall not be unreasonably withheld.

 **7.5.** **Notices.** Any notice required or permitted under this BA Agreement Addendum shall be in writing and may be (a) delivered in person or by email, or (b) be sent by certified mail, return receipt requested, postage prepaid or by overnight mail, to the last known address of the person designated as that Party's representative under the Storage Agreement, or to such other address as a party may direct by notice in writing from time to time.

 **7.6.** **Entire Agreement.** This BA Agreement Addendum consists of this document and the Service and Storage Agreement with Scope of work constitutes the entire BA Agreement between the Parties. No change, waiver or discharge of obligations arising under this BA Agreement Addendum shall be valid unless in writing and executed by the Party against whom such change, waiver or discharge is sought to be enforced. In the event of conflict between this BA Agreement Addendum and the Service and Storage Agreement, this BA Agreement Addendum shall control to the extent required for compliance with HIPAA; otherwise the Storage Agreement shall control. Notwithstanding anything to the contrary herein, Sections (indemnification) and (limitation of liability) of the Service and Storage Agreement are incorporated in this BA Agreement Addendum, and shall apply to, this BA Agreement Addendum in the same manner as they apply in the Service and Storage Agreement.

| Client: | Cariend, LLC<br>PO Box 1866<br>Thomasville, GA 31799 |
|---|---|
| _____<br>Print Name and Date | _____<br>Print Name and Date |
| _____<br>Signature | _____<br>Signature |