**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ST. MARGARET'S HEALTH – PERU | ) | Case No. 23-11641 |
| and ST. MARGARET'S HEALTH – | ) | (Jointly Administered) |
| SPRING VALLEY, | ) | |
| | ) | Honorable David D. Cleary |
| Debtors. | ) | |
| | ) | |

**ORDER APPROVING DISCLOSURE STATEMENT
AND CONFIRMING JOINT LIQUIDATING PLAN**

THIS CAUSE coming to be heard in connection with the combined hearing (the "**Combined Hearing**") on June 27, 2024, in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") to consider approval of the *Disclosure Statement with Respect to Joint Liquidating Plan Proposed by the Debtors and Official Committee of Unsecured Creditors* filed herein on May 7, 2024 [Docket No. 343] (as may be amended, modified, or supplemented, the "**Disclosure Statement**") by St. Margaret's Health – Peru and St. Margaret's Health – Spring Valley, debtors and debtors in possession (collectively, the "**Debtors**," and each, a "**Debtor**"), and confirmation of the *Joint Liquidating Plan Proposed by the Debtors and Official Committee of Unsecured Creditors* filed herein on May 7, 2024 [Docket No. 342] (as may be amended, modified, or supplemented, the "**Plan**")[1], by the Debtors and the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "**Committee**," and together with the Debtors, the "**Plan Proponents**"); due written notice having been given to all parties entitled thereto by order of the Court entered on May 8, 2024 [Docket No. 353] (the "**Combined Hearing Order**"), as evidenced by the Certificates of Service filed herein on May 9, 2024 and May 16, 2024 [Docket Nos. 357, 358 & 363] (the "**Certificates of**

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

**Service**”); any objections to the adequacy of the Disclosure Statement or confirmation of the Plan having been considered and overruled, or resolved by agreement of the objector and the Plan Proponents; the Court having reviewed and considered the Plan, the Disclosure Statement, the *Declaration of Emily Young on Behalf of Epiq Corporate Restructuring, LLC Regarding Solicitation, Tabulation and Reporting of Ballots Cast on the Joint Liquidating Plan Proposed by the Debtors and Official Committee of Unsecured Creditors* (including the “**Ballot Report**” attached thereto as Exhibit A) filed herein on June 21, 2024 [Docket No. 389] (the “**Ballot Report Declaration**”), the *Declaration of Michael L. Gesas in Support of Confirmation of the Joint Liquidating Plan* [Docket No. 392] (the “**SIR Trustee Declaration**”), and the *Declaration of Timothy A Muntz in Support of Confirmation of Joint Liquidating Plan* [Docket No. ___] (the “**Confirmation Declaration**”); the SIR Trustee Declaration and the Confirmation Declaration having been uncontroverted by any party in interest at the Combined Hearing, or the SIR Trustee Declaration and the Confirmation Declaration having been challenged by a party in interest but in a manner insufficient to preclude confirmation of the Plan, and the Court therefore having accepted the statements made in the SIR Trustee Declaration and the Confirmation Declaration as true in making the findings of fact and conclusions of law set forth herein; the Court having taken judicial notice of all filings related to the Plan and the Disclosure Statement, and having heard and considered the statements of counsel and other parties in interest present; and the Court being otherwise fully advised in the premises, the Court hereby makes the following findings of fact and conclusions of law[2]:

A.　　Due and sufficient notice and opportunity to review and evaluate the Plan and the Disclosure Statement, and to participate in the Combined Hearing, as evidenced by the Certificates of

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. Fed. R. Bankr. P. 7052.

Service, has been given to all parties entitled thereto pursuant to the applicable Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and in accordance with the Combined Hearing Order.

B.      The Plan voting, solicitation and tabulation procedures implemented by the Debtors were consistent with section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), and the Combined Hearing Order.

C.      The Disclosure Statement contains "adequate information," as defined in section 1125(a)(1) of the Bankruptcy Code, and complies with all applicable requirements of Rule 3016-1 of the Local Rules of the Bankruptcy Court (the "**Local Rules**").

D.      The Plan contains all required elements as set forth in section 1123(a) of the Bankruptcy Code.

E.      The Ballot Report Declaration, inclusive of the Ballot Report attached thereto, complies or substantially complies with all requirements of Local Rule 3018-1.

F.      The Plan and the Plan Proponents comply with the applicable provisions of chapter 11 of the Bankruptcy Code, and the Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(1) – (3) of the Bankruptcy Code.

G.      All payments made or promised by the Plan Proponents under the Plan or by any other person for services or for costs and expenses in, or in connection with, the Plan and incident to the Chapter 11 Cases, have been fully disclosed to the Court and are reasonable or, if to be fixed after confirmation of the Plan, will be subject to the approval of the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

H.     There are no governmental regulatory commissions with jurisdiction, after confirmation of the Plan, over the rates of the Debtors, thereby satisfying or rendering moot section 1129(a)(6) of the Bankruptcy Code.

I.     The Plan sets forth the following six (6) classes ("**Classes**," and each, a "**Class**") of claims ("**Claims**," and each, a "**Claim**") and equity interests ("**Equity Interests**") for the Debtors, including subclasses (a) and (b) to each Class: Class 1 – Allowed Claims of SVCB; Class 2 – Priority Non-Tax Claims; Class 3 – Other Secured Claims; Class 4 – General Unsecured Claims; Class 5 – SIR Claims; and Class 6 – Equity Interests.

J.     Class 1(a), Class 2, and Class 3 are unimpaired under the Plan, and pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan. Class 1(b), Class 4 and Class 5 are impaired under the Plan. Class 6 is not entitled to receive any distributions under the Plan, and pursuant to section 1126(g) of the Bankruptcy Code, is conclusively presumed to have rejected the Plan.

K.     With respect to each impaired Class of Claims or Equity Interests, each holder of a Claim of such Class or Equity Interest (i) has accepted the Plan or (ii) will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the applicable Debtor was liquidated under chapter 7 of the Bankruptcy Code, thereby satisfying section 1129(a)(7) of the Bankruptcy Code.

L.     The Plan has been accepted in writing by the requisite number and percentage of Creditors entitled to vote and who timely submitted ballots to accept or reject the Plan for Class 1(b), Class 4 and Class 5, respectively, including any applicable subclasses thereto, without including the acceptance of the Plan by any insiders, thereby satisfying section 1129(a)(8) of the Bankruptcy Code as to Class 1(b), Class 4 and Class 5, and section 1129(a)(10) of the Bankruptcy Code.

M.      The Plan provides that with respect to:

(i)      a Claim of a kind specified in sections 507(a)(1) through 507(a)(7) of the Bankruptcy Code, on the Effective Date of the Plan, the holder of such Claim will receive on account of such Claim cash equal to the allowed amount of such Claim; and

(ii)      a Claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, the holder of such Claim will receive payments in regular installments over a period not to exceed 5 years from the Petition Date, the total value of which shall be equal to the allowed amount of such Claim as of the Effective Date, with interest payable at the applicable interest rate under applicable non-bankruptcy law,

thereby satisfying or rendering moot section 1129(a)(9) of the Bankruptcy Code.

N.      The complete liquidation of all remaining property of the Debtors' estates is proposed in the Plan, thereby satisfying or rendering moot section 1129(a)(11) of the Bankruptcy Code.

O.      All fees payable under 28 U.S.C. § 1930 have been or will be paid on the Effective Date of the Plan, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

P.      The Debtors are not obligated to pay any retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at any time prior to confirmation of the Plan, thereby satisfying or rendering moot section 1129(a)(13) of the Bankruptcy Code.

Q.      The Debtors are a business entity and are not required to pay domestic support obligations, thereby satisfying or rendering moot section 1129(a)(14) and (15) of the Bankruptcy Code.

R.      The Plan provides that all transfers of property under the Plan shall be made in accordance with applicable provisions of non-bankruptcy law governing the Debtors, thereby satisfying section 1129(a)(16) of the Bankruptcy Code.

S.      The Plan does not discriminate unfairly in that each Claim or Equity Interest placed in each Class, including each subclass thereto, is substantially similar to the other Claims or Equity Interests, as the case may be, in such Class.

T.      The Plan treats Equity Interests fairly and equitably, as no holder of an interest junior to the Equity Interests will receive or retain any property under the Plan on account of such interest junior to that of the Equity Interests, thereby satisfying section 1129(b) of the Bankruptcy Code.

U.      No other plan of liquidation or reorganization has been presented to the Court for approval, and thus, the Plan is the only plan being approved by the Court, thereby satisfying section 1129(c) of the Bankruptcy Code.

V.      The Plan is not being proposed to avoid taxes or the application of section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

W.      Based upon the findings above, the SIR Trustee Declaration, the Confirmation Declaration, evidence proffered, adduced and/or presented at the Combined Hearing, statements of counsel and interested parties having been made on the record on the date hereof, and applicable documents of record in the Chapter 11 Cases, the Plan Proponents have satisfied their burden of proving the applicable elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence.

X.      There is no just reason to stay the enforcement of this Order.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.      The above-described findings are incorporated herein as if fully restated here.

2.      The Ballot Report is approved.

3.      The Disclosure Statement is approved on a final basis.

4.      The Plan, a copy of which is attached hereto as Exhibit 1, is confirmed pursuant to section 1141 of the Bankruptcy Code.

5.      The Creditor Trust Agreement, in the form filed herein on June 25, 2024 [Docket No. 396] as Amended Exhibit "A" to the Plan, and attached hereto as Exhibit "A" to Exhibit 1, is approved, and all parties thereto are authorized to execute same.

6.      The SIR Trust Agreement, in the form filed herein on June 25, 2024 [Docket No. 398] as Amended Exhibit "B" to the Plan, and attached hereto as Exhibit "B" to Exhibit 1, is approved, and all parties thereto are authorized to execute same.

7.      The *Plan Supplement* [Docket No. 385] (the "**Plan Supplement**"), including the *Agreement to Accept Appointment as Trustee* attached as Exhibit "A" thereto (the "**Appointment Agreement**"), is hereby approved, and all parties to the Appointment Agreement are authorized to execute same.

8.      Pursuant to Section 7.05 of the Plan any applicable state agencies are authorized and directed to register the Debtors as dissolved as of the Effective Date.

9.      Pursuant to Section 8.18 of the Plan, each insurance company for which the Debtors, or either of them, are an insured under a policy issued by such insurance company, is prohibited from denying, refusing, altering or delaying coverage on any basis regarding or related to the Chapter 11 Cases, the Plan, or any provision within the Plan, including the treatment or means of liquidation set out within the Plan for any insured Claims (including SIR Claims) or Creditor Trust Causes of Action.

10.     The Plan was negotiated in good faith and at arm's length, and the Debtors have not engaged in any collusive or unfair conduct in connection with the Plan.

11.     The injunction and exculpation provisions set forth in Article XII of the Plan are hereby approved, *provided, however*, that Section 12.01 of the Plan is hereby deleted in its entirety and replaced with the following new Section 12.01:

**12.01   Temporary Injunction.**

**(a)     Except as otherwise expressly provided in the Plan, from and after the Effective Date until the closing of the Chapter 11 Cases, all holders of Claims against or Equity Interests in the Debtors or the Estates, or any of them, whether or not they are entitled to and/or have filed proofs of Claim in the Chapter 11 Cases on or before the applicable Bar Date, and their respective heirs, legal representatives, officers, directors, managers, shareholders, employees, partners, members, subsidiaries, affiliates, representatives, agents, insurers, successors and assigns, as applicable, shall be and are hereby temporarily stayed, restrained, and enjoined from taking one or more of the following actions against the Creditor Trustee, the Creditor Trust and/or the Creditor Trust Assets, and all of their respective successors and assigns, and each of them (collectively, the "Temporary Injunction Beneficiaries"), for the purpose of, directly or indirectly, by claim, cross-claim, or setoff, collecting, recovering or receiving payment of, or recovery on or with respect to any Claims against or Equity Interests in the Debtors or the Estates arising out of, under, or related to the Chapter 11 Cases (including any derivative Claims, asserted, or that could possibly have been asserted, directly or indirectly on behalf of the Debtors or the Estates) (the "Temporary Enjoined Claims"), whether such Temporary Enjoined Claims are presently known or unknown, or are presently asserted or assertable (other than actions brought to enforce any right or obligation under the Plan, or otherwise in favor of the Debtors, which actions will be heard by the Bankruptcy Court pursuant to Section** Error! Reference source not found. **of the Plan):**

**(i)     with respect to the Temporary Enjoined Claims, commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, claim, cross-claim, or other proceeding (including, without limitation, any suit, action, claim, cross-claim, or other proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Temporary Injunction Beneficiaries, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Temporary Injunction Beneficiaries, or any property of any such transferee or successor;**

**(ii)     with respect to the Temporary Enjoined Claims, enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against the Temporary Injunction**

Beneficiaries, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Temporary Injunction Beneficiaries, or any property of any such transferee or successor;

(iii)    with respect to the Temporary Enjoined Claims, creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance against the Temporary Injunction Beneficiaries, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Temporary Injunction Beneficiaries, or any property of any such transferee or successor;

(iv)    with respect to the Temporary Enjoined Claims, setting off, seeking reimbursement of, contribution from, or subrogation against or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to the Temporary Injunction Beneficiaries, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Temporary Injunction Beneficiaries ; and/or

(v)    with respect to the Temporary Enjoined Claims, proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the terms of the Plan, except in conformity and compliance herewith.

(b)    Notwithstanding anything to the contrary in the Plan, the injunction set forth in this Section 12.01 shall not enjoin any of the Temporary Injunction Beneficiaries, if and to the extent applicable, from asserting claims, cross-claims, counterclaims, demands, setoffs, recoupments, arguments, defenses, or otherwise against any Claims filed in the Chapter 11 Cases against them or otherwise held by any party, all of which rights are hereby expressly preserved. The temporary injunction is an integral part of the Plan because it: ( (i) facilitates the expeditious and effective performance of the Plan; (ii) guards against collateral attack or interference with the consummation of the Plan and improper use of the Creditor Trust Funds; and (iii) protects the rights, interests and claims of the Temporary Injunction Beneficiaries and all creditors during the Chapter 11 Cases. As such, the provisions of this injunction will be construed as broadly as the law and English language permit.

(c)    Nothing contained herein shall: (i) relieve or diminish the duties, responsibilities, or obligations of the Temporary Injunction Beneficiaries as set forth in the Plan; (ii) impair any party's right to appear or bring an action in the Bankruptcy Court to enforce or assert any right or obligation under the Plan; or (iii) impair any party's rights, if any, against the Temporary Injunction Beneficiaries following the closing of the Chapter 11 Cases.

**(d)      For the avoidance of doubt, nothing herein is intended to, nor shall be deemed, to enjoin the Creditor Trustee from pursuing the Creditor Trust Causes of Action.**

**(e)      If, notwithstanding the temporary injunction in favor of the Temporary Injunction Beneficiaries set forth herein, any suit, action, claim, cross-claim, or other proceeding (including, without limitation, any suit, action, claim, cross-claim, or other proceeding in a judicial, arbitral, administrative or other forum) is brought against or affects the Temporary Injunction Beneficiaries in violation of the terms of the Plan prior to the distribution of all monies on deposit in the Creditor Trust, the Creditor Trustee will, in its reasonable business judgment, be entitled to withhold from distribution to holders of Allowed Claims that amount of monies on deposit in the Creditor Trust Accounts which the Temporary Injunction Beneficiaries believe will be necessary to pay for any and all judgments, claims, damages, costs, and expenses, including reasonable attorneys' fees and expenses, incurred or estimated to be incurred by the Temporary Injunction Beneficiaries pending the entry of a Final Order by the Bankruptcy Court resolving such dispute(s). Upon the entry of a Final Order by the Bankruptcy Court resolving such dispute(s), the Creditor Trustee shall proceed to distribute any and all such funds withheld and not expended in accordance with the terms of the Plan.**

12.      The injunction and exculpation provisions of the Plan, as may be modified or amended herein: (a) are within the jurisdiction of the Court under 28 U.S.C. §§ 157(b)(1), 157(b)(2), 1334(a), 1334(b) and 1334(d); (b) are an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) confer material benefits on, and are in the best interests of, the Debtors, the Estates, and their creditors; (d) are critical to the overall objectives of the Plan to finally resolve all Claims and Equity Interests among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; (e) are consistent with sections 105, 1123 and 1129 of the Bankruptcy Code and other applicable law; and (f) are fair, equitable, reasonable and necessary to the Plan. Based upon the record of the Chapter 11 Cases, the Confirmation Declaration and the evidence proffered, adduced and/or presented at the Combined Hearing, if any, the Court finds that the injunction and exculpation provisions in the Plan are consistent with the Bankruptcy Code and applicable law.

13.     Pursuant to Bankruptcy Rule 3020(c)(1), the following channeling injunction provision under the Plan and the temporary injunction provision in paragraph 11 hereof are hereby approved, and so ordered, and shall be immediately effective on the Effective Date without order or action by the Court, any of the parties to such provisions, or any other persons or entities:

**12.02   Channeling Injunction**.

**(a)     Upon the Effective Date, the automatic stay under Bankruptcy Code § 362 is lifted as to all SIR Claims, but all SIR Claims are channeled exclusively to the SIR Trust and the SIR Policies. The sole sources of recovery for holders of SIR Claims are from the SIR Trust, the SIR Policies and any non-Debtor Persons or entities co-liable on such Claims. Neither the holders of SIR Claims nor the SIR Trust will have any recourse to or Claims whatsoever against the Debtors or their assets and property (other than the SIR Policies), nor will holders of SIR Claims be entitled to treatment as a Creditor Trust Beneficiary on account of such Claims. Consistent with the foregoing, all entities that have held or asserted, or that hold or assert, any SIR Claims are permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or its assets and property (other than the SIR Policies) with respect to any SIR Claims, including any and all of the following actions:**

**(i)     commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any SIR Claim, against or affecting any Debtor, the Creditor Trust, or any property or interests in property of any Debtor with respect to any such SIR Claim;**

**(ii)     enforcing, levying, attaching, collecting, or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree, or other order against any Debtor, the Creditor Trust, or against the property of any Debtor with respect to any such SIR Claim;**

**(iii)     creating, perfecting, or enforcing in any manner, whether directly or indirectly, any lien of any kind against any Debtor, Creditor Trust, or the property of any Debtor with respect to any such SIR Claim;**

**(iv)     asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Debtor, Creditor Trust, or against the property of any Debtor with respect to any such SIR Claim; and/or**

**(v)** **taking any action, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, the Confirmation Order, or SIR Trust Agreement with respect to any SIR Claim.**

**(b)** **Rights Reserved.** Notwithstanding any provisions of this Section 12.02 to the contrary, the Channeling Injunction does **not** enjoin:

**(i)** the rights of holders of SIR Claims to the treatment afforded to them by the Plan, including the right to assert such Claims against the SIR Trust, the SIR Policies and any non-Debtor Persons or entities co-liable on such SIR Claims;

**(ii)** the commencement or continuation of any suit, action, or other proceeding in any forum against the Debtors, or either of them, with respect to any SIR Claims, *provided, however,* that any recovery against the assets or property of the Debtors on account of such suit, action or other proceeding shall be limited to the SIR Policies; *provided further,* that nothing herein shall preclude holders of SIR Claims from commencing or continuing any suit, action or other proceeding, and recovering against, any non-Debtor Persons or entities co-liable with the Debtors on such Claims; or

**(iii)** the SIR Trustee from enforcing its rights under the terms of the SIR Trust Agreement.

**(c)** **Modifications**. There can be no modification, dissolution, or termination of the Channeling Injunction, which is permanent.

**(d)** **No Limitation on Channeling Injunction**. Nothing in the Plan, the Confirmation Order, or the SIR Trust Agreement may be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for in this Plan and the Confirmation Order.

**(e)** **Compliance with Bankruptcy Rule 3016**. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 does not, and may not be construed to, constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

14.     Notwithstanding anything to the contrary in the Plan (including, but not limited to

Sections 12.01 and 12.02 thereof), this Order, or any exhibits, schedules or other attachments to

the Plan or this Order, nothing in the Plan or this Order discharges, releases, or enjoins any claim,

right, cause of action or suit of the United States or its agencies against the Debtors or any non-

debtor, or any debt, obligation or liability owed by the Debtors or a non-debtor to the United States

or its agencies, and nothing in the Plan or this Order shall affect or impair any setoff or recoupment

rights and defenses of the United States or its agencies. In addition, nothing in the Plan or this

Order shall preclude the Centers for Medicare & Medicaid Services from recouping or setting off

the full amount of any overpayments resulting from Debtors' filing or failure to file their cost

reports for 2023 or the full amount of any other overpayments, subject to any rights of the Debtors

and/or the Creditor Trustee to dispute any such recoupment(s) or setoff(s). For the avoidance of

doubt, the United States and its agencies, in the absence of any default on the terms of the Plan

and until the close of the Chapter 11 Cases, will not commence any action or proceeding (other

than any ongoing recoupment or setoff permitted under this paragraph) against the Creditor Trustee

to enforce or collect on any Claims filed by the United States or its agencies in the Chapter 11

Cases.

15.     Section 1.28 of the Plan is hereby deleted in its entirety and replaced with the following

new Section 1.28:

> **1.28   Creditor Trust Assets** means (a) the Creditor Trust Funds; (b) the Creditor
> Trust Causes of Action; (c) the Debtors' books and records pertaining to the
> Creditor Trust Causes of Action;  (d) the VDAs; (e) the 457(b) Assets; (f) the SV
> Encumbered Real Estate Assets; (g) the SV Unencumbered Real Estate Assets; (h)
> the Remaining Equipment Assets; (i) the Cyber Insurance Claim; (j) the Remaining
> Estate Assets; (k) all attorney-client privileges of the Debtors existing as of the
> Effective Date; and (l) all of the Debtors' rights, title, and interests in, to, or under,
> any insurance policies other than the SIR Policies.

16.     Section 3.02 of the Plan is hereby amended to add the following:

Notwithstanding any other provision of the Plan or the Confirmation Order, the
United States will be paid in full on its Priority Tax Claims through regular
installment payments over a period not to exceed 5 years from the Petition Date in
cash of a total value, as of the Effective Date, equal to the allowed amount of such
claims, with interest accruing from the Effective Date at the applicable rate pursuant
to § 511(b) of the Bankruptcy Code and Sections 6621 and 6622 of the IRC.  Unless
an objection to its Priority Tax Claims has been filed within six (6) months of the
Effective Date, payments will be made beginning six (6) months after the Effective
Date and will be based on the amount asserted in the proof of claims filed by the

Internal Revenue Service unless and until it is determined by a final, non-appealable order of the court, or agreement of the Creditor Trustee and the United States, that the amount of a Priority Tax Claim is less than the amount asserted in the respective proof of claim, in which case the United States will refund any overpayment to the Creditor Trust with interest at the applicable statutory rates from the date the overpayment was received.

Notwithstanding any other provision of the Plan or the Confirmation Order, the Creditor Trust will not make any distributions on account of General Unsecured Claims until the United States' Priority Tax Claim as asserted against the respective Debtor has been satisfied in full or adequately reserved for by the Creditor Trustee except to the extent that the Priority Tax Claim is disallowed in whole or part by a final order with all appeals exhausted or the Creditor Trustee and the United States agree on a reduced claim or reserve amount.

17.    Under Section 6.01 of the Plan, any Person claiming rights in the rejected executory contracts and unexpired leases not previously rejected by order of the Court will have an additional thirty (30) calendar days after the Effective Date to file a Claim for rejection damages in the Chapter 11 Cases.

18.    If and to the extent applicable, the Creditor Trust, the SIR Trust, the Creditor Trustee, and the SIR Trustee will comply with the Medicare Act and regulations. Notwithstanding any provision of the Plan, this Order, or any exhibits, schedules or other attachments to the Plan or this Order, all issues or disputes arising under the Medicare Act, 42 U.S.C. § 1395, *et seq.*, shall be governed exclusively by Medicare statutes, regulations, policies, and procedures, without regard to the Bankruptcy Code or Bankruptcy Rules. 42 U.S.C. §§ 405(g) & (h) & 1395ii; *see, e.g.*, 42 U.S.C. §§ 1395ff, 1395oo. Judicial review of any final Medicare determinations after exhaustion of jurisdictionally required administrative remedies would lie in the statutorily designated federal court in accordance with the Medicare Act. 42 U.S.C. §§ 405(g) & (h) & 1395ii.

19.    Notwithstanding anything in the Plan to the contrary, to the extent any agreements between Blue Cross Blue Shield of Illinois and the Debtors, or either of them, remain in effect as

of the date hereof, such agreements shall not be subject to assumption and assignment under the

Plan, but instead will be deemed rejected as of the Confirmation Date.

20.     Notwithstanding anything to the contrary in this Order, the Plan, and/or any Plan

Supplement (including without limitation, the Creditor Trust Agreement), all of SVCB's rights,

claims, and interests are preserved without the need to have previously filed a formal objection to

confirmation of the Plan concerning the following:

a.      with respect to any potential conveyance of any of the SV Encumbered Real

Estate to SVCB by the Creditor Trustee under the Plan, SVCB and the Debtors (including

any successors in interest thereto) (i) reserve their rights to dispute the value attributed to

the conveyance and the resulting amount of a deficiency claim in favor of SVCB; and (ii)

reserve their rights to seek a determination regarding the potential conveyance to the extent

that SVCB, in its reasonable business judgment, believes the SVCB Encumbered Real

Estate has a Net Negative Value (as defined herein), or the Debtors (including any

successors in interest thereto) dispute any assertion that the SVCB Encumbered Real Estate

has a Net Negative Value;

b.      assertion of a claim under section 506(b) of the Bankruptcy Code in the

event that any of the SV Encumbered Real Estate is sold by the Creditor Trustee for an

amount in excess of the portion of the SVCB Allowed Class 1(b) Claim allocable to such

SV Encumbered Real Estate; and

c.      any decision or action by the Creditor Trustee under the Plan or the Creditor

Trust Agreement with respect to establishing a reserve for any Disputed Claims involving

SVCB, including any Claim SVCB may have under section 502(h) of the Bankruptcy

Code.

As used in this paragraph, "Net Negative Value" shall mean, with respect to any parcel of SV Encumbered Real Estate, that such real estate's anticipated market value is less than the expected out-of-pocket costs required to maintain such real estate in a saleable condition during a reasonable time period to market the real estate for sale and close on any such sale transaction.

21.    SVCB is permitted to raise any of the foregoing items in paragraph 20 hereof with the Bankruptcy Court by a motion or objection to a motion brought by the Creditor Trustee or any other appropriate party in interest. Nothing in this Order, the Plan, and/or any Plan Supplement shall prohibit or restrict SVCB, on the one hand, and the Creditor Trustee or another appropriate party in interest, on the other hand, from resolving any dispute addressed in this paragraph by written agreement or agreed motion under Bankruptcy Rule 9019.

22.    Nothing in paragraphs 20 or 21 hereof shall limit, prejudice, impair, or abrogate SVCB's rights under (a) this Order, (b) the Plan, (c) any Plan Supplement (including without limitation, the Creditor Trust Agreement), and (d) applicable law. All such rights are expressly preserved.

23.    Pursuant to a prior order of the Court [Docket No. 197], the deadline for Christine Ceresa ("**Ceresa**") to file proofs of claim against either or both of the Debtors or their Estates is a date that is expected to be 30 days after this Order becomes a final, non-appealable order. Ceresa is the Plaintiff in the action captioned *Ceresa v. PD Derm Ltd., et al.*, pending in the Circuit Court of Cook County, Illinois as Case No. 2023 L 000627 (including any other caption and/or case number that this action may obtain or may have obtained to the extent the action has or may be transferred to another court, the "**Ceresa Action**"), in which Ceresa has alleged tort and related claims against both of the Debtors and others (the "**Ceresa Claims**").  Notwithstanding any other provisions in the Plan or this Order, for all purposes under the Plan, the Ceresa Claims are and

shall be deemed timely filed SIR Claims under Class 5 (both Class 5(a) and Class 5(b)) of the Plan

and the Bar Dates shall not apply to the Ceresa Claims.  Notwithstanding any other provision of

the Plan or this Order, Ceresa is not and shall not be required to file any proofs of claim against

either or both of the Debtors, and the Ceresa Claims shall be fixed as to amount and either Allowed

or Disallowed in accordance with Section 1.08(d) of the Plan, with any distribution(s) from the

SIR Trust governed by the Plan and SIR Trust Agreement.

24.     The ballots filed by Ceresa with respect to Class 5(a) and 5(b) are hereby deemed valid

for purposes of voting on the Plan.

25.     In the event of any inconsistency between the Plan and any other agreement,

instrument or document intended to implement the provisions of the Plan, the provisions of the

Plan shall govern. If there is determined to be any inconsistency between any Plan provision and

any provision of this Order that cannot be reasonably reconciled, then, solely to the extent of such

inconsistency, the provisions of this Order shall govern and any such provision of this Order shall

be deemed to be a modification of the Plan and shall control and take precedence. All prior orders

of this Court shall remain in full force and effect; *provided*, *however*, that this Order shall supersede

any orders of this Court issued prior to the Effective Date of the Plan that may be inconsistent

herewith, solely to the extent of such inconsistency.

26.     This Order substantially conforms to the Official Form required under Bankruptcy

Rule 3020(c).

27.     The form of the *Notice of (A) Confirmation; (B) Effective Date; and (C) Bar Dates for

Filing Administrative Claims, Professional Fee Claims, and Rejection Damages* (the "**Effective Date

Notice**"), attached hereto as <u>Exhibit 2</u>, is hereby approved, and the Debtors are authorized to mail or

cause to be mailed such Effective Date Notice as required under Bankruptcy Rule 3020(c) no later than

three (3) business days after the occurrence of the Effective Date under the Plan.

28.     The Court retains jurisdiction to issue any order necessary to administer the Debtors'

estates, as set forth in Bankruptcy Rule 3020(d) and the Plan.

29.     This Order shall not be stayed pursuant to Bankruptcy Rule 3020(e).

30.     A post-confirmation status hearing shall be held before the undersigned on

_____ _____, 2024, at _____ (Central Time).

Dated:  June ____, 2024

_____
United States Bankruptcy Judge

*This order prepared by:*
Henry B. Merens, Esq. (ARDC #6181695)
Steven B. Chaiken, Esq. (ARDC #6272045)
Erich S. Buck, Esq. (ARDC #6274635)
Adelman & Gettleman, Ltd.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel (312) 435-1050
Fax (312) 435-1059
**Counsel for the Debtors**

# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| St. Margaret's Health – Peru and St. | ) | Case No. 23-11641 |
| Margaret's Health – Spring Valley, | ) | (Jointly Administrated) |
| | ) | |
| Debtors. | ) | Hon. David D. Cleary |
| | ) | |

**JOINT LIQUIDATING PLAN PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Henry B. Merens
Erich S. Buck
Steven B. Chaiken
**ADELMAN & GETTLEMAN, LTD.**
53 W. Jackson Blvd., Ste. 1050
Chicago, IL 60604
Telephone: 312.435.1050

*Counsel to the Debtors and Debtors in Possession*

Elizabeth B. Vandesteeg
Jack R. O'Connor
Heidi M. Hockberger
**LEVENFELD PEARLSTEIN, LLC**
120 S. Riverside Plz., Ste. 1800
Chicago, Illinois 60606
Telephone: 312.346.8380

*Counsel to the Official Committee of Unsecured Creditors*

## INTRODUCTION

St. Margaret's Health – Peru and St. Margaret's Health – Spring Valley, debtors and debtors in possession, and the Official Committee of Unsecured Creditors of St. Margaret's Health – Peru and St. Margaret's Health – Spring Valley, appointed in the above-captioned Chapter 11 Cases, jointly propose this Plan[1] pursuant to the provisions of Chapter 11 of the Bankruptcy Code. Reference is made to the accompanying Disclosure Statement and appendices thereto for a discussion of the Debtors' history, business, results of operations and properties, the postpetition liquidation of substantially all of the Debtors' assets, a summary of the assets and liabilities of the Debtors, a summary of what Claim and Equity Interest holders can expect to receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan, a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed, and related information.

All holders of Claims and Equity Interests should read the Disclosure Statement and the Plan carefully—and consult with their counsel and other applicable professionals—before voting to accept or reject the Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of creditors, and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed. If the Plan is not confirmed, the Bankruptcy Court may order the Chapter 11 Cases dismissed or converted to liquidating cases under Chapter 7 of the Bankruptcy Code, or the Debtors or other parties in interest may propose a different plan.

## RULES OF INTERPRETATION AND COMPUTATION OF TIME

For purposes of the Plan and unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, includes both the singular and the plural; (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or schedule, filed or to be filed, means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) any reference to an entity as a holder of a Claim or Equity Interest includes that entity's successors and assigns; (e) all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (f) the words "herein," "hereunder," "hereto," and others of similar import refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) the rules of construction set forth in § 102 of the Bankruptcy Code and in the Bankruptcy Rules apply; (i) in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) apply; and (j) the word "including" is not deemed to be exclusive, and means "including without limitation."

---

[1]    Capitalized terms used in this Plan without a corresponding meaning after their initial use bear the meaning given to them under 1.a.i.Article I of the Plan.

# Article I.
## Definitions

The definitions and rules of construction set forth in the Bankruptcy Rules and Bankruptcy Code §§ 101 and 102 apply when terms defined or construed therein are used in the Plan. Said definitions and rules of construction will be supplemented by the following definitions:

**1.01    457(b) Assets** means the funds currently held by Principal that are the subject of the 457(b) Litigation Claim.

**1.02    457(b) Litigation** means that certain adversary proceeding pending before the Bankruptcy Court styled *The Official Committee of Unsecured Creditors v. Delaware Charter Guarantee & Trust Company d/b/a Principal Trust Company, et al.*, proceeding under Adversary Proceeding number 24-ap-00063, seeking declaratory relief relating to, and turnover of, the 457(b) Assets to the Estates.

**1.03    457(b) Litigation Claim** means the claims asserted by the Committee on behalf of the Estates in the 457(b) Litigation, including any claims that may be later asserted in the 457(b) Litigation by amendment.

**1.04    503(b)(9) Claims** means those Claims arising under § 503(b)(9) of the Bankruptcy Code.

**1.05    A&G** means Adelman & Gettleman, Ltd., the Debtors' bankruptcy counsel in the Chapter 11 Cases.

**1.06    Administrative Expense Bar Date** means thirty (30) days following the Effective Date, the deadline by which requests for payment of (a) any Professional Fee Claims arising before the Effective Date, and (b) any other Administrative Expense Claims arising after May 1, 2024, and before the Effective Date, must be filed in the Chapter 11 Cases.

**1.07    Administrative Expense Claim** means any cost, claim or expense of administration of the Chapter 11 Cases entitled to priority in accordance with §§ 503(b) and 507(a)(2) of the Bankruptcy Code, including any actual and necessary expenses of preserving the Estates including all Professional Fee Claims to the extent Allowed by the Bankruptcy Court against the Estates under §§ 330, 331 and 503 of the Bankruptcy Code, and including fees due to the United States Trustee assessed against the Estates pursuant to 28 U.S.C. § 1930(a)(6).

**1.08    Allowed** or **Allowed Claim** means a Claim or any portion thereof: (a) that has been allowed by a Final Order of the Bankruptcy Court; (b) that has been scheduled as a liquidated, noncontingent, and undisputed Claim in an amount greater than zero in the Schedules for which no conflicting proof of Claim has been filed and as to which no objection has been filed; (c) that is the subject of a timely filed proof of Claim that has been expressly allowed in a liquidated amount (i) in the Plan, (ii) by Final Order of the Bankruptcy Court, (iii) after the Effective Date, by the Creditor Trustee in writing; or (d) solely with respect to a SIR Claim, (i) that has been reduced to judgment by a Final Order and a certified of copy of such judgment has been presented to the SIR Trustee pursuant to the terms of the SIR Trust Agreement, (ii) that has been settled pursuant to a written, fully executed settlement agreement which has been presented to the SIR Trustee pursuant to the terms of the SIR Trust Agreement, or (iii) that has been settled by written

3

agreement between the holder of the SIR Claim and the SIR Trustee. Except as otherwise provided in the Plan or by order of the Bankruptcy Court, "Allowed" and "Allowed Claim" does not include interest, fees, costs or charges on such Claim from and after the Petition Date, except as provided in § 506(b) of the Bankruptcy Code or as otherwise expressly set forth in the Plan. For the avoidance of doubt, the SVCB Allowed Class 1(a) Claim and SVCB Allowed Class 1(b) Claim, each as defined herein, shall each be deemed Allowed or an Allowed Claim for purposes of this Plan, subject in all respects to any claims arising under § 502(d) of the Bankruptcy Code.

**1.09    Ballots** means the ballots mailed to holders of the Class 1(b) Claim of SVCB, Class 4 General Unsecured Claims, and Class 5 SIR Claims for voting on whether to accept or reject the Plan.

**1.10    Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

**1.11    Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, or any court vested with jurisdiction over the Chapter 11 Cases.

**1.12    Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended and supplemented by the *Local Rules of the United States Bankruptcy Court for the Northern District of Illinois* effective as of April 19, 2022.

**1.13    Bar Dates** means the General Bar Date and the Governmental Unit Bar Date.

**1.14    Channeling Injunction** means the permanent injunction provided for in Section 12.02 of the Plan with respect to SIR Claims to be issued pursuant to, and included in, the Confirmation Order.

**1.15    Chapter 11 Cases** means the cases commenced under Chapter 11 of the Bankruptcy Code by the Debtors on the Petition Date, styled *In re St. Margaret's Health – Peru*, Case No. 23-11641, and *In re St. Margaret's Health – Spring Valley*, Case No. 23-11642, jointly administered under Case No. 23-11641, both currently pending in the Bankruptcy Court.

**1.16    Claim** means a claim (as defined in § 101(5) of the Bankruptcy Code) against one or more of the Debtors, including: (a) any right to payment from a Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from a Debtor, whether or not such right is reduced to judgment, fixed, contingent, mature, unmatured, disputed, undisputed, secured or unsecured.

**1.17    Claims Register** means the register of all Claims filed in the Chapter 11 Cases and maintained by the Debtors' Bankruptcy Court-approved noticing, claims and solicitation agent, Epiq.

**1.18    Class** means any group or category into which holders of Claims or Equity Interests are classified pursuant to Article II of the Plan.

1320266v2

**1.19**    **Collateral** means any property or interest in property of the Estates subject to a lien, security interest, or other encumbrance to secure the payment or performance of a Claim, which lien, security interest or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state or federal law.

**1.20**    **Committee** means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases on September 13, 2023 (Dkt. 42).

**1.21**    **Committee Members** means those Persons appointed by the Office of the United States Trustee to serve as members of the Committee.

**1.22**    **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order.

**1.23**    **Confirmation Hearing** means the hearing on the adequacy of the Disclosure Statement and confirmation of the Plan to be held in the Bankruptcy Court on June 27, 2024 at 10:00 a.m. (prevailing Central Time).

**1.24**    **Confirmation Order** means the Final Order that the Bankruptcy Court enters pursuant to §§ 1125 and 1129 of the Bankruptcy Code: (a) determining the Disclosure Statement contains "adequate information"; and (b) confirming the Plan and approving the transactions contemplated therein, in accordance with Article VII of the Plan.

**1.25**    **Creditor Trust** means the entity established pursuant to the Plan, the Creditor Trust Agreement, and the Confirmation Order for the sole and exclusive benefit of the Creditor Trust Beneficiaries. The Creditor Trust will liquidate and distribute the Creditor Trust Assets in accordance with the Creditor Trust Agreement and the Plan.

**1.26**    **Creditor Trust Account(s)** means one or more segregated interest-bearing trust fund accounts established by the Creditor Trustee at a federally insured depository bank(s).

**1.27**    **Creditor Trust Agreement** means the agreement to be executed by the Debtors and Creditor Trustee as soon as reasonably practicable after the Confirmation Date, in a form substantially similar to the Creditor Trust Agreement attached to the Plan as ***Exhibit A***, which will govern the obligations of the Creditor Trustee with respect to the Creditor Trust Assets.

**1.28**    **Creditor Trust Assets** means (a) the Creditor Trust Funds; (b) the Creditor Trust Causes of Action; (c) the Debtors' books and records pertaining to the Creditor Trust Causes of Action; (d) the Remaining Estate Assets; (e) all attorney-client privileges of the Debtors existing as of the Effective Date; and (f) all of the Debtors' rights, title, and interests in, to, or under, any insurance policies other than the SIR Policies.

**1.29**    **Creditor Trust Beneficiaries** means the holders of Allowed 503(b)(9) Claims, Allowed Priority Claims, and Allowed General Unsecured Claims entitled to share in the Creditor Trust Assets.

**1.30**    **Creditor Trust Causes of Action** means any and all interests of the Debtors and their Estates in (a) claims and causes of action arising under Chapter 5 of the Bankruptcy Code or their state law analogs, including preference and fraudulent transfer claims; (b) any and all claims

and causes of action set forth in the Debtors' Schedules; (c) commercial tort claims; (d) other claims and causes of action arising under applicable state or federal law; and (e) rights and defenses of setoff and recoupment with respect to the foregoing claims and causes of action. For the avoidance of doubt, the Creditor Trust Causes of Action include the SVCB Causes of Action, the Heartland Causes of Action, the D&O Causes of Action and the 457(b) Litigation Claim.

**1.31    Creditor Trust Expenses** means the reasonable fees and expenses incurred by the Creditor Trust and any professionals retained by the Creditor Trustee and any other administrative expenses and costs of the Creditor Trust, including bank fees, professional fees and costs, United States Trustee Fees, and all other expenses related to winding up the business affairs of the Debtors.

**1.32    Creditor Trust Funds** means the Estate Funds and the OSF Holdback.

**1.33    Creditor Trust Interests** means the non-transferable interests in the Creditor Trust that are issued to Creditor Trust Beneficiaries pursuant to the Plan.

**1.34    Creditor Trustee** means such Person, including any replacements thereof or successors thereto, as may be designated by the then-former members of the Committee, to serve as a custodian for the Creditor Trust and to oversee the liquidation and distribution of the Creditor Trust Assets held therein pursuant to §§ 1123 and 1129 of the Bankruptcy Code, and further subject to the provisions of Article VIII of the Plan and the Creditor Trust Agreement. Any Person serving as the Creditor Trustee must be a "disinterested person" under § 101(14) of the Bankruptcy Code.

**1.35    Cyber Attack** means the ransomware attack against SMH-SV occurring in February 2021.

**1.36    Cyber Insurance Claim** means the rights and claims of SMH-SV against CFC Underwriting Limited ("**CFC**") for additional reimbursement under CFC Cyber Policy ESJ002625422 (the "**Cyber Policy**") in connection with the Cyber Attack.

**1.37    D&O Causes of Action** means any and all rights, claims, and causes of action of the Debtors and their Estates may have against directors and officers of either or both of the Debtors, including any claims that may be made against applicable insurance policies related to the D&O Causes of Action.

**1.38    Debtors** means St. Margaret's Health - Peru and St. Margaret's Health – Spring Valley, debtors and debtors in possession in the Chapter 11 Cases, and each, a "**Debtor**."

**1.39    Disallowed** or **Disallowed Claim** means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or by agreement of the holder of a Claim; (b) a Claim that has been listed in the Schedules with a zero-dollar amount or as contingent, disputed, or unliquidated and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or other applicable law; or (c) a Claim that has not been listed in the Schedules and as to which no proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or other applicable law.

**1.40**    **Disclosure Statement** means that certain Disclosure Statement submitted by the Plan Proponents in connection with the Plan.

**1.41**    **Disputed** or **Disputed Claim** means any Claim or portion thereof for which an objection has been filed.

**1.42**    **Disputed Claim Reserve** means such reserve or reserves of Creditor Trust Funds or proceeds of Creditor Trust Assets, as applicable, established in the discretion of the Creditor Trustee for payment of any Disputed Claims in the event such Claims are ultimately Allowed.

**1.43**    **Disputed Ownership Fund** means a "disputed ownership fund" within the meaning of Treasury Regulation § 1.468B-9.

**1.44**    **Distribution Dates** means those dates upon which the Creditor Trustee will make distributions to holders of Allowed Claims described in Article VIII of the Plan.

**1.45**    **Effective Date** means a date selected by the Plan Proponents, which shall be a Business Day after the Confirmation Date on which all conditions specified in Section 11.01 of the Plan have been satisfied (or waived in accordance therewith); *provided, however*, that if a stay of the Confirmation Order is in effect on such day, then the Effective Date shall be the first day thereafter on which, if the Confirmation Order has not been vacated, no stay of the Confirmation Order is in effect.

**1.46**    **Epiq** means Epiq Corporate Restructuring, LLC, the claims, noticing, and solicitation agent employed by the Debtors in the Chapter 11 Cases.

**1.47**    **Equity Interest** means any equity interest in any Debtor, including without limitation any membership interests.

**1.48**    **Estate Funds** means the Debtors' cash on deposit at their depository institutions, Midland States Bank, Hometown National Bank, U.S. Bank, Central Bank Illinois, and Heartland. The aggregate value of the Estate Funds is $1,250,413.65 as of April 23, 2024.

**1.49**    **Estates** means all property of the Debtors' estates, as defined in § 541 of the Bankruptcy Code.

**1.50**    **Exculpated Party** or **Exculpated Parties** means, collectively, and in each case in its capacity as such: (a) the Debtors and their Estates; (b) the Committee and its individual Committee Members; (c) all Professional Persons; and (d) each of the respective current and former directors, officers, equity holders, and partners of each of the Exculpated Parties.

**1.51**    **Final Order** means an order of the Bankruptcy Court or other court of competent jurisdiction, as to which the time to appeal, petition for certiorari, or motion for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing is then-pending, or as to which any right to appeal, petition for certiorari, reargue or rehear has been waived in writing in form and substance satisfactory to the Debtors or the Creditor Trustee (as applicable) or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court will have been determined by the highest court to which such order was appealed, or certiorari, reargument, or

1320266v2

rehearing will have been denied and the time to take any further appeal, petition for certiorari, or motion for reargument or rehearing will have expired; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order will not preclude such order from being a Final Order.

1.52    **General Bar Date** means January 8, 2024, the last day to file proofs of Claim in the Chapter 11 Cases for pre-Petition Date Claims of non-Governmental Units against the Debtors.

1.53    **General Unsecured Claim** means any Claim of a creditor not secured by a lien, security interest or other encumbrance on property of the Estates, arising before the Petition Date, which is not a Secured Claim, Administrative Expense Claim, Priority Claim, or Equity Interest.

1.54    **Governmental Unit** means a "governmental unit" as defined under § 101(27) of the Bankruptcy Code.

1.55    **Governmental Unit Bar Date** means February 27, 2024, the last day to file proofs of Claim in the Chapter 11 Cases for pre-Petition Date Claims of Governmental Units against the Debtors.

1.56    **Heartland** means Heartland Bank and Trust Company.

1.57    **Heartland Causes of Action** means any and all rights, claims, and causes of action of the Debtors and their Estates may have against Heartland, including (without limitation) claims and causes of action (a) arising under Chapter 5 of the Bankruptcy Code; and (b) arising from or relating to the payment of indebtedness owed to Heartland prior to the Petition Date

1.58    **Hinshaw** means Hinshaw & Culbertson LLP, the Debtors' special counsel in the Chapter 11 Cases with respect to regulatory, asset sale, professional malpractice and insurance, labor and employment, and not-for-profit and tax matters.

1.59    **Huron** means Huron Consulting Services, LLC, the Debtors' financial advisor in the Chapter 11 Cases.

1.60    **Impaired** means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of § 1124 of the Bankruptcy Code.

1.61    **Insider** means "insider" as defined in § 101(31) of the Bankruptcy Code.

1.62    **KCP** means KCP Advisory Group, financial advisor to the Committee in the Chapter 11 Cases.

1.63    **LP** means Levenfeld Pearlstein LLC, counsel to the Committee in the Chapter 11 Cases.

1.64    **Medical Data** means the health records, laboratory specimens, results, insurance billing information, relevant paperwork, and related artifacts in the possession, custody or control of the Debtors.

1320266v2

**1.65**   **Objection Deadline** means June 12, 2024, at 4:00 p.m. (prevailing Central Time), the deadline for filing any objections to the Disclosure Statement or the Plan.

**1.66**   **OSF** means OSF Healthcare Systems, Mendota Community Hospital, and Ottawa Regional Hospital and Healthcare System.

**1.67**   **OSF APA** means that certain Asset Purchase Agreement associated with the OSF Sale.

**1.68**   **OSF Holdback** means the sum of $4,650,000.00 held back from the proceeds of the OSF Sale as confirmed by the Bankruptcy Court, which is currently being held in escrow pending the OSF Holdback Release Date. (*See* Dkts.71, 178).

**1.69**   **OSF Holdback Release Date** means November 16, 2024.

**1.70**   **OSF Sale** means the sale transaction entered into and approved by the Bankruptcy Court on September 20, 2023, October 25, 2023, and November 15, 2023. (Dkts. 71, 147, and 178).

**1.71**   **Other Secured Claim** means a Secured Claim against one or more of the Debtors held by any Person other than SVCB.

**1.72**   **Person** means a "person" as defined in § 101(41) of the Bankruptcy Code.

**1.73**   **Petition Date** means August 31, 2023.

**1.74**   **PHI** means protected health information as defined in 45 CFR § 160.103. PHI includes protected health information that is transmitted or maintained by or in electronic media, as defined in 45 CFR § 160.103.

**1.75**   **PII** means personally identifiable information, referring to any specific and unique information relating to or associated with an identified or identifiable natural Person (such as name, postal address, email address, telephone number, date of birth, Social Security number (or its equivalent), driver's license number, account number, credit or debit card number or identification number).

**1.76**   **Plan** means this *Joint Liquidating Plan*, as may be amended in accordance with the terms hereof or modified in accordance with the Bankruptcy Code.

**1.77**   **Plan Proponents** means the Debtors and the Committee.

**1.78**   **Principal** means Delaware Charter Guarantee & Trust Company d/b/a Principal Trust Company.

**1.79**   **Priority Claims** means Priority Tax Claims and Priority Non-Tax Claims.

**1.80**   **Priority Non-Tax Claims** means those Claims entitled to priority under § 507 of the Bankruptcy Code, including § 507(a)(4), (5) and (7) but excluding § 507(a)(2) and (8).

**1.81**   **Priority Tax Claims** means those Claims held by a Governmental Unit that are entitled to priority under § 507(a)(8) of the Bankruptcy Code.

1320266v2

**1.82    Professional Fee Claims** means Administrative Expense Claims held by Professional Persons.

**1.83    Professional Persons** means Persons retained or to be compensated in the Chapter 11 Cases pursuant to §§ 327, 328, 330, 331, and 503(b) of the Bankruptcy Code, including A&G, Hinshaw, Huron, KCP, and LP.

**1.84    Pro Rata** means proportionately so that the ratio of the amount of the distribution made on account of a particular Allowed Claim to the distribution made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included is the same as the ratio of the amount a particular Allowed Claim to the total amount of the Allowed Claims of the Class of which a particular Allowed Claim is included, inclusive of any subclasses thereof (including Disputed Claims until Disallowed).

**1.85    Remaining Equipment** means the remaining equipment assets of the Debtors, as set forth in Exhibit "A" to the *Motion of Debtors for Authority to Employ Centurion Service Group, LLC as Auctioneer and to Hold an Auction to Sell Personal Property Free and Clear of Liens, Claims and Encumbrances and Shortening and Limiting Notice Thereof* (the "**Equipment Auction/Sale Motion**") (*See* Dkt. 276).

**1.86    Remaining Estate Assets** means all assets of the Debtors other than the Estate Funds, VDAs, OSF Holdback, 457(b) Assets, SV Real Estate Assets, Remaining Equipment Assets, Cyber Insurance Claim, Creditor Trust Causes of Action, and SIR Trust Assets. The Remaining Estate Assets may include cash and cash equivalents, patient accounts receivable, prepaid expenses and security deposits, interests in non-Debtor subsidiaries, miscellaneous collectibles and artwork, intangible assets (*e.g.*, software and other licenses), interests in insurance policies, and any interests in charitable trusts.

**1.87    Rybar Group** means The Rybar Group, Inc., employed by SMH-SV to realize and collect the VDAs. (*See* Dkts. 181, 188).

**1.88    Schedules** means, individually or collectively, as applicable, the Debtors' schedules of assets and liabilities and statements of financial affairs (as may be amended) on file in the Chapter 11 Cases.

**1.89    Secured Claim** means a Claim that is secured by a valid, perfected and enforceable, and non-avoidable lien, security interest, or encumbrance upon Collateral, to the extent of the value, as of the Effective Date, of such lien, security interest, or encumbrance as determined by a Final Order, or as otherwise agreed to in writing by the Debtors and the holder of such Claim.

**1.90    SIR** means self-insured retention.

**1.91    SIR Claims** means Claims for "covered hospital professional liability and comprehensive general liability losses" against "certain covered persons," as defined in the SIR Trust Agreement, which includes all sums which a Debtor becomes legally obligated to pay as damages because of bodily injury to a Person or property damage to the property of a Person (a) arising out of the rendering or failure to render professional, medical, or patient care services; (b) arising directly or indirectly out of or in connection with the maintenance and operation of the Debtors and any affiliated health care facilities; and (c) all expenses, including attorneys' fees and

costs incurred in connection with the investigation and defense of any claim or cause of action set forth in the preceding clauses (a) and (b). For the avoidance of doubt, SIR Claims include all filed and scheduled SIR Claims in the Chapter 11 Cases, as well as potential future SIR Claims that may arise against certain covered persons but have not yet ripened due to latency of injuries, and which are not time-barred by an applicable discovery rule under applicable law.

1.92    **SIR Policies** means (a) any insurance policies of the Debtors, or either of them, in which a Debtor is or was an insured party, (b) any and all rights, title and interests in, to or under any insurance policies in which a Debtor is or was an additional insured, and (c) any proceeds of such insurance policies, against which holders of Class 5 SIR Claims will, to the extent applicable, be able to assert such Claims. A list of the SIR Policies is attached to the Plan as *Schedule 1*.

1.93    **SIR Trust** means that certain self-insured retention trust formed by or on behalf of the Debtors pursuant to the SIR Trust Agreement.

1.94    **SIR Trust Agreement** means the *General/Professional Liability Loss Fund Trust Agreement* initially entered into on April 1, 1978, as amended, substantially in the form attached to the Plan as *Exhibit B*, to be executed by the Debtors and the SIR Trustee as soon as reasonably practicable after the Confirmation Date.

1.95    **SIR Trust Expenses** means the reasonable fees and expenses incurred by the SIR Trustee and any professionals retained by the SIR Trustee from the SIR Trust and any other administrative expenses and costs of the SIR Trust, as allowed by the SIR Trust Agreement.

1.96    **SIR Trust Assets** means all assets in the SIR Trust. The value of the SIR Trust Assets is $4,945,312.52 as of April 22, 2024.

1.97    **SIR Trustee** means such Person, including any replacements thereof or successors thereto, as may be designated by the Plan Proponents or the Creditor Trustee, as applicable, to serve as trustee of the SIR Trust pursuant to the SIR Trust Agreement and the applicable provisions of the Plan.

1.98    **SMH-P** means Debtor St. Margaret's Health – Peru, an Illinois not-for-profit corporation.

1.99    **SMH-SV** means Debtor St. Margaret's Health – Spring Valley, an Illinois not-for-profit corporation.

1.100    **SMP-Health** means Sisters of Mary of the Presentation Health System, the ultimate parent entity of both Debtors.

1.101    **SVCB** means Spring Valley City Bank.

1.102    **SVCB Allowed Class 1(a) Claim** means SVCB's Claim against SMH-P, which is deemed Allowed in full as of the date hereof, subject in all respects to any claims arising under § 502(d) of the Bankruptcy Code.

1.103    **SVCB Allowed Class 1(b) Claim** means SVCB's Claim against SMH-SV, which is deemed Allowed in full as of the date hereof, subject in all respects to any claims arising under § 502(d) of the Bankruptcy Code.

11

**1.104   SVCB Causes of Action** means any and all rights, claims, and causes of action of the Debtors and their Estates may have against SVCB, including claims and causes of action (a) arising under Chapter 5 of the Bankruptcy Code and (b) arising from or relating to the June 5, 2023, setoff by SVCB in excess of $7.2 million.

**1.105   SV Encumbered Real Estate Assets** means the real property assets of SMH-SV located in Bureau County, Illinois subject to mortgage interests of SVCB, identified by parcel numbers 16-04-300-012; 16-04-300-050; 16-04-300-081; and 18-35-178-004.

**1.106   SV Real Estate Assets** means the SV Encumbered Real Estate Assets and the SV Unencumbered Real Estate Assets.

**1.107   SV Unencumbered Real Estate Assets** means the real property assets of the Debtors located in Bureau County, Illinois, identified by parcel numbers 18-35-162-003; 18-35-178-006; and 18-35-178-007.

**1.108   United States Trustee Fees** means fees due to the Office of the United States Trustee under 28 U.S.C. § 1930(a)(6).

**1.109   Unimpaired** means, with respect to a Claim or Class of Claims, a Claim or Class of Claims that is unimpaired within the meaning of § 1124 of the Bankruptcy Code.

**1.110   VDA** means volume decrease adjustment(s) – *i.e.*, certain payments SMH-SV is owed as reimbursements and other payments from the U.S. federal public health insurance program, Medicaid, as a "sole community hospital," or "Medicare-dependent hospital," for years in which SMH-SV experienced a 5% or greater increase in discharges due to circumstances outside its control.

**1.111   Voting Deadline** means June 14, 2024 at 4:00 p.m. (prevailing Central Time), the date and time by which holders of the Class 1(b) SVCB Claim, Class 4 General Unsecured Claims, and Class 5 SIR Claims must submit their Ballots to accept or reject the Plan.

**1.112   Voting Record Date** means the date as of which the identity of holders of Claims is set for purposes of determining the entities entitled to receive Ballots and vote on the Plan.

### Article II.
### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**2.01   Summary of Classification of Claims and Equity Interests**. All Claims against or Equity Interests in the Debtors, other than Administrative Expense Claims and Priority Tax Claims, are classified for purposes of voting and distributions under the Plan. A summary of the classification of these Claims and Equity Interests, the proposed treatment of each Class of Claims or Equity Interests, and the voting status of each Class of Claims or Equity Interests follows:

12

| Class | Status | Entitled to Vote? |
|---|---|---|
| Class 1: Allowed Claims of SVCB (classified in subclasses by Debtor) | Unimpaired as to Class 1(a)  Impaired as to Class 1(b) | No as to Class 1(a) (deemed to accept)  Yes as to Class 1(b) |
| Class 2: Allowed Priority Non-Tax Claims (classified in subclasses by Debtor) | Unimpaired | No (deemed to accept) |
| Class 3: Allowed Other Secured Claims (classified in subclasses by Debtor) | Unimpaired | No (deemed to accept) |
| Class 4: Allowed General Unsecured Claims (classified in subclasses by Debtor) | Impaired | Yes |
| Class 5 SIR Claims (classified in subclasses by Debtor) | Impaired | Yes |
| Class 6: All Equity Interests (classified in subclasses by Debtor) | Impaired | No (deemed to reject) |

### Article III.
### TREATMENT OF UNCLASSIFIED ADMINISTRATIVE AND PRIORITY TAX CLAIMS

**3.01    Administrative Expense Claims**. In full and complete satisfaction, discharge, and release of and in exchange for its Allowed Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim will receive payment in full in cash under the terms of this Plan upon the later of: (a) the date of allowance by order of the Bankruptcy Court; (b) the Effective Date; or (c) such other date as may be agreed to by the holder. Administrative Expense Claims include Professional Fee Claims, 503(b)(9) Claims, and United States Trustee Fees.

Pursuant to the Administrative Expense Bar Date, (a) any Professional Fee Claims arising before the Effective Date, and (b) any other Administrative Expense Claims arising after May 1, 2024 but before the Effective Date, must be filed no later than thirty (30) days following the Effective Date, unless an earlier date is set by separate Bankruptcy Court order. The Administrative Expense Bar Date does not apply to 503(b)(9) Claims, United States Trustee Fees, and any outstanding postpetition fees and expenses of Epiq.

Allowed Administrative Expense Claims must be paid before any payments are made on account of Allowed General Unsecured Claims in Classes 1(b) and 4; *provided, however*, A&G or the Creditor Trustee, as applicable, is entitled to make such other distributions required under the Plan after the Effective Date, *provided further*, that, in the event any of the Administrative Expense Claims have not become Allowed Claims before the Effective Date, then A&G or the Creditor Trustee, as applicable, will hold in suspense such amounts of the Estate Funds or the Creditor Trust Funds, as applicable, as are in its reasonable discretion sufficient to

13

pay such Administrative Expense Claims pending a Final Order of the Bankruptcy Court respecting such Administrative Expense Claims.

**3.02    Priority Tax Claims**. In full and complete satisfaction, discharge, and release of and in exchange for its Priority Tax Claim, unless otherwise agreed to by the holder of an Allowed Priority Tax Claim and the Creditor Trustee, each holder of an Allowed Priority Tax Claim will be paid in full in cash from the Creditor Trust Funds upon the later of: (a)  the date of allowance by order of the Bankruptcy Court; or (b) in regular installments over a period not to exceed 5 years from the Petition Date, the total value of which shall be equal to the Allowed amount of such Priority Tax Claim as of the Effective Date, with interest payable at the applicable interest rate under applicable non-bankruptcy law.

### Article IV.
### TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN

**4.01    Class 1: Claims of SVCB**

(a)    **Class 1(a)**. Class 1(a) consists of the SVCB Allowed Class 1(a) Claim. The SVCB Allowed Class 1(a) Claim has been satisfied in full from the proceeds of the OSF Sale.

(b)    **Class 1(b)**. Class 1(b) consists of the SVCB Allowed Class 1(b) Claim. It is anticipated that the Collateral securing the SVCB Allowed Class 1(b) Claim will be insufficient to satisfy the SVCB Allowed Class 1(b) Claim in full.  The SVCB Allowed Class 1(b) Claim in shall be subject to the following treatment:

(i)    Secured Claim: To the extent the SVCB Allowed Class 1(b) Claim is Secured, on, or as soon as reasonably practicable after, the Effective Date, SVCB will receive on account of the SVCB Allowed Class 1(b) Claim, (A) the Collateral securing the SVCB Allowed Class 1(b) Claim by quitclaim deed, or such other form of conveyance mutually acceptable to SVCB and SMH-SV; (B) cash in an amount equal to the value of the Collateral securing the SVCB Allowed Class 1(b) Claim; or (C) such other treatment as may be agreed to by SVCB.

(ii)    General Unsecured Claim: To the extent the SVCB Allowed Class 1(b) Claim is unsecured, it shall be entitled to treatment in accordance with Class 4(b), including right to Pro Rata distribution(s) in cash from the Creditor Trust Assets on account of its Allowed General Unsecured Claim.

**4.02    Class 2: Priority Non-Tax Claims**.

(a)    **Class 2(a)**. Class 2(a) consists of Priority Claims against SMH-P other than Priority Tax Claims, which are addressed separately as set forth above. Allowed Class 2(a) Claims are Unimpaired and will be paid in order of the priorities set forth in § 507 of the Bankruptcy Code, in full, from the Creditor Trust Funds upon the later to occur of (i) the date of allowance by order of the Bankruptcy Court; or (ii) the Effective Date; *provided, however*, that the Creditor Trustee will be entitled to make such other distributions as required by the Plan after the Effective Date, and *provided further*, that, in the event any Class 2(a) Claims have not become Allowed Claims as of the Effective Date, the Creditor Trustee will hold in suspense such amounts of the Creditor

14

Trust Funds in its reasonable discretion sufficient to pay such Class 2(a) Claims pending a Final Order of the Bankruptcy Court respecting such Class 2(a) Claims.

(b)     **Class 2(b)**. Class 2(b) consists of Priority Claims against SMH-SV other than Priority Tax Claims, which are addressed separately as set forth above. Allowed Class 2(b) Claims are Unimpaired and will be paid in order of the priorities set forth in § 507 of the Bankruptcy Code, in full, from the Creditor Trust Funds upon the later to occur of (i) the date of allowance by order of the Bankruptcy Court or (ii) the Effective Date; *provided, however*, that the Creditor Trustee will be entitled to make such other distributions as required by the Plan after the Effective Date, and *provided further*, that, in the event any Class 2(b) Claims have not become Allowed Claims as of the Effective Date, the Creditor Trustee will hold in suspense such amounts of the Creditor Trust Funds in its reasonable discretion sufficient to pay such Class 2(b) Claims pending a Final Order of the Bankruptcy Court respecting such Class 2(b) Claims.

### 4.03   Class 3: Other Secured Claims

(a)     **Class 3(a)**. Class 3(a) consists of Other Secured Claims against SMH-P, and each such holder of an Other Secured Claim against SMH-P will be subject to the following treatment: On, or as soon as reasonably practicable after, the later of the Effective Date, or the date such Other Secured Claim becomes an Allowed Claim or is otherwise payable, each holder of an Allowed Other Secured Claim will receive (i) the Collateral securing such Allowed Other Secured Claim; (ii) cash in an amount equal to the value of the Collateral securing such Allowed Other Secured Claim, including, to the extent applicable, postpetition interest under § 506(b) of the Bankruptcy Code; or (iii) such other treatment as may be agreed to by the holder.

(b)     **Class 3(b)**. Class 3(b) consists of Secured Claims against SMH-SV, and each such holder of an Other Secured Claim against SMH-SV will be subject to the following treatment: On, or as soon as reasonably practicable after, the later of the Effective Date, or the date such Other Secured Claim becomes an Allowed Claim or is otherwise payable, each holder of an Allowed Other Secured Claim will receive (i) the Collateral securing such Allowed Other Secured Claim; (ii) cash in an amount equal to the value of the Collateral securing such Allowed Other Secured Claim, including, to the extent applicable, postpetition interest under § 506(b) of the Bankruptcy Code; or (iii) such other treatment as may be agreed to by the holder.

### 4.04   Class 4: General Unsecured Claims.

(a)     **Class 4(a)**. Class 4(a) consists of General Unsecured Claims against SMH-P. General Unsecured Claims are Impaired, and will be paid Pro Rata in cash from the Creditor Trust Assets, net of the Creditor Trust Expenses, upon the later of: (i) the Effective Date; (ii) the date of allowance by order of the Bankruptcy Court; or (iii) the date on which the Creditor Trustee makes distributions under the Plan on account of such Class 4 General Unsecured Claims. The Creditor Trustee will disburse payments under the Plan in such amounts, in its reasonable discretion, available on the Distribution Dates on a Pro Rata basis to the holders of the Allowed Class 4 Claims. There will be no distributions from the Creditor Trust to any holders of Allowed Class 4 Claims until all Allowed Secured Claims, Allowed Administrative Expense Claims, and Allowed Priority Claims have been satisfied in full or adequately reserved for under the terms of the Plan. To the extent any of the Class 4 Claims have not become Allowed Claims on or before the Effective Date, the Creditor Trustee may contest such Class 4 Claims, and assert and prosecute

15

against the holder of any Class 4 Claim such claims, objections, causes of action, defenses, and/or offsets against such holder as the Creditor Trustee may determine, in accordance with Article X of the Plan.

**(b)** **Class 4(b)**. Class 4(b) consists of General Unsecured Claims against SMH-SV. General Unsecured Claims are Impaired, and will be paid Pro Rata in cash from the Creditor Trust Assets, net of the Creditor Trust Expenses, upon the later of: (i) the Effective Date; (ii) the date of allowance by order of the Bankruptcy Court; or (iii) the date on which the Creditor Trustee makes distributions under the Plan on account of such Class 4 General Unsecured Claims. The Creditor Trustee will disburse payments under the Plan in such amounts, in its reasonable discretion, available on the Distribution Dates on a Pro Rata basis to the holders of the Allowed Class 4 Claims. There will be no distributions from the Creditor Trust to any holders of Allowed Class 4 Claims until all Allowed Secured Claims, Allowed Administrative Expense Claims, and Allowed Priority Claims have been satisfied in full or adequately reserved for under the terms of the Plan. To the extent any of the Class 4 Claims have not become Allowed Claims on or before the Effective Date, the Creditor Trustee may, contest such Class 4 Claims, and assert and prosecute against the holder of any Class 4 Claim such claims, objections, causes of action, defenses, and/or offsets against such holder as the Creditor Trustee may determine, in accordance with Article X of the Plan.

### 4.05    Class 5: SIR Claims

**(a)** **Class 5(a)**. Class 5(a) consists of any General Unsecured Claims against SMH-P whose holders have or assert an interest in the SIR Trust and/or the proceeds thereof. SIR Claims include personal injury Claims against "covered hospital professional liability and comprehensive general liability losses" against "certain covered persons," as defined in the SIR Trust Agreement. Holders of Allowed SIR Claims shall be entitled to payment of such Claims Pro Rata with all other Class 5 Claim holders (irrespective of subclass), from cash from the SIR Trust Assets, net of any SIR Trust Expenses; and to assert such Claims against the SIR Policies and any non-Debtor Persons or entities co-liable on such Claims. Distributions to each holder of an Allowed Class 5 Claim will be made by the later of: (i) 30 days of the SIR Trustee's determination that there are funds sufficient to make a distribution to holders of Allowed Class 5 Claims; or (b) 30 days of a disputed Class 5 Claim being Allowed by a Final Order.

**(b)** **Class 5(b)**. Class 5(b) consists of any General Unsecured Claims against SMH-SV whose holders have or assert an interest in the SIR Trust and/or the proceeds thereof. SIR Claims include personal injury Claims against "covered hospital professional liability and comprehensive general liability losses" against "certain covered persons," as defined in the SIR Trust Agreement. Holders of Allowed SIR Claims shall be entitled to payment of such Claims Pro Rata with all other Class 5 Claim holders (irrespective of subclass), from cash from the SIR Trust Assets, net of any SIR Trust Expenses; and to assert such Claims against the SIR Policies and any non-Debtor Persons or entities co-liable on such Claims. Distributions to each holder of an Allowed Class 5 Claim will be made by the later of: (i) 30 days of the SIR Trustee's determination that there are funds sufficient to make a distribution to holders of Allowed Class 5 Claims; or (b) 30 days of a disputed Class 5 Claim being Allowed by a Final Order.

1320266v2

**4.06    Class 6: Equity Security Interests**.

      **(a)    Class 6(a)**. Class 6(a) consists of the Equity Interests in SMH-P, and will not receive a distribution of any amounts to holders of Equity Interests, and all such interests are deemed canceled as of the Effective Date of the Plan. Class 6 Equity Interests are deemed to reject the Plan.

      **(b)    Class 6(b)**. Class 6(b) consists of the Equity Interests in SMH-SV, and will not receive a distribution of any amounts to holders of Equity Interests, and all such interests are deemed canceled as of the Effective Date of the Plan. Class 6 Equity Interests are deemed to reject the Plan.

**Article V.**
**ACCEPTANCE OR REJECTION OF THE PLAN**

      **5.01    Voting Classes**. Each holder of a Class 1(b) Claim, Class 4 Claim, or Class 5 Claim whose Claim is deemed Allowed for voting purposes is entitled to vote either to accept or to reject the Plan on behalf of the specific subclass to which such Claim relates. A Class 1(b) Claim, Class 4 Claim, or Class 5 Claim is deemed Allowed for voting purposes if it is either: (a) listed in the Schedules as a liquidated, non-contingent and undisputed Claim; or (b) filed and has not been adjudicated by the Bankruptcy Court as Disallowed. For the avoidance of doubt, a Claim that is deemed Allowed for the purpose of voting on the Plan is not the same as an Allowed Claim for purposes of distribution under the Plan. As such, all deemed Allowed Claims for voting purposes remain subject to objections for distribution purposes.

      **5.02    Acceptance by Impaired Classes**. An Impaired Class of Claims accepts the Plan if: (a) the holders (other than any holder designated under § 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan; *and* (b) the holders (other than any holder designated under § 1126(e) of the Bankruptcy Code) of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. Each subclass of Class 4 General Unsecured Claims – *i.e.*, Class 4(a) and 4(b) – must accept the Plan for the Plan to be considered accepted by the Class as a whole. Each subclass of Class SIR Claims – *i.e.*, Class 5(a) and 5(b) – must accept the Plan for the Plan to be considered accepted by the Class as a whole. Classes 1(a), 2 and 3 are each Unimpaired, deemed to have accepted the Plan and are not entitled to vote thereon.

      **5.03    Presumed Rejection of the Plan**. The holders of Class 6 Equity Interests will not receive any distributions under the Plan, are therefore deemed to reject the Plan, and are not entitled to vote.

      **5.04    Nonconsensual Confirmation (Cramdown)**. Because Class 6 is deemed to reject the Plan by operation of law, the Debtors will request the Bankruptcy Court confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code. Without limiting the foregoing, in the event that any Class of Claims entitled to vote on the Plan fails to accept the Plan as required by § 1129(a) of the Bankruptcy Code, the Plan may be amended and, in any event, the Plan Proponents reserve the right to seek confirmation of the Plan over such rejection pursuant to § 1129(b).

**5.05   How to Vote**. A form of Ballot is being provided to creditors in Classes 1(b), 4 and 5 by which creditors in such Classes may vote their acceptance or rejection of the Plan. The Ballot for voting on the Plan gives you one important choice to make with respect to the Plan—you can vote for or against this Plan. To vote on the Plan, please complete the Ballot, as indicated thereon by: (a) indicating on the enclosed Ballot that (i) you accept the Plan or (ii) reject the Plan; and (b) signing your name and mailing the Ballot in the envelope provided for this purpose. Epiq will count and tabulate the amount of Claims corresponding to the returned Ballots. In order to be considered by the Bankruptcy Court at the Confirmation Hearing, your Ballot must be fully completed, executed, and actually received by Epiq at the following address by no later than the Voting Deadline of June 14, 2024 at 4:00 p.m. (prevailing Central Time):

By First-Class Mail to:

St. Margaret's Health – Peru
c/o Epiq Ballot Processing
10300 SW Allen Boulevard
Beaverton, OR 97005

By Electronic Submission:

Use the interface available on the website for the Chapter 11 Cases maintained by Epiq at https://dm.epiq11.com/stmargarets via the "E-Ballot" link under Case Actions

By Hand Delivery or Overnight Mail to:

St. Margaret's Health – Peru
c/o Epiq Ballot Processing
10300 SW Allen Blvd
Beaverton, OR 97005

### Article VI.
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.01   Rejection of Executory Contracts and Unexpired Leases**. As of the Confirmation Date, the Debtors are deemed to have rejected all executory contracts and unexpired leases not expressly assumed prior to the Confirmation Date or pursuant to the Plan or Confirmation Order. The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections pursuant to § 365 of the Bankruptcy Code. Any Person claiming rights in the rejected executory contracts and unexpired leases not previously rejected by order of the Bankruptcy Court will have an additional thirty (30) calendar days after the Confirmation Date to file a Claim for rejection damages in the Chapter 11 Cases. All such rejection damages Claims for which proofs of Claim are timely and properly filed and ultimately Allowed will be treated as Class 4 General Unsecured Claims.

### Article VII.
### IMPLEMENTATION OF THE PLAN

**7.01   Compromise and Settlement.** Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the compromise and settlement of any Claim against or interest in the SIR Trust and/or the SIR Trust Assets that may be asserted by the Committee, the Debtors, the Creditor Trustee, the holders of SIR Claims, the SIR Trustee, or the holders of General Unsecured Claims, and further, shall constitute the

18

Bankruptcy Court's findings that such compromise and settlement is (a) in exchange for good and valuable consideration; (b) in the best interests of the Debtors and their Estates; (c) fair, equitable, and reasonable; and (d) made in good faith after due notice and opportunity for hearing.

**7.02    Substantive Consolidation Rights Reserved**. The Debtors and any successor in interest thereto, including the Creditor Trustee, reserve their rights to seek the substantive consolidation of the Estates upon notice and hearing before the Bankruptcy Court.

(a)    In the event that the Estates are substantively consolidated, among other things: (i) the separate Chapter 11 Cases of the Debtors will be consolidated into the case of SMH-P as a single consolidated case; (ii) all property of the Estate of each Debtor will be deemed property of the consolidated Estates; and (iii) all Claims against each Estate will be deemed to be Claims against the consolidated Estates, any proof of Claim filed against one or more of the Debtors will be deemed to be a single Claim filed against the consolidated Estates, and all duplicate proofs of Claim for the same Claim filed against more than one Debtor will be deemed expunged.[2]

**7.03    Cancellation of Equity Interests**. Upon the Effective Date, the Equity Interests in the Debtors, or either of them, are deemed canceled and terminated and of no further force or effect, and the obligations of the Debtors thereunder, if any, are deemed satisfied in full and discharged.

**7.04    Dissolution of Committee and Cessation of Fee and Expense Payments**. The Committee is dissolved on the Effective Date. Neither the Debtors nor the Creditor Trustee are responsible for paying any fees or expenses incurred by the Committee after the Effective Date; *provided, however*, that the Committee will nonetheless have post-Effective Date standing to file and obtain approval of the Professional Fee Claims, subject to the rights of any party in interest to object thereto.

**7.05    Dissolution of the Debtors**. On the Effective Date, the Debtors are deemed dissolved for all purposes, without need of further court order, notice, or action, and will cease to exist as legal entities. The Confirmation Order will contain a provision authorizing and directing any applicable state agencies to register the Debtors as dissolved as of the Effective Date. Notwithstanding said dissolution, the Creditor Trustee is obligated to wind down the affairs of the Debtors in accordance with the terms and conditions of the Plan.

**7.06    General Corporate Actions**. Upon the Effective Date, all actions contemplated by the Plan are deemed authorized and approved in all respects. Such authorizations and approvals are effective notwithstanding any requirements under non-bankruptcy law.

**7.07    Officers and Directors of the Debtors**. Upon the Effective Date, all (a) officers and (b) directors, managing members, or members of the board of managers, as applicable, of the Debtors are automatically deemed to have resigned from such positions from the Debtors without further notice, act or deed, *provided, however*, that the Debtors or the Creditor Trustee may appoint

---

[2]    *Provided, however,* that substantive consolidation shall not apply to, nor affect, the SIR Claims, the SIR Trust or the SIR Trust Assets.

such former officers, directors, managing members, and/or members of the board of managers, as applicable, as agents for the sole and limited purpose of effectuating the terms of the Plan.

**7.08 Sources of Creditor Trust Assets**.

*7.08.1 Estate Funds*. Following the Effective Date, the Estate Funds will be transferred to the Creditor Trust for the benefit of the Creditor Trust Beneficiaries and holders of Allowed Administrative Expense Claims, subject to the terms of the Plan and Creditor Trust Agreement.

*7.08.2 VDAs*. To the extent any VDAs are realized and collected by the Estates before the Effective Date, they are deemed Estate Funds. Following the Effective Date, any and all VDAs realized and collected by the Estates, net of any costs and expenses owed to Rybar Group, will be transferred to the Creditor Trust for the benefit of the Creditor Trust Beneficiaries and holders of Allowed Administrative Expense Claims, subject to the terms of the Plan and Creditor Trust Agreement. To the extent any VDAs have not been collected by the Estates prior to the Effective Date, the Creditor Trustee is deemed substituted for the Debtors with respect to, and succeed to all rights, title and interest in, the VDAs.

*7.08.3 OSF Holdback*. The OSF Holdback is currently being held in escrow pursuant to the terms of the OSF APA and orders approving the OSF Sale. OSF has alleged that the Debtors breached certain representations and warranties under the OSF APA. The Debtors have requested additional information from OSF to ascertain the propriety of these allegations and potential impact on the amount of the OSF Holdback. Upon the OSF Holdback Release Date, and subject to resolution of the pending dispute with OSF (be it by agreement of the parties or adjudication by the Bankruptcy Court), the OSF Holdback will be transferred to the Creditor Trust for distribution to Creditor Trust Beneficiaries and holders of Allowed Administrative Expense Claims, subject to the terms of the Plan and Creditor Trust Agreement.

*7.08.4 457(b) Assets*. The 457(b) Assets are funds currently held by Principal, and are the subject of the 457(b) Litigation. On the Effective Date, the Creditor Trustee is deemed substituted for the Committee and/or the Debtors as plaintiff in the 457(b) Litigation, pending under adversary proceeding number 24-ap-00063, without the need to file any motion seeking such relief, in connection with the administration of the Creditor Trust Assets, and will prosecute the claims and causes of action asserted therein.

*7.08.5 SV Encumbered Real Estate Assets*. SMH-SV owns the SV Encumbered Real Estate Assets, subject to mortgage interests of SVCB, identified by parcel numbers 16-04-300-012; 16-04-300-050; 16-04-300-081; and 18-35-178-004, located in Bureau County, Illinois. On the Effective Date, the SV Encumbered Real Estate Assets will be subject to the treatment set forth in Section 4.01(b)(i) of the Plan. To the extent the SV Encumbered Real Estate Assets are not conveyed to SVCB on account of the SVCB Allowed Class 1(b) Claim, and are instead liquidated by the Debtors at a value in excess of the SVCB Allowed Class 1(b) Claim, the excess proceeds will be available for distribution to Creditor Trust Beneficiaries and holders of Allowed Administrative Expense Claims, subject to the terms of the Plan and Creditor Trust Agreement. To the extent the SV Encumbered Real Estate Assets are conveyed to SVCB on account of the SVCB Allowed Class 1(b) Claim and, subsequent to such conveyance, marketed and sold by

SVCB at a value in excess of the SVCB Allowed Class 1(b) Claim, SVCB shall have all right, title and interest to the excess proceeds.

7.08.6 *SV Unencumbered Real Estate Assets*. SMH-SV owns the SV Unencumbered Real Estate Assets, which are not subject to liens, claims, or encumbrances. The SV Unencumbered Real Estate Assets are located in Bureau County, Illinois and identified by parcel numbers 18-35-162-003 (Prairieland Home Care property); 18-35-178-006 (Boyle Medical Clinic Building); and 18-35-178-007 (Old Convent Property and Storage Building). To the extent that any of the SV Unencumbered Real Estate Assets have not been liquidated or otherwise disposed of before the Effective Date, such assets will be transferred to the Creditor Trust, and the Creditor Trustee is deemed substituted for the Debtors with respect to any pending motions to sell or otherwise dispose of the SV Unencumbered Real Estate Assets, and any Final Order of the Bankruptcy Court employing Professional Persons to market and dispose of the SV Unencumbered Real Estate Assets as successor in interest to the Debtors and their Estates, without need to file any motion seeking such relief, in connection with the administration of the Creditor Trust Assets. The net proceeds of any sale of the SV Unencumbered Real Estate Assets will be transferred to the Creditor Trust for distribution to Creditor Trust Beneficiaries and holders of Allowed Administrative Expense Claims, subject to the terms of the Plan and Creditor Trust Agreement.

7.08.7 *Remaining Equipment Assets*. The Debtors own the Remaining Equipment. The Remaining Equipment is subject to being sold at an auction pursuant to the Equipment Auction/Sale Motion. The Debtors anticipate that an initial auction of the Remaining Equipment will occur on or before May 31, 2024. To the extent that any of the Remaining Equipment has not been liquidated or otherwise disposed of before the Effective Date, and subject to the Court-approved agreement with the auctioneer, such Remaining Equipment will be transferred to the Creditor Trust, and the Creditor Trustee is deemed substituted for the Debtors with respect to (a) any pending motions to sell or otherwise dispose of the Remaining Equipment, and (b) any Final Order of the Bankruptcy Court employing Professional Persons to market and dispose of the Remaining Equipment, as successor in interest to the Debtors and their Estates, without need to file any motion seeking such relief, in connection with the administration of the Creditor Trust Assets. Following the Effective Date, any remaining or future net proceeds of any sale of the Remaining Equipment will be transferred to the Creditor Trust for distribution to Creditor Trust Beneficiaries and holders of Allowed Administrative Expense Claims, subject to the terms of the Plan and the Creditor Trust Agreement.

7.08.8 *Cyber Insurance Claim.* The Cyber Insurance Claim is comprised of the rights and claims of SMH-SV against CFC for additional reimbursement under the Cyber Policy in connection with the Cyber Attack. To the extent any net recoveries from the Cyber Insurance Claim are not disposed of before the Effective Date, such funds will be transferred to the Creditor Trust. If the Cyber Insurance Claim remains pending as of the Effective Date, the Creditor Trustee is deemed substituted for the Debtors with respect to, and succeed to all rights, title and interest in, the Cyber Insurance Claim.

7.08.9 *Creditor Trust Causes of Action.* The Creditor Trust Causes of Action comprise any and all interests of the Debtors and their Estates in claims and causes of action, whether arising in law or equity and whether presently known or later discovered, including (without limitation): (a) claims and causes of action arising under Chapter 5 of the Bankruptcy Code or their state law analogs, including preference and fraudulent transfer claims, (b) any and

all claims and causes of action set forth in the Debtors' Schedules, (c) commercial tort claims, (d) other claims and causes of action arising under applicable state or federal law, and (e) rights and defenses of setoff and recoupment with respect to the foregoing claims and causes of action. The Creditor Trust Causes of Action expressly include (W) the SVCB Causes of Action, (X) the 457(b) Litigation Claim, (Y) the Heartland Causes of Action, and (Z) the D&O Causes of Action.

 *7.08.10 Remaining Estate Assets*. Upon the Effective Date, the Remaining Estate Assets will transfer to the Creditor Trust, without need to file any motion seeking such relief.

 *7.08.11 Other Creditor Trust Assets*. On the Effective Date, the Debtors will immediately transfer or cause to be transferred to the Creditor Trust all Creditor Trust Assets in their possession, custody, or control. Pursuant to § 1123(b)(3)(B) of the Bankruptcy Code, the Creditor Trust Causes of Action are immediately transferred to and vest in the Creditor Trust on the Effective Date.

## Article VIII.
### THE CREDITOR TRUST

 **8.01 Creditor Trust Agreement**. On or before the Effective Date, the Creditor Trustee and the Debtors will execute the Creditor Trust Agreement, in form and substance satisfactory to the Plan Proponents. The Creditor Trust Agreement will become effective on the Effective Date. Except to the extent inconsistent with the terms of the Plan, the terms and conditions of the Creditor Trust Agreement will govern under the Plan.

 **8.02 Vesting of Creditor Trust Assets**. Upon transfer of the Creditor Trust Assets to the Creditor Trust on or after the Effective Date, the Creditor Trustee will thereafter maintain possession, control, and management of same, subject to the Plan and the Creditor Trust Agreement. The Debtors are hereby authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of the Creditor Trust Assets to the Creditor Trust. Upon such transfer, title to the Creditor Trust Assets will automatically and irrevocably vest in the Creditor Trust and be deemed contributed thereto, subject to the terms of the Plan. Upon vesting, the Creditor Trustee will have the sole authority to administer the Creditor Trust Assets for the benefit of the Creditor Trust Beneficiaries and holders of Allowed Administrative Expense Claims. All property held for distribution pursuant to the Plan will be held by the Creditor Trust solely in trust for the benefit of the Creditor Trust Beneficiaries and holders of Allowed Administrative Expense Claims and will not be deemed property of the Debtors. Nothing in the Plan, however, precludes payment from the Creditor Trust Assets of any (a) United States Trustee Fees accruing after the Effective Date and (b) any Creditor Trust Expenses.

 **8.03 Creditor Trustee**. The Creditor Trustee will be selected by the Plan Proponents and compensated as set forth in the Creditor Trust Agreement. The proposed Creditor Trustee will be Michael A. Brandess of Husch Blackwell LLP. The Creditor Trustee will administer the Creditor Trust pursuant to the Plan, the Confirmation Order, and the Creditor Trust Agreement from and after the Effective Date. The Creditor Trustee is the exclusive trustee of the Creditor Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The Creditor Trustee is a representative of the Estates pursuant to § 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, and is vested with standing to prosecute, settle and otherwise administer all Creditor Trust Assets, including Creditor Trust Causes of Action, transferred to the Creditor Trust, without the

1320266v2

need for Bankruptcy Court approval or any other notice of approval, except as set forth herein. The Creditor Trustee is exempt from giving any bond, surety, or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. The Creditor Trustee is responsible for providing the day-to-day accounting and financial services of the Creditor Trust and taking such other actions as are necessary to fully consummate and carry out all of the terms and conditions of the Plan, and will comply with all of the duties, obligations, and reporting requirements set forth in the Plan.

**8.04    Creditor Trust Asset Administration**.

**8.04.1**  The Creditor Trustee shall administer the Creditor Trust Assets pursuant to the Plan and the Creditor Trust Agreement from and after the Effective Date.  As more fully set forth in the Creditor Trust Agreement, the Creditor Trustee shall be responsible for, *inter alia*: (a) liquidating the Creditor Trust Assets; (b) analyzing and reconciling Claims (including filing and pursuing objections to the extent required); (c) pursuing Creditor Trust Causes of Action; (d) making distributions to the Creditor Trust Beneficiaries and holders of Allowed Administrative Expense Claims; (e) maintaining and administering reserves for Disputed Claims; (f) administering the termination and wind-up of the Debtor's retirement plans, including any plan audits; (g) administering the preparation and filing of the Debtors' 2023 and 2024 tax returns; (h) administering the preparation and filing of the Debtors' cost report for 2023; (i) administering the Debtors' W-2 and 1099 reporting for 2024; (j) administering grant closeout reporting for the Debtors' SAMSHA behavioral health grant; (k) paying expenses of the Creditor Trust; (l) preparing and filing post-Effective Date operating reports; (m) filing post-Effective Date tax returns; and (n) all other activities typically related to wind-down of the Debtors' business affairs and/or trust administration.

**8.04.2**  In connection with its analysis and reconciliation of Claims, the Creditor Trustee shall be entitled to access to any and all proofs of Claim filed in the Chapter 11 Cases, including proofs of Claim subject to that certain *Order Granting Motion of Debtors to Authorize Procedures to Protect and Maintain the Confidentiality of Patient Information and Shorten Notice* (Dkt. 39), provided that the Creditor Trustee shall comply with the terms and conditions of such order.

**8.05    Case Administration**. From and after the Effective Date and continuing through the date that a final decree closing the Chapter 11 Cases is entered pursuant to § 350 of the Bankruptcy Code and Bankruptcy Rule 3022, and except as otherwise provided in the Plan, the Creditor Trustee will possess the rights of the Debtors for all matters pertaining to the Chapter 11 Cases without further order of the Bankruptcy Court. Without limiting the generality of the foregoing and in conjunction with the provisions of Section 15.01 of the Plan, the Creditor Trustee will: (a) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction; (b) have the right to obtain records of, or related to, the Debtors (including bank statements and canceled checks); (c) be entitled to notice and opportunity for hearing; (d) be entitled to participate in all matters brought before the Bankruptcy Court, including adversary proceedings; (e) have exclusive standing to commence Creditor Trust Causes of Action; (f) have exclusive standing to seek the substantive consolidation of the Estates; (g) be entitled to request entry of a final decree closing the Chapter 11 Cases; and (h) be entitled to receive

notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in the Chapter 11 Cases.

**8.06    Creditor Trustee's Compensation**. The Creditor Trustee's compensation will be in accordance with the terms of the Creditor Trust Agreement at rates established pursuant to the mutual agreement of the Creditor Trustee and the Committee, which rates will be subject to disclosure to Creditor Trust Beneficiaries upon reasonable request.

**8.07    Creditor Trust Accounts**. As soon after the Effective Date as practicable, the Creditor Trustee will establish one or more Creditor Trust Accounts. All monies on deposit in the Creditor Trust Accounts must be insured by an agency of the federal government or secured by bonds or similar instruments in sufficient amounts to fully protect all amounts so deposited. Such accounts will be maintained under the Creditor Trust's federal employer identification number and have the Creditor Trustee as the sole signatory thereto.

**8.08    Ordinary Care**. The Creditor Trustee and its respective agents and designees will exercise ordinary care in the discharge of their duties under the Plan and are entitled to rely upon advice of counsel concerning legal matters, and upon the Plan and any schedule, certificate, statement, report, notice, or other writing which they believe to be genuine or to have been presented by a proper Person. The Creditor Trustee, its respective legal representatives, heirs, successors, assigns, agents, designees, and attorneys will not be held responsible or be liable to the Creditor Trust, the Creditor Trust Beneficiaries, or any other party in interest in the Chapter 11 Cases for any errors in judgment or for any defalcations or shortages of money or for any losses suffered unless the same occurs through the gross negligence, willful misconduct, or fraud of the Creditor Trustee, its respective legal representatives, heirs, successors, assigns, agents, designees, or attorneys. Further, the Creditor Trustee will not be liable for any act it may take or omit to hereunder while acting in good faith and in the exercise of reasonable business judgment, and the fact that such act or omission was advised, directed, or approved by an attorney retained by the Creditor Trustee, will be conclusive evidence of such good faith and reasonable business judgment.

**8.09    Attorney-Client Privilege**. Without limiting the generality of the assignment of the Creditor Trust Assets to the Creditor Trustee, and in order to effectively investigate, defend, or pursue the Creditor Trust Causes of Action, any privileges that exist between the Debtors and their current or prior counsel is assigned to the Creditor Trustee on the Effective Date.

**8.10    Creditor Trust Distributions**. The Creditor Trust Assets will be liquidated and distributed solely for the benefit of holders of Allowed Administrative Expenses, Allowed Priority Claims, and Allowed General Unsecured Claims. The Creditor Trust Assets will not be available for payment of Secured Claims or SIR Claims. Except as otherwise provided in the Plan, the Creditor Trust Funds and proceeds of any other Creditor Trust Assets will be distributed by the Creditor Trustee as follows:

    (a) First, from the Creditor Trust Accounts for payment of any unpaid Unites States Trustee Fees accruing through the Effective Date;

    (b) Second, from the Creditor Trust Accounts for payment of any Professional Fee Claims;

24

(c) Third, from the Creditor Trust Accounts for payment of any Creditor Trust Expenses. Until the Plan is fully consummated, the Creditor Trustee will hold in suspense such amounts in the Creditor Trust as are in its reasonable discretion sufficient to pay all Creditor Trust Expenses. All Creditor Trust Expenses will be subject to disclosure to Creditor Trust Beneficiaries upon reasonable request;

(d) Fourth, from the Creditor Trust Accounts to holders of Allowed Administrative Expense Claims (other than United States Trustee Fees and Professional Fee Claims);

(e) Fifth, from the Creditor Trust Accounts to holders of Class 2 Allowed Priority Non-Tax Claims;

(f) Sixth, from the Creditor Trust Accounts to holders of Allowed Priority Tax Claims; and

(g) Seventh, from the Creditor Trust Accounts to SVCB on account of any unsecured portion of the SVCB Allowed Class 1(b) Claim and Class 4 Allowed General Unsecured Claims, subject to Section 4.01(b)(ii) and/or 4.04 of the Plan.

**8.11     Distribution Dates**. The distributions provided for in Section 8.10 of the Plan will be made on the Distribution Dates, which will be as soon after the Effective Date as is practicable and thereafter, as often as the Creditor Trustee in its reasonable discretion may determine if the amounts on deposit in the Creditor Trust Accounts warrant same; *provided, however*, the Creditor Trustee in its reasonable discretion will reserve such amounts in the Creditor Trust Accounts as it deems necessary for the requirements set forth in the Plan, including Disputed Claims as set forth below, and for the payment of the Creditor Trust Expenses in the manner set forth below.

**8.12     No Postpetition Interest**. Unless otherwise specifically provided for in the Plan or in the Confirmation Order, or required by applicable bankruptcy law, no interest from and after the Petition Date will be paid or accrued to the holder of any Allowed Claim or Allowed Equity Interest, nor will any holder of an Allowed Claim or Allowed Equity Interest be entitled to interest accruing on or after the Petition Date from the Creditor Trust Accounts.

**8.13     Rounding**. Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution will reflect a rounding of such fraction down to the nearest cent.

**8.14     *De Minimis* Distributions**. The Creditor Trustee will not be required to make distributions of less than $50.00 on account of any Allowed Claim, except for an Allowed Claim for pre-Petition Date wages less than $50.00, unless a request therefor is made in writing to the Creditor Trustee. To the extent that any interim distribution is not paid to a Creditor Trust Beneficiary on the grounds that it amounts to less than $50.00, the amount of the withheld distribution will be reserved for addition to any future distribution, or as the final distribution to such Creditor Trust Beneficiary, and may be made at that time if the total distribution is at least $50.00.

**8.15     Disputed Claims**. In the event that on any Distribution Date, any Claims are Disputed Claims, the Creditor Trustee will make the required distribution to all other claimants

25

enjoying the same priority as the Disputed Claims as follows: (a) in calculating any 503(b)(9) Claims, Priority Tax Claims or Class 2 Priority Non-Tax Claims at the respective Distribution Date, Disputed Claims will be included in the full amount claimed by the respective holders thereof; and (b) in calculating the Pro Rata portion of any unsecured portion of the SVCB Allowed Class 1(b) Claim or Class 4 General Unsecured Claims at the Distribution Date, Disputed Claims will be included in the Pro Rata amount claimed by the respective holders thereof. Until such Disputed Claims are Allowed or Disallowed, the amounts that otherwise would be payable to such claimants will not be paid by the Creditor Trustee, and will instead be held in suspense in the Creditor Trust. In the event that the Allowed amount of any of the Disputed Claim is less than the full amount claimed by the holder thereof, then (x) the Allowed amount of the Disputed Claim will be distributed to the holder thereof immediately from the funds held in suspense, as provided above; and (y) any excess amount held in suspense will be added to the funds available for other distributions herein.

**8.16    Effectuating Documents**. The Creditor Trustee, or such other Person(s) as the Creditor Trustee may approve pursuant to the Creditor Trust Agreement, is authorized to execute, deliver, file, or record such pleadings, contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan. The Creditor Trustee or its designee is authorized to certify or attest to any of the foregoing actions.

**8.17    Employment of Professionals**. Upon the Effective Date, the Creditor Trustee may employ such attorneys, accountants, consultants, and other Persons or professionals as it deems necessary and appropriate to fulfill the Creditor Trustee's duties and obligations under the Plan. All professional and other compensation from and after the Effective Date will be payable in accordance with the Creditor Trust Agreement. Persons retained by the Creditor Trustee may include any professional who represented parties in interest in the Chapter 11 Cases, and the Creditor Trustee is permitted to retain any such Persons in light of the efficiencies implicit in continuity.

**8.18    Insurance Policies**. Notwithstanding anything to the contrary in this Plan, unless any insurance policies have been expressly rejected, or assumed and assigned, pursuant to a separate order of the Bankruptcy Court (or through the Confirmation Order), (a) any insurance policies of the Debtors, or either of them, in which a Debtor is or was an insured party (including any policies covering directors' or officers' conduct), and (b) any and all rights, title and interests in, to or under any insurance policies in which a Debtor is or was an additional insured, shall continue in effect after the Effective Date pursuant to the respective terms and conditions and shall be treated as if assumed. All rights, title and interests of the Debtors, or either of them, in, to or under any insurance policies other than the SIR Policies shall automatically vest in the Creditor Trust without necessity for further approvals or orders. To the extent that any insurance policies are deemed executory contracts, then, unless such policies have been rejected pursuant to a separate order of the Bankruptcy Court (or through the Confirmation Order), notwithstanding anything to the contrary in this Plan, this Plan shall constitute a motion to assume, assume and assign, permit "ride through," or ratify such insurance policies. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute both approval of such assumption pursuant to section 365 of the Bankruptcy Code and a finding by the Bankruptcy Court that such assumption is in the best interests of the Estates. Unless otherwise determined by the

26

Bankruptcy Court pursuant to a Final Order or agreed upon by the parties prior to the Effective Date, no payments shall be required to cure any defaults of a Debtor existing as of the Confirmation Date with respect to any insurance policy assumed, or assumed and assigned, pursuant to this Section 8.18. Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Chapter 11 Cases, this Plan, or any provision within this Plan, including the treatment or means of liquidation set out within this Plan for any insured Claims (including SIR Claims) or Creditor Trust Causes of Action. The Creditor Trustee will have the authority, in its sole discretion, to bind or cancel any and all insurance policies; *provided, however*, the Creditor Trustee shall not have authority to cancel any SIR Policies.

8.19    **Insurance Preservation**. Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover any Claims against a Debtor or any other Person, including any SIR Policies covering any SIR Claims.

8.20    **United States Trustee Reports**. Until a final decree has been entered closing the Chapter 11 Cases, the Creditor Trustee will submit all post-confirmation quarterly operating reports to the United States Trustee as required by the United States Trustee's guidelines setting forth all receipts and disbursements of the Creditor Trust. The Creditor Trustee is responsible for any quarterly fees due to the United States Trustee from and after the Effective Date until the Chapter 11 Cases are closed.

8.21    **Payment of Quarterly Fees**. The Creditor Trustee will pay any United States Trustee Fees arising after the Effective Date until the entry of a final decree closing the Chapter 11 Cases.

8.22    **United States Federal Income Tax Treatment of the Creditor Trust**. For all United States federal income tax purposes, the parties will treat the transfer of the Creditor Trust Assets to the Creditor Trust as (a) a transfer of the Creditor Trust Assets directly to the applicable Creditor Trust Beneficiaries; followed by (b) the transfer by the Creditor Trust Beneficiaries to the Creditor Trust of such Creditor Trust Assets in exchange for the Creditor Trust Interests. Accordingly, the applicable Creditor Trust Beneficiaries will be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Creditor Trust Assets. The foregoing treatment will also apply, to the extent permitted by applicable law, for state and local income tax purposes. The Plan permits the Creditor Trustee to establish Disputed Claim Reserves. The Creditor Trustee may, at the Creditor Trustee's sole discretion, file a tax election to treat any such Disputed Claim Reserve as a Disputed Ownership Fund or other taxable entity rather than as a part of the Creditor Trust for federal income tax purposes. If such election is made, the Creditor Trust will comply with all tax reporting and tax compliance requirements applicable to the Disputed Ownership Fund or other taxable entity, including without limitation the filing of separate income tax returns for the Disputed Ownership Fund or other taxable entity and the payment of any federal, state, or local income tax due.

8.23    **Tax Reporting**. The Creditor Trustee will file tax returns for the Creditor Trust treating the Creditor Trust as a grantor trust pursuant to Treasury Regulation § 1.671-4(a). The Creditor Trustee is responsible for payment, out of the Creditor Trust Assets, of any taxes imposed on the Creditor Trust or its assets. The Creditor Trustee will distribute such notices to the

applicable Creditor Trust Beneficiaries as the Creditor Trustee determines are necessary or desirable.

**8.24    Cash Investments**. The Creditor Trustee may invest cash (including any earnings thereon or proceeds therefrom); *provided, however*, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation § 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

**8.25    Alternate Creditor Trustees**. In the event that the Creditor Trustee determines that an actual or reasonably foreseeable conflict of interest exists between itself and a party to which the Creditor Trust is directly adverse, the Creditor Trustee will recuse itself from discussion or consideration of such matter on behalf of the Creditor Trust. In the Creditor Trustee's stead, an Alternate Trustee (as defined in the Creditor Trust Agreement) will be appointed for the limited purposes of overseeing the matter on the Creditor Trust's behalf and directing any Retained Parties (as defined in the Creditor Trust Agreement) with respect thereto. The Creditor Trustee or its counsel, subject to approval by a majority of the then-former members of the Committee, may propose an Alternate Trustee.

**8.26    Successor Creditor Trustees**. If the Creditor Trustee resigns or for any other reason is unable to continue to perform its duties as provided in the Plan, then the Creditor Trustee or its representative must inform the Bankruptcy Court of its resignation and the vacancy will be filled upon majority vote of the then-former members of the Committee, subject to Bankruptcy Court approval.

**8.27    Additional Procedures**. The Creditor Trustee will have the right to propose such additional procedures as may be reasonably required to administer the assets of the Estates for the benefit of all creditors and consistent with the Plan, the Bankruptcy Code, and the Bankruptcy Rules.

**8.28    Dissolution of the Creditor Trust**. The Creditor Trust will be dissolved at such time as: (a) payment of all costs, expenses, and obligations incurred in connection with administering the Creditor Trust; (b) all objections to Disputed Claims are fully resolved; (c) the Creditor Trustee determines that the pursuit of additional Creditor Trust Causes of Action, if any, is not likely to yield sufficient additional proceeds to justify further pursuit of such Creditor Trust Causes of Action; (d) all distributions required to be made by the Creditor Trust have been made; (e) closure or dismissal of the Chapter 11 Cases; and (f) completion of any necessary or appropriate reports, tax returns, or other documentation determined necessary by the Creditor Trustee in its reasonable discretion; but in no event may the Creditor Trust be dissolved later than five (5) years from the Effective Date, subject to the provisions of Section 8.299. Upon dissolution of the Creditor Trust, any remaining Creditor Trust Assets that exceed the amounts required to be paid under the Plan and the Creditor Trust Agreement may be transferred by the Creditor Trustee to a nonprofit charitable 501(c)(3) organization.

**8.29    Extending the Term of the Creditor Trust**. If the Creditor Trustee determines in its reasonable business judgment that the facts and circumstances necessitate an extension of the duration of the Creditor Trust for it to effectuate its purpose, the Creditor Trustee may seek an extension of the duration of the Creditor Trust for a period of twelve (12) months. Any extension

28

of the duration of the Creditor Trust, is subject to approval by the Bankruptcy Court, *provided*, *however*, that prior to requesting such extension, the Creditor Trustee must retain an opinion of counsel or a favorable ruling from the IRS that any further extension would not adversely affect the status of the Creditor Trust as a grantor trust for federal income tax purposes. The Creditor Trustee must seek approval of any such extension within sixty (60) days of the expiration of the initial five (5) year term or any extension thereof.

**8.30    Abandonment**. If, in the Creditor Trustee's reasonable business judgment, any Creditor Trust Assets cannot be distributed in a commercially reasonable manner or the Creditor Trustee believes in good faith that such property has inconsequential value, or determines it to be too impractical to distribute to the Creditor Trust Beneficiaries, the Creditor Trustee may abandon or otherwise dispose of such property, including by donation of such property to a nonprofit charitable 501(c)(3) organization. On or after the Effective Date, pursuant to § 554(a), the Creditor Trustee is authorized, from time to time, without further application to the Bankruptcy Court or notice to any party, to abandon or destroy documents and records (whether in electronic or paper format) that it determines, in its reasonable business judgment, are no longer necessary to the administration of either the Chapter 11 Cases or the Plan, notwithstanding any federal, state, or local law or requirement requiring the retention of the applicable documents or records; *provided*, *however*, that 60 days prior to any abandonment or destruction, the Creditor Trustee will give notice to any insurer requesting notice prior to the Confirmation Date and a general description of the documents to be abandoned or destroyed, and the insurer will have 30 days thereafter to request, at its expense, copies of the documents relevant to the defense or indemnity claims covered by that insurer. Such insurer and the Creditor Trustee will cooperate in limiting the request to documents relevant to defense or indemnity of claims covered by that insurer.  Notwithstanding anything herein to the contrary, and for the avoidance of doubt, the Creditor Trustee's right to abandon shall not apply to the SV Encumbered Real Estate Assets.

**8.31    Retention of all Business Records and Medical Data**.  The Debtors maintain, in the ordinary course of business, business records and Medical Data in both hard copy and electronic formats. The Medical Data and certain of the Debtors' business records contain PHI and/or PII, which are subject to various federal and state healthcare and privacy laws governing the copying, transfer, storage, and destruction of such information.  Subject to any conditions or limitations provided herein or under applicable law, following the Effective Date, the Creditor Trustee shall succeed to all rights, title and interest in and to the Debtors' business records and Medical Data, including any postpetition agreement(s) authorized by the Bankruptcy Court and entered into between the Debtors and a records custodian ("**Records Custodian**") governing storage and disposition of, and access by patients, providers, and insurers to, to such records and data.  The Creditor Trustee is authorized to take any and all necessary actions to effectuate the copying, transfer, storage and disposal of the business records and Medical Data in accordance with applicable law, including paying all necessary fees and expenses of the Records Custodian to safely and securely accomplish all of the foregoing.  The Creditor Trustee shall cooperate with the SIR Trustee in respect of any reasonable requests for business records or Medical Data in the possession, custody or control of the Creditor Trustee or the Records Custodian, subject to the right of the Creditor Trustee and/or the Records Custodian to require reasonable restrictions on, or to seek court relief restricting or prohibiting, the disclosure of such documents.

**8.32    Maintenance and Disposition of Records**. The books and records maintained by the Creditor Trustee may be disposed of by the Creditor Trustee, without the need to seek authority from the Bankruptcy Court, at the later of (a) such time as the Creditor Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Creditor Trust or the Creditor Trust Beneficiaries; or (b) upon the termination and completion of the winding down of the Debtors and the Creditor Trust.

**8.33    Control Provisions**. To the extent there is any inconsistency between the Confirmation Order and the Plan as it relates to the Creditor Trust and the Creditor Trust Agreement, the Confirmation Order and the Plan control, in that order.

<h3 style="text-align:center">Article IX.<br>THE SIR TRUST</h3>

**9.01    Transfer of Interests in SIR Trust Assets**. In order to effectuate the compromise and settlement set forth in Section 7.01 of this Plan, the SIR Trustee is deemed to contribute the SIR Trust Assets to the Plan for purposes of distribution(s) hereunder, and upon the Effective Date, the Debtors and their Estates are deemed to transfer and relinquish any interests in and to the SIR Trust Assets to the SIR Trust, to ensure recoveries to holders of Allowed SIR Claims. Title to the SIR Trust Assets will automatically continue and irrevocably vest in the SIR Trust and be deemed contributed thereto, subject to the terms of the Plan. Except as provided in Section 15.01 of the Plan, which provides for concurrent jurisdiction of the Bankruptcy Court over filed or scheduled SIR Claims, from and after the Effective Date, the SIR Trustee is authorized and empowered to invoke the jurisdiction of the Circuit Court of Cook County in any action regarding the SIR Trust Agreement and/or administration of the SIR Trust.

**9.02    SIR Trust Administration**. On the Effective Date, the Channeling Injunction set forth in Section 12.02 of the Plan will take effect, and the SIR Trust will remain in place for the benefit of the holders of Allowed SIR Claims. The SIR Trust Agreement will remain in effect and govern the administration of the SIR Trust, except to the extent inconsistent with the terms of the Confirmation Order or the Plan, in which event, the Confirmation Order and/or the Plan shall control, in that order.  On the Effective Date, the Creditor Trustee shall succeed to all rights and obligations of the Debtors (but not the SIR Trustee) under the SIR Trust Agreement.

**9.03    SIR Trustee**. The SIR Trustee will be selected by the Plan Proponents and compensated as set forth in the SIR Trust Agreement, and identified by the Plan Proponents in a supplement to the Plan filed no later than seven (7) days before the Confirmation Hearing. The SIR Trustee will administer the SIR Trust pursuant to the Plan, the Confirmation Order, and the SIR Trust Agreement from and after the Effective Date. The SIR Trustee is the exclusive trustee of the SIR Trust, vested with standing to prosecute, settle, and otherwise administer all SIR Claims; *provided, however*, such powers extend only to the SIR Trust Assets, and are without prejudice to any rights or claims of SIR Claim holders against the SIR Policies or any non-Debtor Persons or entities that are co-liable on such SIR Claims. The SIR Trustee is responsible for providing the day-to-day accounting and financial services of the SIR Trust and taking such other actions as are necessary to fully consummate and carry out the terms and conditions of the Plan concerning SIR Claims, and will comply with all of the duties, obligations, and reporting requirements set forth in the Plan and the SIR Trust Agreement.

**9.04   SIR Trustee's Compensation**. The SIR Trustee's compensation will be in accordance with the terms of the SIR Trust Agreement at rates established pursuant to the mutual agreement of the SIR Trustee and the Plan Proponents, which rates will be subject to disclosure to holders of SIR Claims upon reasonable request.

**9.05   Termination of the SIR Trust**. As provided in the SIR Trust Agreement, the SIR Trust will terminate upon final resolution of all "Cases" (as defined in the SIR Trust Agreement) filed on or before June 16, 2041 involving a SIR Claim. Upon termination of the SIR Trust, any remaining SIR Trust Assets that exceed the amounts required to be paid under the Plan and the SIR Trust Agreement may be transferred by the SIR Trustee to a nonprofit charitable 501(c)(3) organization.

## Article X.
### PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**10.01   Objections to Claims**. Except with respect to Claims already deemed Allowed Claims for all purposes under the Plan or pursuant to Bankruptcy Court order, upon the Effective Date the Creditor Trustee will (a) have appropriate standing and authority to object to any Administrative Expense Claims (other than Professional Fee Claims), Priority Claims, and General Unsecured Claims (other than SIR Claims), whether listed on the Schedules or filed by any creditor; and (b) have and retain any and all rights and defenses that the Debtors had with respect to any such Claims, except with respect to any Claim deemed an Allowed Claim as of the Effective Date. Except with respect to SIR Claims already deemed Allowed Claims for all purposes under the Plan or pursuant to Bankruptcy Court order, upon the Effective Date and for a period of one (1) year thereafter (which may be extended by the Bankruptcy Court, in its discretion, on motion brought by the SIR Trustee no later than twenty-one (21) days before the expiration of such one (1) year period), the SIR Trustee will (x) have appropriate standing and authority to object to any SIR Claims, whether listed on the Schedules or filed by any creditor; and (y) have and retain any and all rights and defenses that the Debtors had with respect to any such SIR Claims. In the event the Debtors filed an objection to any Claim that has not been resolved as of the Effective Date, the Creditor Trustee or the SIR Trustee, as applicable, will succeed the Debtors in the prosecution of such objection from and after the Effective Date. Any and all objections to Claims must be filed with the Bankruptcy Court by the Creditor Trustee or SIR Trustee, as applicable, and served upon each holder of such Claims.

**10.02   Resolution of Disputed Claims**. All objections to Claims must be litigated to a Final Order except to the extent the Creditor Trustee or the SIR Trustee, as applicable, elects to withdraw any such objection, or the Creditor Trustee or the SIR Trustee, as applicable, and the holder of such Claim elect to compromise, settle, or otherwise resolve any such objection, in which event the Creditor Trustee or the SIR Trustee, as applicable, may settle, compromise, or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.  Notwithstanding the foregoing, any resolution of a SIR Claim by the SIR Trustee or the Bankruptcy Court shall be solely for purposes of distribution of the SIR Trust Assets, and is without prejudice to any rights of SIR Claim holders to seek additional recoveries against the SIR Policies or any non-Debtor Persons or entities that are co-liable on such SIR Claims.

**10.03   Estimation**. The Creditor Trustee or the SIR Trustee, as applicable, may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to § 502(c) of the

Bankruptcy Code regardless of whether the Creditor Trustee or the SIR Trustee, as applicable, has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction (pursuant to Section 15.01 of the Plan) to estimate any Claim at any time, including during litigation concerning any objection to such Claim. Notwithstanding the foregoing, any estimation of a SIR Claim by the Bankruptcy Court shall be solely for purposes of distribution of the SIR Trust Assets, and is without prejudice to any rights of SIR Claim holders to seek additional recoveries against the SIR Policies or any non-Debtor Persons or entities that are co-liable on such SIR Claims.

**10.04   Distribution on Disputed Claims**. No distributions will be made with respect to a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

**10.05   Reserve for Disputed Claims**. With respect to Claims to be paid pursuant to the Plan, the Creditor Trustee or the SIR Trustee, as applicable, will hold in reserve, for the benefit of each holder of a Disputed Claim, cash in an amount required by order of the Bankruptcy Court or such other consideration the Creditor Trustee or the SIR Trustee, as applicable, deems appropriate in the exercise of the reasonable business judgment of the Creditor Trustee or the SIR Trustee, as applicable, and in accordance with the Creditor Trust Agreement or the SIR Trust Agreement, as applicable.

**10.06   Interest on Disputed Claims**. Interest on any funds reserved for a Disputed Claim, if any, will inure to the benefit of all remaining creditors.

### Article XI.
### CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN

**11.01   Conditions to Plan Confirmation**. Confirmation of the Plan cannot occur, and the Confirmation Order cannot be entered, until each of the following conditions precedent have been satisfied: (a) determination by the Bankruptcy Court that the Disclosure Statement contains adequate information under § 1125 of the Bankruptcy Code; and (b) the form of the Confirmation Order is in form and substance satisfactory to the Plan Proponents.

**11.02   Effective Date of Plan and Conditions Thereto**. The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent: (a) the Confirmation Order as entered by the Bankruptcy Court shall be a Final Order in full force and effect; (b) the Creditor Trust Agreement shall have been executed by the Debtors, the Committee and the Creditor Trustee; (c) the SIR Trust Agreement, as amended, shall be acceptable to the Plan Proponents and the SIR Trustee in form and substance, and shall have been executed by the Debtor(s) and the SIR Trustee. For the avoidance of doubt, the Effective Date of the Plan will not occur until the clerk of the Bankruptcy Court has entered the Confirmation Order in the Chapter 11 Cases in a form and substance satisfactory to the Plan Proponents. The Debtors or the Committee shall file a notice of the Effective Date with the Bankruptcy Court and cause the same to be served on all holders of Claims and Equity Interests.

**11.03   Effect of Failure of Conditions; Reservation of Rights**. If the foregoing conditions set forth in this Article XI are unable to be satisfied, then: (a) the Confirmation Order will be of no further force or effect; (b) no distributions under the Plan will be made; (c) the Debtors, the Creditor Trustee, the SIR Trustee and all holders of Claims against and Equity Interests in the Debtors will be restored to the *status quo ante* as of the day immediately preceding

the Confirmation Date as though the Confirmation Date never occurred; (d) all of the Debtors', the Creditor Trustee's and the SIR Trustee's obligations with respect to Claims and Equity Interests will remain unaffected by the Plan; (e) nothing contained in the Plan will be deemed to constitute a waiver or release of any claims by or against the Debtors, the Creditor Trustee, the SIR Trustee or any other Person or to prejudice in any manner the rights of the Debtors, the Creditor Trustee, the SIR Trustee or any Person in any further proceedings involving the Debtors, the Creditor Trustee or the SIR Trustee; and (f) the Plan will be deemed withdrawn. Upon such occurrence, the Debtors must file a written notice with the Bankruptcy Court and serve it on the parties receiving CM/ECF notices in the Chapter 11 Cases. The Plan will have no force or effect unless and until the Effective Date occurs. Before the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtors, the Creditor Trustee, the SIR Trustee or the Committee with respect to the Plan will be, or will be deemed to be, an admission or waiver of any rights of any of the Debtors, the Creditor Trustee, the SIR Trustee or the Committee, or any other party with respect to any Claims or Equity Interests or any other matter.

## Article XII.
### EFFECTS OF CONFIRMATION OF THE PLAN

**12.01   Permanent Injunction**.

**(a)      Except as otherwise expressly provided in the Plan, from and after the Effective Date, all holders of Claims against or Equity Interests in the Debtors or the Estates, or any of them, whether or not they are entitled to and/or have filed proofs of Claim in the Chapter 11 Cases on or before the applicable Bar Date, and their respective heirs, legal representatives, officers, directors, managers, shareholders, employees, partners, members, subsidiaries, affiliates, representatives, agents, insurers, successors and assigns, as applicable, shall be and are hereby permanently stayed, restrained, and enjoined from taking one or more of the following actions against the Debtors, the Estates, the Creditor Trustee and the Creditor Trust, and all of their respective heirs, officers, directors, managers, shareholders, members, agents, employees, attorneys, successors and assigns, and each of them (collectively, the "Releasees"), for the purpose of, directly or indirectly, by claim, cross-claim, or setoff, collecting, recovering or receiving payment of, or recovery on or with respect to any Claims against or Equity Interests in the Debtors or the Estates arising out of, under, or related to the Chapter 11 Cases (including any derivative Claims, asserted, or that could possibly have been asserted, directly or indirectly on behalf of the Debtors or the Estates) (the "Enjoined Claims"), whether such Enjoined Claims are presently known or unknown, or are presently asserted or assertable (other than actions brought to enforce any right or obligation under the Plan, or otherwise in favor of the Debtors, which actions will be heard by the Bankruptcy Court pursuant to Section 15.01 of the Plan):**

**(i)      with respect to the Enjoined Claims, commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, claim, cross-claim, or other proceeding (including, without limitation, any suit, action, claim, cross-claim, or other proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Releasees, or any direct**

or indirect transferee of any property of, or direct or indirect successor in interest to, the Releasees, or any property of any such transferee or successor;

**(ii)** with respect to the Enjoined Claims, enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree or other order against the Releasees, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Releasees, or any property of any such transferee or successor;

**(iii)** with respect to the Enjoined Claims, creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance against the Releasees, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Releasees, or any property of any such transferee or successor;

**(iv)** with respect to the Enjoined Claims, setting off, seeking reimbursement of, contribution from, or subrogation against or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to the Releasees, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Releasees; and/or

**(v)** with respect to the Enjoined Claims, proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the terms of the Plan, except in conformity and compliance herewith.

**(b)** Notwithstanding anything to the contrary in the Plan, the injunction set forth in this Section 12.01 shall not enjoin any of the Releasees from asserting claims, cross-claims, counterclaims, demands, setoffs, recoupments, arguments, defenses, or otherwise against any Claims filed in the Chapter 11 Cases against them or otherwise held by any party, all of which rights are hereby expressly preserved. The injunction is an integral part of the Plan because it:  (i) enjoins actions which threaten the integrity of the Estates; (ii) facilitates the expeditious and effective performance of the Plan; (iii) guards against collateral attack or interference with the consummation of the Plan and improper use of the Creditor Trust Funds; and (iv) protects the rights, interests and claims of the Releasees and all creditors in the Chapter 11 Cases. As such, the provisions of this injunction will be construed as broadly as the law and English language permit.

**(c)** Nothing contained herein shall: (i) relieve or diminish the duties, responsibilities, or obligations of the Releasees as set forth in the Plan; or (ii) impair any party's right to appear or bring an action in the Bankruptcy Court to enforce or assert any right or obligation under the Plan.

**(d)** For the avoidance of doubt, nothing herein is intended to, nor shall be deemed, to enjoin the Creditor Trustee from pursuing the Creditor Trust Causes of Action.

**(e)** If, notwithstanding the permanent injunction in favor of the Releasees set forth herein, any suit, action, claim, cross-claim, or other proceeding (including, without

34

limitation, any suit, action, claim, cross-claim, or other proceeding in a judicial, arbitral, administrative or other forum) is brought against or affects the Releasees in violation of the terms of the Plan prior to the distribution of all monies on deposit in the Creditor Trust, the Creditor Trustee will, in its reasonable business judgment, be entitled to withhold from distribution to holders of Allowed Claims that amount of monies on deposit in the Creditor Trust Accounts which the Releasees believe will be necessary to pay for any and all judgments, claims, damages, costs, and expenses, including reasonable attorneys' fees and expenses, incurred or estimated to be incurred by the Releasees pending the entry of a Final Order by the Bankruptcy Court resolving such dispute(s). Upon the entry of a Final Order by the Bankruptcy Court resolving such dispute(s), the Creditor Trustee shall proceed to distribute any and all such funds withheld and not expended in accordance with the terms of the Plan.

**12.02   Channeling Injunction**.

(a)     **Upon the Effective Date, the automatic stay under Bankruptcy Code § 362 is lifted as to all SIR Claims, but all SIR Claims are channeled exclusively to the SIR Trust and the SIR Policies. The sole sources of recovery for holders of SIR Claims are from the SIR Trust, the SIR Policies and any non-Debtor Persons or entities co-liable on such Claims. Neither the holders of SIR Claims nor the SIR Trust will have any recourse to or Claims whatsoever against the Debtors or their assets and property (other than the SIR Policies), nor will holders of SIR Claims be entitled to treatment as a Creditor Trust Beneficiary on account of such Claims. Consistent with the foregoing, all entities that have held or asserted, or that hold or assert, any SIR Claims are permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery from any Debtor or its assets and property (other than the SIR Policies) with respect to any SIR Claims, including any and all of the following actions:**

(i)     **commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding of any kind in any forum with respect to any SIR Claim, against or affecting any Debtor, the Creditor Trust, or any property or interests in property of any Debtor with respect to any such SIR Claim;**

(ii)     **enforcing, levying, attaching, collecting, or otherwise recovering, by any manner or means, or in any manner, either directly or indirectly, any judgment, award, decree, or other order against any Debtor, the Creditor Trust, or against the property of any Debtor with respect to any such SIR Claim;**

(iii)     **creating, perfecting, or enforcing in any manner, whether directly or indirectly, any lien of any kind against any Debtor, Creditor Trust, or the property of any Debtor with respect to any such SIR Claim;**

(iv)     **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or**

35

**indirectly, against any obligation due to any Debtor, Creditor Trust, or against the property of any Debtor with respect to any such SIR Claim; and/or**

> **(v)    taking any action, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, the Confirmation Order, or SIR Trust Agreement with respect to any SIR Claim.**

**(b)    Rights Reserved.** Notwithstanding any provisions of this Section 12.02 to the contrary, the Channeling Injunction does **not** enjoin:

> (i)    the rights of holders of SIR Claims to the treatment afforded to them by the Plan, including the right to assert such Claims against the SIR Trust, the SIR Policies and any non-Debtor Persons or entities co-liable on such SIR Claims;

> (ii)    the commencement or continuation of any suit, action, or other proceeding in any forum against the Debtors, or either of them, with respect to any SIR Claims, *provided*, *however*, that any recovery against the assets or property of the Debtors on account of such suit, action or other proceeding shall be limited to the SIR Policies; *provided further,* that nothing herein shall preclude holders of SIR Claims from commencing or continuing any suit, action or other proceeding, and recovering against, any non-Debtor Persons or entities co-liable with the Debtors on such Claims; or

> (iii)    the SIR Trustee from enforcing its rights under the terms of the SIR Trust Agreement.

**(c)    Modifications**. There can be no modification, dissolution, or termination of the Channeling Injunction, which is permanent.

**(d)    No Limitation on Channeling Injunction**. Nothing in the Plan, the Confirmation Order, or the SIR Trust Agreement may be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction provided for in this Plan and the Confirmation Order.

**(e)    Compliance with Bankruptcy Rule 3016**. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 does not, and may not be construed to, constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

**12.03    Exculpation**.

**(a)    None of the Exculpated Parties will have or incur any liability for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, implementation, confirmation, or approval of this Plan, the Disclosure Statement or any contract, instrument, release, or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in this Plan; *provided*, *however*, that the foregoing will not affect the liability of any Person that would result solely from any such act or omission to the extent that act or omission is determined by a Final Order of the Bankruptcy Court to have**

1320266v2

constituted willful misconduct or gross negligence or breach of fiduciary duty; *provided further, however*, that this provision will not limit any obligations of the Exculpated Parties under the Plan.

      **(b)**    Notwithstanding the foregoing or any other provision of the Plan, nothing in this Plan or the Confirmation Order shall affect any causes of action, claims, or counterclaims that may be asserted in connection with an objection to a Claim that has not been Allowed, in each case as determined by a court of competent jurisdiction. Nevertheless, no Exculpated Party will have liability for willful misconduct or gross negligence except as determined by a Final Order.

      **(c)**    **No Liability for Solicitation or Participation**. As specified in § 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code will not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

      **(d)**    **Good Faith**. Confirmation of the Plan will constitute a finding that the Plan was proposed, and that acceptances of the Plan were solicited, in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

## Article XIII.
### MODIFICATION OF THE PLAN

    **13.01**  **Modification before Confirmation**. Modifications of the Plan may be proposed in writing by the Plan Proponents at any time before entry of the Confirmation Order, provided that such Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code, and that the Plan Proponents comply with the provisions of § 1125 of the Bankruptcy Code, to the extent such provisions are applicable.

    **13.02**  **Modification after Confirmation**. The Plan may be modified by the Plan Proponents at any time after entry of the Confirmation Order and before its substantial consummation, provided that: (a) such Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code; and (b) the Bankruptcy Court, after notice and a hearing, confirms such Plan, as modified, under § 1129 of the Bankruptcy Code.

    **13.03**  **Acceptance/Rejection of Plan Modification**. A holder of a Claim or Equity Interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as applicable, the Plan, as modified, unless within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## Article XIV.
### MISCELLANEOUS

    **14.01**  **Unclaimed Distributions before Final Distribution**. Any distributions under the Plan that are unclaimed after ninety (90) days following any of the Distribution Dates will revert to the Creditor Trust and be added to subsequent distributions to be made by the Creditor Trustee.

1320266v2

**14.02  Delivery of Distributions**. Distributions to holders of Allowed Claims will be made (a) at the addresses set forth on the proofs of Claim filed by such holders, (b) at the addresses reflected in the Schedules if no proof of Claim has been filed, or (c) at the addresses set forth in any written notices of address changes delivered to the Creditor Trustee. If any holder's distribution is returned as undeliverable, a reasonable effort will be made to determine the current address of such holder, but no further distributions to such holder will be made unless and until the Creditor Trustee or the Debtors, as applicable, is notified of such holder's then-current address, at which time all missed distributions will be made to such holder without interest. The responsibility to provide the Creditor Trustee or the Debtors, as applicable, a current address of a holder of a Claim is the sole responsibility of such holder. Except as set forth above, nothing contained in the Plan requires the Creditor Trustee or the Debtors, as applicable, to attempt to locate any holder of an Allowed General Unsecured Claim. Amounts in respect of undeliverable distributions made by the Creditor Trustee will be held in trust on behalf of the holder of the Claim to which they are payable by the Creditor Trust until the earlier of the date that such undeliverable distributions are claimed by such holder and one hundred twenty (120) days after the date the undeliverable distributions were made.

**14.03  Withholding, Payment, and Reporting Requirements with Respect to Distributions**. All distributions under the Plan to be made by the Creditor Trustee or the Debtors, as applicable, will, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions will be subject to any such withholding, payment, and reporting requirements. The Creditor Trustee or the Debtors, as applicable, is authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements. The Creditor Trustee or the Debtors, as applicable, may require, in its or their sole and absolute discretion and as a condition to the receipt of any distribution, that the holder of an Allowed Claim complete and return to the Creditor Trustee or the Debtors, as applicable, the appropriate Form W-8 or Form W-9, as applicable to each holder. Notwithstanding any other provision of the Plan: (a) each holder of an Allowed Claim that is to receive a distribution pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution, and including, in the case of any holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed upon the Creditor Trust or the Debtors, as applicable, in connection with such distribution; and (b) no distribution will be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements reasonably satisfactory to the Creditor Trustee or the Debtors, as applicable, for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Creditor Trust or the Debtors, as applicable, in connection with such distribution.

**14.04  Setoffs**. The Creditor Trustee or the Debtors, as applicable, may, but will not be required to, set off against any Claim or any Allowed Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Creditor Trustee, as applicable, may have against the holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver or release by the Creditor Trustee or the Debtors, as applicable, of any such claim that it or they may have against such holder.

**14.05   Forfeiture of Distributions**. If the holder of a Claim fails to cash a check payable to it within the time period set forth in Section 14.01; fails to claim an undeliverable distribution within the time limit set forth in Section 14.02; or fails to complete and return to the Creditor Trust the appropriate Form W-8 or Form W-9 within ninety (90) days of the request by the Creditor Trustee, for the completion and return to it of the appropriate form pursuant to Section 14.03, then such holder is deemed to have forfeited its right to any reserved and future distributions from the Creditor Trust and any Creditor Trust Interest(s) held by such holder is deemed canceled, and the Claim of such holder is forever barred.

**14.06   Notices**. All notices and other communications provided for under the Plan to be effective must be in writing (including by facsimile transmission) and are deemed to have been given at the time when mailed in any general or branch United States Post Office, enclosed in a registered or certified postage prepaid envelope addressed to the address of the respective parties or in the case of notice by facsimile transmission when received and telephonically confirmed, and addressed or transmitted by facsimile as follows or to such changed address as such party may have fixed by notice given in the manner herein provided:

**If to Debtors:**

Steven B. Chaiken, Esq.
Erich S. Buck, Esq.
Adelman & Gettleman, Ltd.
53 W. Jackson Blvd., Suite 1050
Chicago, IL 60604
Tel: (312) 435-1050
Fax: (312) 435-1059

**If to the Committee:**

Elizabeth B. Vandesteeg
Jack R. O'Connor
Levenfeld Pearlstein, LLC
120 S. Riverside Plz., Ste. 1800
Chicago, IL 60606
Tel: (312) 346-8380
Fax: (312) 346-8434

**If to the Creditor Trustee:**

Michael A. Brandess
c/o Husch Blackwell LLP
120 S. Riverside Plz., Ste. 2200
Chicago, IL 60606
Tel: (312) 655-1500
Fax: (312) 655-1501

**If to the SIR Trustee:**

[                    ]
[                    ]
[                    ]
[                    ]
[                    ]

**14.07   Transfer of Claims**. In the event that the holder of a Claim transfers such Claim after the Effective Date, it must immediately advise the Creditor Trustee in writing of such transfer. The Creditor Trustee is entitled to assume that no transfer of any Claim has been made by any holder unless and until it has received written notice of such transfer. Each transferee of any Claim must take such Claim subject to the provisions of the Plan and to any request made, waiver, or consent given, or other action taken hereunder and, except as otherwise expressly provided in such notice, the Creditor Trustee is entitled to assume conclusively that the transferee named in such notice will thereafter be vested with all rights and powers under the Plan of the transferor.

**14.08   Severability**. Should any provision in the Plan be determined to be unenforceable, such determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

1320266v2

**14.09   Governing Law**. Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under this Plan will be governed by, construed, and enforced in accordance with, the laws of the State of Illinois.

**14.10   Binding Effect**. The rights and obligations of any Person named or referred to in the Plan are binding upon, and inure to the benefit of, the successors or assigns of such Person.

**14.11   Captions**. The headings contained in the Plan are for convenience of reference only and do not affect the meaning or interpretation of the Plan.

**14.12   Cramdown**. The Plan Proponents reserve the right to seek the entry of the Confirmation Order in accordance with § 1129(a) and (b)(2)(B)(i) of the Bankruptcy Code.

## Article XV.
### RETENTION OF JURISDICTION

**15.01   Jurisdiction**. The Bankruptcy Court will retain jurisdiction over the Chapter 11 Cases, the Creditor Trust and the SIR Trust for the purposes set forth in §§ 1127(b) and 1141 of the Bankruptcy Code, and to:

> (a) determine the allowance or disallowance of Claims against the Estates, including General Unsecured Claims, and SIR Claims filed or scheduled in the Chapter 11 Cases;[3]

> (b) fix allowances of compensation to Professional Persons and other Administrative Expense Claims;

> (c) enforce and interpret all provisions of the Plan and Creditor Trust Agreement;

> (d) enforce all causes of action of the Estates which may exist;

> (e) authorize and approve the sale, surrender, abandonment, or other disposition of property of the Estates;

> (f) approve any modification of the Plan pursuant to § 1127 of the Bankruptcy Code;

> (g) enter a final decree closing the Chapter 11 Cases; and

> (h) adjudicate such other matters as the Creditor Trustee deems necessary or appropriate under the circumstances.

---

[3] The continuing jurisdiction of the Bankruptcy Court over the SIR Trust and filed or scheduled SIR Claims shall be concurrent with the jurisdiction of the Circuit Court of Cook County, as provided in the Plan and the SIR Trust Agreement.

1320266v2

Dated: May 7, 2024

| **St. Margaret Health – Peru and St. Margaret Health – Spring Valley** | **The Official Committee of Unsecured Creditors of St. Margaret Health – Peru and St. Margaret Health – Spring Valley** |
|---|---|
| By: /s/ Erich S. Buck | By: /s/ Jack R. O'Connor |
| One of their attorneys | One of its attorneys |
| Henry B. Merens | Elizabeth B. Vandesteeg |
| Erich S. Buck | Jack R. O'Connor |
| Steven B. Chaiken | Heidi M. Hockberger |
| **ADELMAN & GETTLEMAN, LTD.** | **LEVENFELD PEARLSTEIN, LLC** |
| 53 W. Jackson Blvd., Ste. 1050 | 120 S. Riverside Plz., Ste. 1800 |
| Chicago, IL 60604 | Chicago, IL 60606 |
| Telephone: 312.435.1050 | Tel: (312) 346-8380 |
| *Counsel for the Debtors and Debtors in Possession* | *Counsel for the Committee* |

1320266v2

# Schedule 1
# SIR Policies

St. Margaret's Health - Peru

SIR Policies (as of 3/27/24)

| Entity | Coverage | Type | Carrier | Policy # | Effective Dates | Limits |
|--------|----------|------|---------|----------|-----------------|--------|
| SMH-P | Commercial General Liability (off-site locations, excludes hospital) | Occurrence | Professional Security Insurance Company | HFL-09106934 | 4/17/2023 - 4/17/2024 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-P | Commercial General Liability (off-site locations, excludes hospital) | Occurrence | Professional Security Insurance Company | HFL-09106934 | 4/17/2022 - 4/17/2023 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-P | Commercial General Liability (off-site locations, excludes hospital) | Occurrence | Professional Security Insurance Company | HFL-09106934 | 4/17/2021 - 4/17/2022 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-P | Commercial General Liability (off-site locations, excludes hospital) | Occurrence | Professional Security Insurance Company | HFL-09106934 | 11/1/2020 - 11/1/2021 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-P | Commercial General Liability (off-site locations, excludes hospital) | Occurrence | National Fire & Marine Insurance Company | HN029336 | 11/1/2019 - 11/1/2020 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-P | Facility Professional Liability (off-site locations, excludes hospital) | Claims-Made | Professional Security Insurance Company | HFL-09106934 | 4/17/2023 - 4/17/2024 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-P | Facility Professional Liability (off-site locations, excludes hospital) | Claims-Made | Professional Security Insurance Company | HFL-09106934 | 4/17/2022 - 4/17/2023 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-P | Facility Professional Liability (off-site locations, excludes hospital) | Claims-Made | Professional Security Insurance Company | HFL-09106934 | 4/17/2021 - 4/17/2022 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-P | Facility Professional Liability (off-site locations, excludes hospital) | Claims-Made | Professional Security Insurance Company | HFL-09106934 | 11/1/2020 - 11/1/2021 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-P | Facility Professional Liability (off-site locations, excludes hospital) | Claims-Made | National Fire & Marine Insurance Company | HN029336 | 11/1/2019 - 11/1/2020 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-P | Umbrella Liability | Claims-Made (Prof Liab)/ Occurrence (Gen Liab) | Professional Security Insurance Company | HUL09108518 | 4/17/2023 - 7/17/2023 | $10M ea occurrence; $10M aggregate |
| SMH-P | Umbrella Liability | Claims-Made (Prof Liab)/ Occurrence (Gen Liab) | Professional Security Insurance Company | HUL09108518 | 4/17/2022 - 4/17/2023 | $10M ea occurrence; $10M aggregate |
| SMH-P | Umbrella Liability | Claims-Made (Prof Liab)/ Occurrence (Gen Liab) | Professional Security Insurance Company | HPL09108518 | 4/17/2021 - 4/17/2022 | $10M ea occurrence; $10M aggregate |
| SMH-P | Umbrella Liability | Claims-Made (Prof Liab)/ Occurrence (Gen Liab) | Professional Security Insurance Company | HUL-09106697 | 11/1/2020 - 11/1/2021 | $10M ea occurrence; $10M aggregate |
| SMH-P | Umbrella Liability | Claims-Made (Prof Liab)/ Occurrence (Gen Liab) | National Fire & Marine Insurance Company | EN006899 | 11/1/2019 - 11/1/2020 | $10M ea occurrence; $10M aggregate |

St. Margaret's Health - Spring Valley

SIR Policies (as of 3/27/24)

| Entity | Coverage | Type | Carrier | Policy # | Effective Dates | Limits |
|---|---|---|---|---|---|---|
| SMH-SV | Commercial General Liability (off-site locations, excludes hospital) | Occurrence | Professional Security Insurance Company | HFL-09106934 | 4/17/2023 - 4/17/2024 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-SV | Commercial General Liability (off-site locations, excludes hospital) | Occurrence | Professional Security Insurance Company | HFL-09106934 | 4/17/2022 - 4/17/2023 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-SV | Commercial General Liability (off-site locations, excludes hospital) | Occurrence | Professional Security Insurance Company | HFL-09106934 | 4/17/2021 - 4/17/2022 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-SV | Commercial General Liability | Occurrence | Hudson Specialty Insurance Company | HCF4015944 | 4/17/2020 - 4/17/2021 | $1M ea occurrence; $3M aggregate; $750K deductible per occurrence |
| SMH-SV | Commercial General Liability | Occurrence | Hudson Specialty Insurance Company | HCF4014702 | 4/17/2019 - 4/17/2020 | $1M ea occurrence; $3M aggregate; $750K deductible per occurrence |
| SMH-SV | Commercial General Liability | Occurrence | Hudson Specialty Insurance Company | HCF4013611 | 4/17/2018 - 4/17/2019 | $1M ea occurrence; $3M aggregate; $750K deductible per occurrence |
| SMH-SV | Commercial General Liability | Occurrence | Hudson Specialty Insurance Company | HCF4012605 | 4/17/2017 - 4/17/2018 | $1M ea occurrence; $3M aggregate; $750K deductible per occurrence |
| SMH-SV | Facility Professional Liability (off-site locations, excludes hospital) | Claims-Made | Professional Security Insurance Company | HFL-09106934 | 4/17/2023 - 4/17/2024 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-SV | Facility Professional Liability (off-site locations, excludes hospital) | Claims-Made | Professional Security Insurance Company | HFL-09106934 | 4/17/2022 - 4/17/2023 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-SV | Facility Professional Liability (off-site locations, excludes hospital) | Claims-Made | Professional Security Insurance Company | HFL-09106934 | 4/17/2021 - 4/17/2022 | $1M ea occurrence; $3M aggregate; $25K deductible |
| SMH-SV | Hospital Professional Liability | Claims-Made | Hudson Specialty Insurance Company | HCF4015944 | 4/17/2020 - 4/17/2021 | $1M ea occurrence; $3M aggregate; $750K deductible per claim; shared limits |
| SMH-SV | Hospital Professional Liability | Claims-Made | Hudson Specialty Insurance Company | HCF4014702 | 4/17/2019 - 4/17/2020 | $1M ea occurrence; $3M aggregate; $750K deductible per claim; shared limits |
| SMH-SV | Hospital Professional Liability | Claims-Made | Hudson Specialty Insurance Company | HCF4013611 | 4/17/2018 - 4/17/2019 | $1M ea occurrence; $3M aggregate; $750K deductible per claim; shared limits |
| SMH-SV | Hospital Professional Liability | Claims-Made | Hudson Specialty Insurance Company | HCF4012605 | 4/17/2017 - 4/17/2018 | $1M ea occurrence; $3M aggregate; $750K deductible per claim; shared limits |
| SMH-SV | Umbrella Liability | Claims-Made (Prof Liab)/ Occurrence (Gen Liab) | Professional Security Insurance Company | HUL09108518 | 4/17/2023 - 7/17/2023 | $10M ea occurrence; $10M aggregate |
| SMH-SV | Umbrella Liability | Claims-Made (Prof Liab)/ Occurrence (Gen Liab) | Professional Security Insurance Company | HUL09108518 | 4/17/2022 - 4/17/2023 | $10M ea occurrence; $10M aggregate |
| SMH-SV | Umbrella Liability | Claims-Made (Prof Liab)/ Occurrence (Gen Liab) | Professional Security Insurance Company | HPL09108518 | 4/17/2021 - 4/17/2022 | $10M ea occurrence; $10M aggregate |
| SMH-SV | Umbrella Liability | Claims-Made (Prof Liab)/ Occurrence (Gen Liab) | Hudson Specialty Insurance Company | HCU4015945 | 4/17/2020 - 4/17/2021 | $5M ea occurrence; $5M aggregate - retention $25K |
| SMH-SV | Umbrella Liability | Claims-Made (Prof Liab)/ Occurrence (Gen Liab) | Hudson Specialty Insurance Company | HCU4014703 | 4/17/2019 - 4/17/2020 | $5M ea occurrence; $5M aggregate - retention $25K |
| SMH-SV | Umbrella Liability | Claims-Made (Prof Liab)/ Occurrence (Gen Liab) | Hudson Specialty Insurance Company | HCU4013612 | 4/17/2018 - 4/17/2019 | $5M ea occurrence; $5M aggregate - retention $25K |
| SMH-SV | Umbrella Liability | Claims-Made (Prof Liab)/ Occurrence (Gen Liab) | Hudson Specialty Insurance Company | HCU4012606 | 4/17/2017 - 4/17/2018 | $5M ea occurrence; $5M aggregate - retention $25K |

# <u>Exhibit A</u>

# **Creditor Trust Agreement**

## CREDITOR TRUST AGREEMENT FOR THE
## SMH CREDITOR TRUST

### PREAMBLE

This Creditor Trust Agreement, made as of [_____], 2024, by and among (a) St. Margaret's Health – Peru, and St. Margaret's Health – Spring Valley, debtors and debtors in possession in their jointly administered Chapter 11 Cases (defined below), (b) the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases, as agent for the Beneficiaries, and (c) Michael A. Brandess, not individually but solely as trustee for the Creditor Trust created and defined by this Agreement according to the *Joint Liquidating Plan Proposed by the Debtors and Official Committee of Unsecured Creditors*, dated [_____], 2024, (Dkt. [_____]) including all exhibits, schedules and attachments thereto, either in its present form or as it may later be amended, modified, or supplemented, and as confirmed by the Bankruptcy Court under the Confirmation Order (defined below).

### RECITALS

A.  The Trust (as defined in this Agreement) is created pursuant to and to effectuate the terms of the Plan.

B.  The Trust is created on behalf and for the sole benefit of the Beneficiaries.

C.  The Trust is established for the purpose of collecting, holding, administering, distributing, and liquidating the Trust Assets (defined below) for the benefit of the Beneficiaries according to the terms of the Plan and this Agreement, with no obligation to continue or engage in the conduct of a trade or business except to the extent necessary and consistent with the Plan and this Agreement.

D.  The Trustee, the Trust, and the Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Trust Assets to the Trust as a transfer to the Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust, in exchange for the beneficial interest herein, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes.

E.  The Trust is intended to be treated as a grantor trust for federal income tax purposes within the meaning of Sections 671-677 of the IRC.

*Now, therefore*, in consideration of the premises and the mutual covenants and agreements contained in the Plan Documents, and expressly incorporating these Recitals into the terms and provisions of this Agreement, the Parties agree as follows:

### DECLARATION OF TRUST

The Debtors hereby absolutely assign to the Creditor Trust, and to its successors in trust and its successors and assigns, all right, title, and interest of Debtors in and to the Creditor Trust Assets;

TO HAVE AND TO HOLD in trust unto the Creditor Trust and its successors and assigns forever;

1

IN TRUST NEVERTHELESS upon the terms and subject to the conditions set forth herein and for the benefit of the Beneficiaries, as and to the extent provided in the Plan, and for the performance of and compliance with the terms hereof and of the Plan;

PROVIDED, HOWEVER, that upon termination of the Creditor Trust in accordance with Article XIII of this Agreement, this Agreement shall cease, terminate, and be of no further force and effect; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED that the Creditor Trust Assets are to be held and applied by Creditor Trustee upon the further covenants and terms and subject to the conditions herein set forth.

**Article I**
**DEFINITIONS & INTERPRETATION**

**1.1     Adoption of Plan Definitions**

All capitalized terms used but not defined in this Agreement bear the meanings given to them by the Plan or Confirmation Order. To the extent there is any inconsistency between defined terms, the Plan definitions will control.

**1.2     Definitions**

**1.2.1**     *Agreement* or *Trust Agreement* means this Creditor Trust Agreement.

**1.2.2**     *Alternate Trustee* means any person appointed to serve as Trustee for any matter in which the Trustee has elected or is required to recuse itself as set forth in Section 5.4 of this Agreement.

**1.2.3**     *Bankruptcy Court* means the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

**1.2.4**     *Beneficiaries* means, collectively, the holders of Allowed Claims for 503(b)(9) Claims; Priority Claims; SVCB Class 1(b) Claims (to the extent of any unsecured deficiency claim amount), and General Unsecured Claims under the Plan.

**1.2.5**     *Chapter 11 Cases* means the jointly administered chapter 11 cases of the Debtors, styled *In re St. Margaret's Health – Peru, and St. Margaret's Health – Spring Valley*, pending before the Bankruptcy Court under lead case number 23-11641.

**1.2.6**     *Claim* bears the meaning given to it under Bankruptcy Code § 101(5).

**1.2.7**     *Claims List* bears the meaning given to it at Section 7.1.5.

**1.2.8**     *Committee* means the Official Committee of Unsecured Creditors of the Debtors appointed in the Chapter 11 Cases.

**1.2.9**     *Confidential Information* bears the meaning given to it at Section 14.6.

**1.2.10**     *Confidential Parties* means the Trustee, its employees, and Retained Parties.

2

**1.2.11** *Confirmation Order* means that certain order confirming the Plan, entered at Docket No. [_____] in the Chapter 11 Cases, attached to this Agreement as **Exhibit B**.

**1.2.12** *Creditor Trust Account* means one or more segregated interest-bearing trust fund accounts established by the Creditor Trustee at a federally insured depository bank.

**1.2.13** *Debtors* means St. Margaret's Health – Peru, and St. Margaret's Health – Spring Valley, debtors and debtors in possession in the Chapter 11 Cases.

**1.2.14** *Disputed Claims Reserve* bears the meaning given to it at Section 7.1.3.

**1.2.15** *Final Order* means an order of the Bankruptcy Court, as to which the time to appeal, petition for certiorari, or motion for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing is then-pending, or as to which any right to appeal, petition for certiorari, reargue or rehear has been waived in writing in form and substance satisfactory to the Creditor Trustee or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court will have been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing will have been denied and the time to take any further appeal, petition for certiorari, or motion for reargument or rehearing will have expired; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Rules, may be filed with respect to such order will not preclude such order from being a Final Order.

**1.2.16** *Initial Distribution* bears the meaning given to it at Section 7.1.3.

**1.2.17** *IRC* means the Internal Revenue Code of 1986, as amended.

**1.2.18** *IRS* means the Internal Revenue Service.

**1.2.19** *Non-Professional* means any non-professional person retained or employed by the Creditor Trustee.

**1.2.20** *Parties* means, collectively, the parties and signatories to this Agreement: the Debtors, Committee, and Trustee.

**1.2.21** *Permissible Investments* bears the meaning given to it at Section 4.9.3(b).

**1.2.22** *Plan* means the *Joint Liquidating Plan Proposed by the Debtors and Official Committee of Unsecured Creditors*, dated [_____], 2024, (Dkt. [____]) including all exhibits, schedules, and attachments thereto, either in its present form or as it may later be amended, modified, or supplemented, a copy of which is attached to this Agreement as **Exhibit A**.

**1.2.23** *Plan Documents* means the Plan, Confirmation Order, and this Agreement, including all exhibits, schedules, supplements, and attachments to each such document.

**1.2.24** *Pre-Distribution Certifications* bears the meaning given to it at Section 12.4.

3

**1.2.25** *Professional* means any professional person retained or employed by the Creditor Trustee.

**1.2.26** *Quarterly Report* means the reports described at Section 10.2.

**1.2.27** *Retained Assets* bears the meaning given to it at Section 2.3.2.

**1.2.28** *Retained Parties* means Professionals and Non-Professionals.

**1.2.29** *Semi-Annual Report* bears the meaning given to it at Section 10.3.

**1.2.30** *Successor Trustee* means any person or entity appointed to serve as Trustee under the provisions of Section 5.7.

**1.2.31** *Trust* or *Creditor Trust* means the SMH Creditor Trust formed under this Agreement.

**1.2.32** *Trust Assets* or *Creditor Trust Assets* means the Creditor Trust Assets as defined in the Plan.

**1.2.33** *Trustee* or *Creditor Trustee* means (a) initially, Michael A. Brandess of Husch Blackwell LLP; and (b) any Successor Trustee.

**1.3**    **Interpretation & Controlling Provisions**

The headings in this Agreement are for convenience only and do not limit or otherwise affect the provisions of the Agreement. Words denoting a singular number are deemed to include the plural number and vice versa; and words denoting one gender shall include the other gender as well as the neuter gender. To the extent there is any inconsistency between the Plan as it relates to the Creditor Trust and the Creditor Trust Agreement, the Plan controls.

**Article II**
**ESTABLISHMENT OF THE SMH CREDITOR TRUST**

**2.1**    **Establishment of & Name of Creditor Trust**

The Parties, as called for under the Plan, hereby establish the Creditor Trust on behalf of the Beneficiaries, who are to be treated as the grantors and deemed-owners of the Trust Assets. The Creditor Trust's name is the "SMH Creditor Trust."

**2.2**    **Purpose of the Creditor Trust**

The Creditor Trust is established for the primary purpose of liquidating its assets under Treas. Reg. § 301.7701-4(d). The Creditor Trust has no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Creditor Trust. Accordingly, the Creditor Trust must, in an expeditious but orderly manner, liquidate and convert to cash the Creditor Trust Assets, make timely distributions to the Beneficiaries, and not unduly prolong its duration.

**2.3**    **Transfer to & Vesting of Assets in the Creditor Trust**

2.3.1    As provided for in the Plan, the Debtors and their Estates have transferred, assigned, and delivered to the Creditor Trust, on behalf of the Beneficiaries, all of their rights, title, and

4

interests in the Creditor Trust Assets, notwithstanding any prohibitions against assignment under applicable nonbankruptcy law. The Creditor Trust agrees to accept and hold the Creditor Trust Assets for the benefit of the Beneficiaries, subject to the terms of the Plan Documents, *provided, however*, that with respect to the rights of each of the Debtors in, to, and under CFC Cyber Policy ESJ002625422 (the "***Cyber Policy***"), each and every such right shall retain its character as it existed as of the Petition Date and, notwithstanding any transfer contemplated in this Agreement, shall remain free from merger, setoff, or amendment in any way.

2.3.2   To the extent any of the Debtors' assets cannot be transferred to the Creditor Trust because of a restriction on transferability under applicable nonbankruptcy law that is not superseded by § 1123 or any other provision of the Bankruptcy Code, such assets will be retained by the Debtors (the "***Retained Assets***"). The proceeds of any Retained Assets will be paid to the Creditor Trust. The Parties do not believe that any such Retained Assets exist.

2.3.3   All rights associated with the vesting and transfer of the Creditor Trust Assets, including the Creditor Trust Causes of Action, will vest with the Creditor Trust, including without limitation: attorney-client privileges; work-product protections; and other privileges or immunities attaching to any documents or communications of the Debtors' or the Committee's professionals (whether written or oral).

2.3.4   All bank accounts established by the Debtors may be transferred to and held in the Creditor Trust on behalf of the Beneficiaries and deemed Creditor Trust Accounts, subject to the provisions of the Plan and this Agreement. Alternatively, the Trustee may seek to have the funds held in the Debtors' bank accounts transferred to the Creditor Trust Accounts it establishes. The Parties, including the Debtors' counsel, A&G, are further authorized to take all necessary actions to effectuate the transfer, assignment, and delivery of assets to the Creditor Trust.

## 2.4   Title to Assets

2.4.1   Notwithstanding any prohibition of assignability under applicable nonbankruptcy law, all assets and properties transferred to the Creditor Trust pursuant to the Plan vest in the Creditor Trust according to § 1141 of the Bankruptcy Code. Upon the transfer of the Creditor Trust Assets to the Creditor Trust, the Debtors will have no interest in, or with respect to, such Creditor Trust Assets or the Creditor Trust.

2.4.2   For federal income tax purposes, all parties (including the Debtors, the Trustee, and the Beneficiaries) must treat the transfer of the Creditor Trust Assets from the Debtors and their Estates to the Creditor Trust as a transfer of such assets by the Debtors and their Estates to the holders of Allowed Claims entitled to distributions under the Plan and Confirmation Order, followed by a transfer by such holders to the Creditor Trust. Thus, the Beneficiaries will be treated as the grantors and owners of a grantor trust for federal income tax purposes.

2.4.3   To any extent not effectuated by the Confirmation Order, the Debtors and the Committee will execute and deliver, or cause the execution and delivery of, all documents (in

5

recordable form where necessary or appropriate), and the Debtors and the Committee will take, or cause, any further action as may reasonably be necessary or appropriate to vest, perfect in, or confirm to the Creditor Trust title to and possession of the Creditor Trust Assets.

**2.5    Valuation of Assets**

To the extent the Trustee deems necessary or appropriate, the Creditor Trust may conduct a good faith valuation of the Creditor Trust Assets and may make such valuation available to the Beneficiaries by filing a report of the valuation with the Bankruptcy Court promptly after the completion of any such valuation. The valuation will be used consistently by all parties (including the Debtors, the Trustee, and the Beneficiaries) for federal income tax purposes. Any dispute regarding the valuation of the Creditor Trust Assets must be resolved by the Bankruptcy Court.

**2.6    Claims Against the Creditor Trust Assets**

The Creditor Trust Assets will be subject to the claims of the Trustee, its Professionals, employees, and Non-Professionals (each defined below), and United States Trustee Fees, as well as any Administrative Expense Claims entitled to payment by the Creditor Trust or Trustee pursuant to the Plan. Subject to Section 11.2 of this Agreement, the Trustee is entitled to reimburse such persons out of any available cash in the Creditor Trust, for reasonable compensation and actual reasonable out-of-pocket expenses, and against and from any and all loss, liability, expense, or damage, which each may sustain in good faith and without willful misconduct, gross negligence, fraud, or intentional breach of fiduciary duty, in the exercise and performance of any of the powers and duties of the Trustee. Any such claims for reasonable compensation and reimbursable expenses will have priority over the claims of the Beneficiaries.

### Article III
### APPOINTMENT OF THE CREDITOR TRUSTEE

Michael A. Brandess of Husch Blackwell LLP is appointed to serve as the initial Trustee under the Plan. As of the date of this Agreement, Mr. Brandess accepts this appointment and agrees to serve in such capacity, effective as of the date of this Agreement. Any Successor Trustee may be appointed as set forth in Section 5.7 of this Agreement, in the event any Trustee is removed or resigns, or if such Trustee otherwise vacates the position.

### Article IV
### DUTIES & POWERS OF THE CREDITOR TRUSTEE

**4.1    Generally**

The Trustee is responsible for administering the Creditor Trust Assets and taking actions on behalf of, and representing, the Creditor Trust. The Trustee holds authority to bind the Creditor Trust within the limitations set forth in this Agreement but will—for all purposes—be deemed to act in the capacity of Trustee and not individually. The Trustee is a "representative of the estate" under § 1123(b)(3)(B) of the Bankruptcy Code, and has the capacity, standing, and party-in-interest status to pursue any Creditor Trust Causes of Action and to prosecute objections to claims, and holds the

6

benefits of—and may assert any defenses that may otherwise have been asserted by—the Debtors or a "trustee" under the Bankruptcy Code.

**4.2      Scope of Authority**

The Trustee's responsibilities and authority include, without limitation:

(a)   collecting and liquidating the Creditor Trust Assets, and distributing the Creditor Trust Assets to the Beneficiaries according to the Plan Documents;

(b)   the right to appear and be heard on all matters brought before the Bankruptcy Court or other courts of competent jurisdiction, including adversary proceedings;

(c)   the right to obtain records of, or related to, the Debtors (including bank statements and cancelled checks);

(d)   the right to receive notice of all applications, motions, and other papers and pleadings set before the Bankruptcy Court in the Chapter 11 Cases;

(e)   exclusive standing (including derivative standing to pursue Creditor Trust Causes of Action on behalf of the Debtors) to commence all Creditor Trust Causes of Action;

(f)   exclusive standing to pursue any proceedings initiated by the Committee pursuant to Bankruptcy Rule 2004;

(g)   the right to request that the Bankruptcy Court enter a final decree closing the Chapter 11 Cases;

(h)   facilitating the prosecution or settlement of objections to, or estimations of Claims according to the Plan Documents, subject to the provisions of the Plan Documents;

(i)   analyzing, prosecuting, and settling Creditor Trust Causes of Action;

(j)   filing all required tax returns, and paying any taxes or other obligations on behalf of the Debtors and the Creditor Trust from funds held by the Creditor Trust;

(k)   providing periodic reports to the Bankruptcy Court and other parties in interest regarding the status of the Claims resolution process, prosecution of Creditor Trust Causes of Action, distributions to Beneficiaries, and the financial status of the Creditor Trust; and

(l)   carrying out any other responsibilities not specifically set forth in this Agreement which have vested in the Trustee under the Plan Documents or any Bankruptcy Court order, or as may otherwise be necessary to carry out the provisions of the Plan Documents.

**4.3      Court Approvals**

The Trustee must seek approval of the Bankruptcy Court to:

(a) Sell or liquidate any Creditor Trust Asset for a cash amount equal to or greater than $150,000;

(b) Settle any Creditor Trust Cause of Action for which the demand for damages is equal to or greater than $250,000;

(c) Allow a Disputed Claim in an Allowed Amount equal to or greater than $250,000; and

(d) Grant a release to any Insider on behalf of any Debtor's Estate.

In addition, the Trustee may, in its discretion, seek Bankruptcy Court approval of any other action undertaken on behalf of the Creditor Trust.

**4.4    Fiduciary Obligations to the Creditor Trust & Beneficiaries**

The Trustee's obligations to the Creditor Trust and the Beneficiaries are the same fiduciary obligations owed by a trustee to a trust and its beneficiaries under Illinois law. Actions taken by the Trustee in its capacity as Trustee will be held to the same standard as a trustee of a trust under Illinois law, except as expressly modified by the terms of this Agreement.

**4.5    Creditor Trustee Powers & General Authority**

Unless expressly prohibited or required by the Plan Documents, the Trustee holds authority to take all actions necessary to accomplish the purposes of the Creditor Trust without seeking further authority to act from the Bankruptcy Court. Among other actions necessary to fulfill its duties as Trustee, the Trustee has the express authority to:

(a) hold legal title (on behalf of the Creditor Trust as Trustee, but not individually) to the Creditor Trust Assets;

(b) effect all actions and execute all agreements, instruments and other documents necessary to implement the Plan;

(c) protect and enforce the rights to the Creditor Trust Assets vested in the Creditor Trust by the Plan and the Confirmation Order by any method deemed appropriate, including by judicial proceedings or under any applicable bankruptcy, insolvency, moratorium or similar law, and general principles of equity;

(d) invest funds (as described at Section 4.9 of this Agreement), make distributions, and pay taxes and other obligations owed by the Creditor Trust from funds held by the Trustee or the Creditor Trust according to the Plan and Confirmation Order;

(e) prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle, according to the terms of the Plan Documents, all actions arising under state law or the Bankruptcy Code, including all Creditor Trust Causes of Action;

(f) determine, compromise, and satisfy any liabilities created, incurred, or assumed by the Creditor Trust;

8

(g) file, if necessary, any and all Tax and information returns with respect to the Debtors (from the Petition Date through the effective date of the Creditor Trust) and the Creditor Trust and pay Taxes properly payable by the Creditor Trust and the Debtors, if any, commensurate with the Creditor Trust's classification as a grantor trust pursuant to Treas. Reg. § 1.671-4(a) with respect to Taxes, if any, due from the Creditor Trust;

(h) withhold all necessary taxes, and make tax elections on behalf of the Creditor Trust;

(i) exercise discretion regarding the preparation and transmittal of annual, individualized statements for the Beneficiaries, stating each Beneficiary's share of income, gains, losses, deductions, or credits, and instruct the Beneficiaries to report such items on their federal tax returns;

(j) maintain a register, relying on the Claims List (defined below) provided by the Debtors, evidencing the beneficial interest held by each Beneficiary in the Creditor Trust as part of the Trustee's books and records;

(k) administer, reconcile, compromise, estimate, or resolve Claims according to the provisions and limitations of the Plan Documents (including filing objections to Claims where appropriate);

(l) establish reserves for Disputed Claims, taxes, assessments, Professional fees, and other expenses necessary for the proper operation of matters incidental to properly administering the Creditor Trust;

(m) make distributions called for under the Plan Documents;

(n) open and maintain bank accounts on the Creditor Trust's behalf, or in its name;

(o) pay expenses and make disbursements necessary to preserve, liquidate, and enhance the Creditor Trust Assets;

(p) purchase insurance coverage the Trustee deems necessary with respect to the liabilities and obligations of the Trustee (in the form of an errors and omissions policy, fiduciary policy, or otherwise);

(q) purchase insurance coverage the Trustee deems necessary with respect to real and personal property, which may be or become Creditor Trust Assets;

(r) retain and pay Retained Parties as provided for in Article XI of this Agreement to assist the Creditor Trust or the Trustee with respect to its responsibilities to the extent permitted by the Plan Documents;

(s) take actions necessary to close the Chapter 11 Cases;

9

(t) take actions necessary to terminate the existence of the Debtors, to the extent not already effectuated by the Plan;

(u) terminate and dissolve the Creditor Trust according to the terms of the Plan and this Agreement;

(v) assume any other powers that may be vested in—or assumed by—the Creditor Trust under the Plan or by an order of the Bankruptcy Court, or that may be necessary to properly carry out the provisions of the Plan Documents;

(w) withhold from the amount distributable to any person or entity, amounts sufficient to pay any tax or other charges which the Trustee determines, based upon advice of its agents and professionals, may be required to be withheld under applicable income tax laws of the United States, or any state or local government body; and

(x) take any and all actions authorized or required by the Plan Documents or as otherwise appropriate in the Trustee's reasonable business judgment.

**4.6     Limits to Creditor Trustee's Authority; No Ongoing Business**

4.6.1  The Trustee's authority is limited to the provisions of the Plan Documents. For federal tax purposes, the Trustee does not have authority to engage in any trade or business with respect to the Creditor Trust Assets, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Creditor Trust.

4.6.2  The Trustee must take such actions consistent with the prompt orderly liquidation of the Creditor Trust Assets as required by applicable law and consistent with the treatment of the Creditor Trust as a Creditor Trust under Treas. Reg. § 301.7701-4(d), to the extent such actions are permitted by this Agreement.

4.6.3  The Trustee does not have authority to issue new securities for the Debtors.

**4.7     Other Activities of the Creditor Trustee**

The Trustee is entitled to be employed by third parties while serving as Trustee for the Creditor Trust; *provided, however*, that such employment cannot include actions or representations of parties adverse to the Creditor Trust.

**4.8     Abandoning Trust Assets**

Subject to any limitations under the Plan, if, in the Trustee's reasonable business judgment, any Trust Asset cannot be sold or distributed in a commercially reasonable manner; or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries; or determines such Trust Asset to be too impractical to distribute to Beneficiaries, the Trustee will have the right to cause the Trust to abandon or otherwise dispose of such property, including by donation of such property to a non-profit charitable 501(c)(3) organization.

**4.9**     **Investment & Safekeeping of Creditor Trust Assets**

4.9.1   Until distributed or paid over as provided by this Agreement, all monies and other assets received by the Creditor Trust will be held in trust for the benefit of the Beneficiaries but need not be segregated from other Creditor Trust Assets.

4.9.2   The Trustee must promptly invest any such monies in the manner set forth in this Agreement but will otherwise be under no liability for interest or income on any monies received by the Creditor Trust and held for distribution or payment to the Beneficiaries, except as such interest is actually received by the Trustee.

4.9.3   Investment of any monies held by the Creditor Trust will be administered according to the Trustee's general duties and obligations, and in view of the Trustee's general fiduciary duties under Illinois law. The rights and powers of the Trustee to invest the Creditor Trust Assets transferred to the Creditor Trust, the proceeds of those assets, or any income earned by the Creditor Trust, are limited to the right and power to:

(a)   invest such Creditor Trust Assets (pending distributions according to the Plan and the Confirmation Order) in (i) short-term direct obligations of, or obligations guaranteed by, the United States of America; or (ii) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; or

(b)   deposit such assets in demand accounts at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus (collectively, the "***Permissible Investments***"); *provided, however*, that the scope of any Permissible Investments is limited to only those investments that a Creditor Trust, within the meaning of Treas. Reg. § 301.7701-4(d), is permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise.

**4.10**     **Authority to Expend Creditor Trust Assets**

The Trustee may expend assets of the Creditor Trust to the extent necessary to:

(a)   satisfy and discharge liabilities and to maintain the value of the Creditor Trust Assets during liquidation;

(b)   pay Creditor Trust Expenses (including taxes imposed on the Creditor Trust, and fees and expenses related to litigation, or compensation of the Trustee and Retained Parties according to the provisions of this Agreement);

(c)   satisfy other liabilities incurred or assumed by the Creditor Trust (or to which the Creditor Trust Assets are otherwise subject) according to the Plan Documents; and

11

(d) make distributions to Beneficiaries on account of their Allowed Claims according to the Plan Documents.

## Article V
### THE CREDITOR TRUSTEE

**5.1     Compensation**

5.1.1   Subject to the provisions set forth on Schedule 1 to this Agreement, the Trustee may receive reasonable compensation for services rendered on behalf of the Creditor Trust. All compensation and other amounts payable to the Trustee will be paid from the Creditor Trust Assets by the Trustee upon receipt of periodic billings.

5.1.2   The Trustee will be authorized to receive payment of reasonable compensation for services rendered and expenses incurred in fulfilling its duties pursuant to this Agreement, including, without limitation, any necessary services rendered and expenses incurred before the effective date of this Agreement. The compensation and reimbursement of expenses of the Trustee shall be as set forth on **Schedule 1** attached to this Agreement, and paid out of the Creditor Trust Assets.

5.1.3   The Creditor Trust will reimburse the Trustee for its actual reasonable out-of-pocket expenses incurred, including any expenses or liabilities incurred under Sections 2.6 or 9.3 of this Agreement, and which may also include postage, telephone, and facsimile charges upon receipt of periodic billings. All compensation and reimbursement for expenses payable to the Trustee will be paid from the Creditor Trust Assets in priority over any distributions to Beneficiaries to be made under the Plan.

5.1.4   The majority of work performed on behalf of the Creditor Trust will be performed by the Professionals employed by the Trustee, who will be compensated by the Creditor Trust following the Trustee's review of such fees and expenses as set forth in Section 11.2 of this Agreement.

**5.2     Term of Service**

The Trustee will serve until the earliest occurrence of one of the following circumstances:

(a) completion of all the Trustee's duties, responsibilities, and obligations under the Plan Documents;

(b) termination of the Creditor Trust under this Agreement; or

(c) the Trustee's resignation or removal.

**5.3     No Bond**

The Trustee will serve without bond.

12

**5.4**     **Conflicts of Interest; Appointment of Alternate Trustee**

In the event that the Trustee determines that an actual or reasonably foreseeable conflict of interest exists between itself and a party to which the Trust is directly adverse, the Trustee must recuse itself from discussion or consideration of such matter on behalf of the Trust. In the Trustee's stead, an Alternate Trustee will be appointed for the limited purposes of overseeing the matter on the Trust's behalf and directing any Retained Parties with respect thereto.

5.4.1   An Alternate Trustee may be proposed by counsel for the Trust, or the Trustee, with the appointment of the Alternate Trustee subject to approval by a majority vote of the former members of the Committee, with at least 3 former members of the Committee constituting a quorum for such vote;[1]

5.4.2   Before a party may serve as Alternate Trustee, it must confirm that it does not hold an actual or reasonably foreseeable conflict of interest with respect to the matter or matters for which it will be responsible.

5.4.3   Any Alternate Trustee appointed under this Agreement will have the same duties and responsibilities of the Trustee set forth in Article IV of this Agreement, solely with respect to the discrete matter or matters for which the Alternate Trustee is appointed; and any Alternate Trustee must execute an agreement with the Trust accepting such appointment, and agreeing to be bound by the terms of this Agreement.

5.4.4   The Trust may agree to compensate an Alternate Trustee on terms acceptable to the Trustee, as approved by a majority of the members of the Committee.

**5.5**     **Removal**

5.5.1   The Trustee may be removed for cause at any time by any Beneficiary upon entry of an order of the Bankruptcy Court following notice and a motion for removal served upon the Trustee (and its Professionals); provided, however, that the Trustee may not be removed until a Successor Trustee has been named. Any person seeking removal of the Trustee through an order of the Bankruptcy Court must demonstrate to the Bankruptcy Court that such removal is appropriate for cause. The removal will be effective on the date specified in the order granting such a motion.

5.5.2   "Cause" includes, without limitation:

(a)   the undue prolongation of the duration of the Creditor Trust and of distributions of the Creditor Trust Assets to the Beneficiaries;

(b)   gross negligence, fraud, or willful misconduct (as determined by a Final Order) in connection with the affairs of the Creditor Trust;

---

[1]   In the event that the matter for which an Alternate Trustee is being appointed concerns claims adverse to a former members of the Committee or the entities which they represent, such former Committee members will be required to recuse themselves from such vote.

13

(c) a physical or mental disability that substantially prevents the Trustee from performing the duties of a Trustee under this Agreement; or

(d) an intentional breach of fiduciary duty or an unresolved conflict of interest by the Trustee.

**5.6    Resignation or Vacancy due to Death or Incapacitation**

The Trustee may resign by giving written notice to the Bankruptcy Court and the parties named in Section 14.9 of this Agreement at least 30 days before the effective date of its resignation, or will be deemed to have resigned due to death or incapacity. In the event of the Trustee's death or incapacity, counsel for the Creditor Trust will give notice of the vacancy to the Bankruptcy Court. The Trustee's resignation will be effective on the latest of: (i) the date specified in the notice or date of death or determination of incapacity; (ii) the date that is 30 days after the date the notice is filed with the Bankruptcy Court; or (iii) the date the Successor Trustee accepts its appointment as such.

**5.7    Appointment of Successor Trustee**

5.7.1   In the event the Trustee resigns, or for any other reason is unable to continue to perform its duties as provided in the Plan, then the Trustee or its representative must inform the Court of such resignation or removal within 7 business days of such resignation, and the vacancy will be filled upon majority vote by the former members of the Committee, with at least 3 former members of the Committee constituting a quorum for such vote, and such appointment being subject to approval by the Bankruptcy Court.

5.7.2   If a Successor Trustee is not proposed for approval by the Bankruptcy Court within 30 days of notice of such vacancy to the Bankruptcy Court, then the Bankruptcy Court may independently appoint a Successor Trustee.

5.7.3   Any Successor Trustee appointed under this Agreement must execute an instrument accepting the appointment, notice of which must also be submitted to the Bankruptcy Court by filing notice of such appointment on the docket in the Chapter 11 Cases and attaching a copy of such instrument to the notice. Upon submission of the written acceptance to the Bankruptcy Court, the Successor Trustee will be vested with all of the properties, rights, powers, trusts and duties of its predecessor in the Creditor Trust with like effect as if originally named the Trustee under this Agreement; *provided, however*, that the removed or resigning Trustee must, nevertheless, when requested in writing by the Successor Trustee, execute and deliver any reasonable instrument or instruments conveying and transferring to the Successor Trustee the estate, properties, rights, powers and trusts of the removed or resigning Trustee.

**5.8    Creditor Trust Continuance**

The resignation or removal of the Trustee will not terminate the Creditor Trust, revoke any existing agency created under this Agreement, nor invalidate any of the Trustee's actions preceding such resignation or removal.

14

**Article VI**
**CREDITOR TRUST BENEFICIARIES**

**6.1     Identification of Beneficiaries**

The beneficial interests of each Beneficiary of the Creditor Trust will be recorded and set forth in the Claims List maintained by the Trustee.

**6.2     Beneficial Interest Only**

Ownership of a beneficial interest in the Creditor Trust does not entitle any Beneficiary or the Debtors to: (i) any title in—or to—the Creditor Trust Assets; (ii) or to any right to call for a partition or division of such Creditor Trust Assets; or (iii) to require an accounting, except as specifically provided in this Agreement.

**6.3     Ownership of Beneficial Interests in Creditor Trust**

Each Beneficiary owns a beneficial interest in the Creditor Trust Assets, equal in proportion to the Pro Rata share of such Beneficiary's Allowed Claim, according to the Plan.

**6.4     Evidence of Beneficial Interests**

Ownership of a beneficial interest will be evidenced on the Claims List only. Ownership of a beneficial interest will not be evidenced by any certificate, security, or receipt.

**6.5     Limits on Transferability**

6.5.1   Beneficial interests in the Creditor Trust are non-assignable during the term of this Agreement except by operation of law. An assignment by operation of law will not be effective until appropriate notice and proof of such assignment is submitted to the Trustee; and the Trustee may continue to pay all amounts to or for the benefit of the assigning Beneficiary until it receives proper notice and proof of the assignment by operation of law. The Trustee may rely upon such proof without the requirement of any further investigation.

6.5.2   Notice of a change of beneficial interest ownership as permitted by operation of law must be submitted to the Trustee by registered or certified mail according to the notice provisions set forth in Section 14.9 of this Agreement. The notice must be executed by both the transferee and the transferor, and the signatures of the parties must be acknowledged before a notary public and as required by Bankruptcy Rule 3001(e). The notice must clearly describe the interest to be transferred. The Trustee may conclusively rely upon such signatures and acknowledgments as evidence of such transfer without the requirement of any further investigation.

**6.6     Conflicting Claims**

If any conflicting claims or demands are made or asserted with respect to the Creditor Trust Assets, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of the Creditor Trust Assets, resulting in adverse claims or demands being made in connection with such assets, then the Trustee may refuse to comply with the conflicting claims or demands. In so refusing, the Trustee may elect to make no payment or distribution of the Creditor Trust Assets that are the subject of the claims or demands involved, and

15

to refer such conflicting claims or demands to the Bankruptcy Court, which will have exclusive jurisdiction to resolve conflicting claims or demands. The Trustee is not, and will not become, liable to any party for refusing to comply with any conflicting claims or demands, and will not be liable for interest on any funds withheld. The Trustee will be entitled to refuse to act until: (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all parties to the conflict or demand, and the Trustee.

**Article VII**
**DISTRIBUTIONS**

**7.1    Timing and Methods of Distributions**

**7.1.1    *Generally***

The Trustee will make all distributions to the Beneficiaries on behalf of the Creditor Trust as set forth in and required by the Plan Documents. Unless the entity or Person receiving a payment agrees otherwise, the Trustee, in its sole discretion, will make payments in cash by check drawn on a domestic bank or by wire transfer from a domestic bank.

**7.1.2    *Priority of Distributions***

After payment of all unpaid Creditor Trust Expenses, the Trustee, in its good faith judgment and based on available Creditor Trust Assets and subject to any reasonable reserves established by the Trustee, will distribute all remaining cash to holders of Allowed Claims, Pro Rata in the order of priorities established by the Plan.

The Trustee may withhold from amounts distributable to any Person or entity any amounts the Trustee determines should be withheld in its reasonable discretion, or as required by any law, regulation, rule, ruling, directive, or other government equivalent of the United States or any political subdivision thereof, or to otherwise facilitate the proper administration of the Creditor Trust.

**7.1.3    *Distributions by the Creditor Trustee***

Subject to the provisions of Article VII, the Trustee will make an initial distribution (the "***Initial Distribution***") of cash (including cash equivalents), to the Beneficiaries as soon as practicable. All subsequent distributions will be made to Beneficiaries on dates to be determined by the Trustee in its sole discretion.

The Trustee will make distributions to the Beneficiaries of all net cash income (including cash equivalents), subject to applicable reserves from time to time, at such time intervals as decided by the Trustee (but within a reasonable time after creation of a disputed claims reserve ("***Disputed Claims Reserve***") determined to be sufficient to make Pro Rata distributions on Disputed Claims and to pay the Creditor Trust Expenses in full), pursuant to the terms of the Plan and the Confirmation Order.

16

The Trustee may cause the Creditor Trust to retain an amount of cash reasonably necessary to maintain the value of its assets and to pay projected administrative expenses of the Creditor Trust.

### 7.1.4   Withholdings from Distributions

The Trustee may withhold from any distribution a sum sufficient to pay any required tax or other charge imposed on a Person, entity, or the Creditor Trust (except with respect to distributions to the IRS) under the income tax laws of the United States or of any state or political subdivision either, by reason of any distribution provided for in this Agreement.

The Trustee may enter into agreements with taxing or other authorities for the payment of amounts withheld according to the provisions of Section 12.4 of this Agreement.

Any Person or entity subject to a withholding from a distribution will have the right with respect to the United States, or any state, or any political subdivision of either, to contest the imposition of any tax or other charge against any distribution made by the Trustee.

### 7.1.5   Claims Lists

The Debtors or Epiq will provide a list to the Trustee reflecting all of the claims from the Debtors' bankruptcy schedules and the claims registers maintained by Epiq in its capacity as claims, noticing and solicitation agent in the Chapter 11 Cases (the "**Claims List**").

The Trustee is entitled to rely upon the Debtors' schedules, the filed claims, and the Debtors' books and records to determine the validity, amount, and priority of any Claim, and retains the right to further investigate the validity, amount, and priority of any Claim for purposes of objection to or adjustment of such Claim. The creation and maintenance of the Claims List will not impair the right of the Trustee to object to the allowance of any Claim as provided in Sections 4.2 and 8.1 of this Agreement.

## 7.2    Delivering Distributions

Subject to the provisions of Bankruptcy Rule 2002(g) and this Agreement, distributions and deliveries to holders of Allowed Claims will be made at the address of each holder, as set forth on the Claims List.

## 7.3    No Postpetition or Post-Confirmation Interest on Claims

7.3.1   Unless required by applicable bankruptcy law, or expressly allowed by the Plan or Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan, postpetition interest will not accrue on account of any Claim.

7.3.2   Post-Confirmation Date interest will similarly not accrue on account of any Claim.

## 7.4    Undeliverable & Lapsed Distributions

7.4.1   If any distribution is returned to the Trustee as undeliverable without forwarding information, no further distributions will be made on the Claim at issue, unless the Trustee is notified in writing of the appropriate address to submit the distribution. Upon receipt of

17

a notice of appropriate address, the Trustee will remit any missed distributions to the relevant party, without interest.

7.4.2   The Trustee is not required to attempt to locate any holder of an Allowed Claim.

7.4.3   If a distribution on an Allowed Claim is returned to the Trustee as undeliverable, but includes specific forwarding information, the Trustee will attempt to make the distribution using the forwarding information provided.

7.4.4   Any unclaimed distributions that are not redistributed to remaining Beneficiaries because such redistributions fall below the distribution threshold of $50.00 to individual beneficiaries, or remain uncashed for any other reason after 90 days following such redistribution, may be, at the Trustee's option and net of costs, deposited with the Clerk or Court, or donated *cy pres* to the Bankruptcy Help Desk Foundation established to support the help desk for the Bankruptcy Court.

**7.5   Compliance with Tax Requirements & Allocations**

To the extent applicable, the Creditor Trust will comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions under the Plan and Confirmation Order will be subject to such withholding and reporting requirements. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

**7.6   Fractional Dollars & *de minimis* Distributions**

7.6.1   Except as provided in this Agreement, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan Documents would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.

7.6.2   The Trustee is not required to make any payment of less than $50.00 on account of any Allowed Claim, except for an Allowed Claim for pre-Petition Date wages less than $50.00, unless a request therefor is made in writing to the Trustee. To the extent that any interim distribution is not paid to a Beneficiary on the grounds that it amounts to less than $50.00, the amount of the withheld distribution will be reserved for addition to any future distribution, or as the final distribution to such Beneficiary, and may be made at that time if the total distribution is at least $50.00.

**7.7   Setoffs**

The Trustee may, to the extent allowed under §§ 502(d) or 553 of the Bankruptcy Code or applicable non-bankruptcy law, setoff the claims, rights, and Creditor Trust Causes of Action of any nature that the Creditor Trust may hold against a Beneficiary against the distributions to that Beneficiary called for by the Plan and Confirmation Order before any distribution is made. If the Trustee fails to affect a setoff or a Claim is otherwise Allowed, neither occurrence will constitute a waiver or release by the Creditor Trust of any claims, rights, or Creditor Trust Causes of Action possessed against the Beneficiary.

18

**7.8**   **Debtors' Subordination Rights Preserved**

All rights and claims of the Debtors to subordinate the Claims of any Beneficiary will remain valid and enforceable by the Creditor Trust, unimpaired under § 510 of the Bankruptcy Code, and may be asserted by the Trustee.

**7.9**   **Interest**

Unless otherwise required by applicable bankruptcy law, or specifically provided for herein, post-petition interest shall not accrue or be paid on any Claims, and no holder of a Claim will be entitled to interest or fees accruing on or after the Petition Date on any Claim.

In accordance with § 502(b)(2) of the Bankruptcy Code, the amount of all prepetition Claims against the Debtors will be calculated as of the Petition Date. Except as otherwise explicitly provided in the Plan, § 506(b) of the Bankruptcy Code, or by a Final Order, no holder of a prepetition Claim will be entitled to or receive interest or fees relating to such Claim.

**Article VIII**
**PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, & UNLIQUIDATED CLAIMS**

**8.1**   **Objections to Claims; Prosecuting Disputed Claims**

8.1.1   The Trustee may file objections to Claims, even if a Claim was scheduled by the Debtors as undisputed, liquidated, and non-contingent. The Trustee has the authority to file, settle, compromise, or withdraw objections to Claims without approval of the Bankruptcy Court. Subject to the Trustee's ability to assert claims for relief under § 502(d) of the Bankruptcy Code as set forth at Section 8.3.1 of this Agreement, the Trustee shall not be entitled to object to the SVCB Allowed Class 1(a) Claim nor the SVCB Allowed Class 1(b) Claim.

**8.2**   **Estimating Claims**

8.2.1   The Trustee may request that the Bankruptcy Court estimate any contingent or Disputed Claim under § 502(c) of the Bankruptcy Code, regardless of whether the Debtors, the Committee, or the Trustee previously objected to such Claim, or whether the Bankruptcy Court has ruled on any such objection.

8.2.2   The Bankruptcy Court will retain jurisdiction to estimate any Claim, at any time, during litigation concerning an objection to a Claim, including while an appeal relating to an objection is pending.

8.2.3   Subject to the provisions of § 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or Disputed Claim, the estimated amount will constitute the maximum Allowed amount of the Claim. If the estimated amount constitutes a maximum limitation on the amount of the Claim, the Creditor Trust may pursue supplementary proceedings to object to the allowance of the Claim.

8.2.4   These procedures for objecting to, estimating, and resolving contingent or Disputed Claims are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

19

**8.3**     **Disputed Claims**

8.3.1   If the Trustee has objected to a Claim, or alternatively, if a Claim holder is subject to an avoidance action in which the Trustee has sought relief with respect to the holder's Claim under § 502(d) of the Bankruptcy Code, distributions on the Claim will be withheld, limited to the amount actually in dispute. An objection will not affect payments or distributions under the Plan on any undisputed portion of the Claim.

8.3.2   The Trustee may, but is not required to, maintain one or more Disputed Claims Reserves called for under the Plan Documents.

8.3.3   Once a Disputed Claim becomes an Allowed Claim under a Final Order entered by the Bankruptcy Court, the Trustee will, as soon as practicable, make a distribution from the respective Disputed Claims Reserve to the holder of the Allowed Claim in the amount Allowed, as if the Claim were an Allowed Claim on the Confirmation Date, less the holder's share of any taxes paid or payable from a Disputed Claims Reserve.

8.3.4   If a Disputed Claim is Disallowed, in whole or part, the Trustee will reallocate the amounts held in the Disputed Claims Reserve corresponding to the Disallowed portion of the Disputed Claim among the Beneficiaries and the Disputed Claims Reserve on behalf of remaining, unresolved, Disputed Claims, as applicable, to be distributed under Section 8.3.3 of this Agreement.

**Article IX**
**LIABILITY & EXCULPATION**

**9.1**     **Standard of Liability & Sources of Recovery**

9.1.1   Neither the Trustee, Alternate Trustee, the Retained Parties, nor any of their present and former affiliates, employees, advisors, attorneys, or agents acting in such capacity, or any of their successors or assigns, will have or incur any liability to, or be subject to any right of action by, any person or entity, for any act or omission in connection with, relating to or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Plan or the Plan's implementation, except for their fraud, willful misconduct, or gross negligence, and in all respects will be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

9.1.2   The Creditor Trust, the Trustee, Alternate Trustee, and the Retained Parties, or other representatives of any such party may be held personally liable to the extent that the action taken or omitted to be taken by each of the same or their respective representatives is determined by a Final Order to be solely due to their own gross negligence, willful misconduct, fraud, or breach of fiduciary duty. Any act or abstention performed with the approval of the Bankruptcy Court or undertaken pursuant to the advice of counsel will be conclusively deemed not to constitute fraud or a breach of fiduciary duty.

9.1.3   Any Person dealing with the Trustee or Alternate Trustee may look only to the Creditor Trust Assets to satisfy any liability incurred by the Trustee or Alternate Trustee in carrying out the terms of this Agreement, and the Trustee or Alternate Trustee will have no personal

20

obligation to satisfy any such liability, unless a Final Order is entered finding the Trustee's or Alternate Trustee's actions after the Effective Date were solely due to the Trustee's or Alternate Trustee's own fraud or breach of fiduciary duty.

**9.2     Reliance by Creditor Trustee**

Subject to the limitations of the Plan, Confirmation Order, and Article IV of this Agreement, the Trustee and Alternate Trustee may rely, and will be protected in acting upon, any resolution, certificate, statement, installment, opinion, report, notice, request, consent, order, or other paper or document it reasonably believes to be genuine and signed or presented by the proper party. Further, the Trustee and Alternate Trustee will not be liable for any action or abstention it reasonably takes at the advice of a Professional.

**9.3     Indemnification**

The Creditor Trust will indemnify, defend, and hold harmless the Trustee and Alternate Trustee, and their respective employees, Retained Parties, and representatives from and against any claims, causes of action, liabilities, obligations, losses, damages, or expenses (including reasonable attorneys' fees and expenses) occurring after the Effective Date, other than to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, or fraud, or—solely in the case of the Trustee or Alternate Trustee—fraud or breach of fiduciary duty, to the fullest extent permitted by applicable law.

**9.4     Insurance**

The Trustee may use Creditor Trust Assets to purchase and carry all insurance policies, and pay all insurance premiums and costs the Trustee deems reasonably necessary, including errors-or-omissions insurance for any losses it may incur, arising from its acts or omissions, or the consequences of such acts or omissions, other than as a result of fraud, willful misconduct, gross negligence or breach of fiduciary duty by the Trustee with respect to the implementation and administration of this Agreement.

**Article X**
**ADMINISTRATION OF THE CREDITOR TRUST**

**10.1     Books & Records**

10.1.1    The Trustee will maintain books and records relating to the Creditor Trust's assets; income; expense disbursements; liabilities; and claims made against or assumed by the Creditor Trust in such detail and for such period of time as the Trustee determines necessary to make a full and proper accounting for the Creditor Trust, and to comply with applicable provisions of law.

10.1.2    The Creditor Trust is not required to file any accounting or seek approval of any court with respect to the administration of the Creditor Trust, or as a condition for making any payment or distribution out of the Creditor Trust Assets.

10.1.3    Subject to applicable privileges, the Beneficiaries may request a reasonable inspection (as determined by the Trustee) of the Creditor Trust books and records. Requests must be made

21

in writing to the Trustee, and the Trustee will have 30 days following receipt of a request to inspect the Creditor Trust books and records to respond to the request.

10.1.4   Before inspecting the Creditor Trust books and records, the requesting Beneficiary must first enter into a confidentiality agreement satisfactory in form and substance to the Trustee; make such other reasonable arrangements for the inspection as requested by the Trustee; and bear all costs and expenses associated with the inspection.

## 10.2   Quarterly Reports

On a quarterly basis, the Trustee will file Quarterly Reports containing information regarding the Trust's post-Confirmation activities, including disbursements, distributions, and transfers that have been made pursuant to the Plan during the relevant reporting period. The first Quarterly Report will cover the entire month in which the Plan was confirmed through the end of the next calendar quarter, with following Quarterly Reports covering the entire previous calendar quarter. Quarterly Reports will be due twenty days after the end of each calendar quarter.

## 10.3   Semi-Annual Reports

In addition to quarterly reports required to be filed by the Office of United States Trustee, the Trustee will periodically file reports (each a "***Semi-Annual Report***") with the Bankruptcy Court containing a general narrative summary of the Creditor Trust's activities for the reporting period, subject to any restrictions on disclosure due to confidentiality (*see* Section 14.6 of this Agreement) or applicable privilege concerns.

The Trustee must file the Semi-Annual Reports with the Bankruptcy Court within 30 days after June 30 and December 31 of each calendar year during the term of this Agreement following the Effective Date. The first Semi-Annual Report will be due [_____, 2024].

## 10.4   Legal Compliance

Any and all distributions of Creditor Trust Assets must comply with all applicable laws and regulations, including applicable federal and state tax and securities laws.

**Article XI**
**PROFESSIONALS & NON-PROFESSIONALS**

## 11.1   Retaining Professionals & Non-Professionals

### 11.1.1   Retaining Professionals

Upon its appointment, the Trustee may retain its own Professionals as it may deem necessary according to this Agreement. Professionals may include legal counsel, accountants, experts, advisors, consultants, investigators, appraisers, real estate brokers, auctioneers, and other professionals whose retention and employment the Trustee deems appropriate.

Professionals do not need to be "disinterested," as defined by the Bankruptcy Code, and may include the attorneys and financial advisors employed by any party in the Chapter 11 Cases. The Trustee may retain such Professionals without further approval from the

22

Bankruptcy Court; and the Trustee will be permitted to retain any such Professional in light of the efficiencies implicit in continuity. The Trustee's retention of any such Professionals is deemed not to pose any conflict of interest, and no conflict will be deemed to exist by virtue of the filing of applications by Professionals for allowance of Administrative Expense Claims according to the provisions of the Plan.

### 11.1.2   Retaining Non-Professionals

Upon accepting its appointment as Trustee, the Trustee may retain its own Non-Professionals (referred to collectively with Professionals as **Retained Parties**") without seeking approval from any court or third party. Non-Professionals may include employees, independent contractors, or other agents whose retention and employment the Trustee deems appropriate. Non-Professionals do not need to be "disinterested" as defined by the Bankruptcy Code, and may include employees, independent contractors, and agents of any party in the Chapter 11 Cases for efficiency.

## 11.2   Compensation for Retained Parties

The Trustee may pay the reasonable fees and expenses of the Creditor Trust and each Retained Party as an expense of the Creditor Trust without application to the Bankruptcy Court.

**Article XII**
**TAXES**

## 12.1   Tax Returns & Payments

The Trustee is responsible for:

(a)  preparing and timely filing all required federal, state, and local tax returns for the Creditor Trust and the Debtors;

(b)  paying any taxes shown on such returns as owing by the Creditor Trust or the Debtors (as applicable) from applicable Creditor Trust Assets; and

(c)  preparing and distributing any necessary federal, state, or local information returns to the Beneficiaries.

The Trustee will retain all tax returns and supporting documentation until applicable statutes of limitation expire. The Trustee may also request an expedited determination of the taxes owed by the Debtors, the Creditor Trust, or any Disputed Claims Reserve under § 505(b) of the Bankruptcy Code for any tax return for which such determination may be requested.

## 12.2   Creditor Trust

The Trustee will file tax returns under Treas. Reg. § 1.671-4(a) on the basis that the Creditor Trust is a grantor trust that is a "Creditor Trust" within the meaning of Treas. Reg. § 301.7701-4(d) and related regulations. For federal income tax purposes, the Trustee will allocate to the Beneficiaries their applicable shares of any income or loss of the Creditor Trust Assets, and such Beneficiaries will be subject to tax on the Creditor Trust Assets' taxable income on a current basis.

As soon as reasonably practicable after the close of each calendar year, the Trustee will send each affected Beneficiary a statement setting forth the Beneficiary's share of the Creditor Trust's income, gain, deduction, loss, and credit for the year, and will instruct the Beneficiary to report all such items on the Beneficiary's tax return for the year and pay any tax due with respect to these amounts. The Trustee may limit such returns to the classes of Beneficiaries it determines will receive a distribution.

**12.3    Disputed Claims Reserve**

The Trustee will, if necessary, file all applicable tax and other returns and statements for the Disputed Claims Reserve according to the requirements for discrete trusts taxed under IRC § 641, *et seq.* or as "disputed ownership funds" within the meaning of Treas. Reg. § 1.468B-9(b)(1), as applicable. The Trustee will also pay, from the applicable Creditor Trust Assets on a current basis, any taxes owed on any net income or gain of the Disputed Claims Reserve.

**12.4    Tax Withholding & Reporting; Liability for Taxes**

The Trustee (and its designees) will comply with all applicable tax withholding and reporting requirements imposed on him and the Creditor Trust by any governmental unit, and all distributions made under the Plan will be subject to applicable withholding and reporting requirements. The Trustee (and its designees) are authorized to take any actions necessary to comply with such tax withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, or establishing any other mechanism the Trustee believes is appropriate, including requiring holders of Claims to submit appropriate tax and withholding certifications.

Notwithstanding anything in the Plan to the contrary, prior to making distributions under the Plan and this Agreement, the Trustee will require each holder to furnish it with: (a) its Employer or Taxpayer Identification Number as assigned by the IRS on IRS Form W-9; and (b) a certification that the holder is not a person or entity with whom it is illegal for a U.S. person to do business under Office of Foreign Assets Control (OFAC) sanctions regulations and/or the list of Specially Designated Nationals and Blocked Persons (collectively, the "***Pre-Distribution Certifications***").

Pre-Distribution Certification forms will be mailed to the distribution address for each holder prior to distributions being made, and holders shall have 45 days from the date of mailing to return the executed Pre-Distribution Certifications. Any holder that fails to return the executed Pre-Distribution Certifications within such 45 day period will be deemed to have forfeited its right to receive distributions, and shall be forever barred and enjoined from asserting any right to distributions made prior to the Trustee receiving its executed Pre-Distribution Certification (if such holder is a holder of an Allowed Class 4 General Unsecured Claim, it will only be entitled to a Pro Rata share of remaining future distributions, if any). Any distributions that are forfeited pursuant to this provision will be returned to the Trustee and become property of the Creditor Trust.

To the extent any Claim holder fails to submit appropriate tax and withholding certifications as required by the Trustee, such Claim holder's distribution may be deemed undeliverable and subject to the provisions of the Plan and this Agreement governing undeliverable distributions. Each Person

24

or entity receiving (or deemed to receive) a distribution under the Plan will have sole responsibility for paying any taxes imposed on them.

## Article XIII
### TERMINATION OF THE CREDITOR TRUST & WIND DOWN OF DEBTORS

**13.1   Duration & Extension**

The Trustee will conduct the orderly wind down of the Debtors which may, in the Trustee's discretion, include formal dissolution of each of the Debtors. The Trustee will, following dissolution of the Debtors, retain the authority and have standing to continue or assert claims or pursue matters on behalf of the Debtors to the extent necessary to preserve, protect and liquidate the Creditor Trust Assets or otherwise necessary to administer the Creditor Trust. Following the wind-down and dissolution of the Debtors, entry of a final decree in the Chapter 11 Cases, and closing of the Creditor Trust, the Trustee is authorized—and retains the right—to liquidate any remaining or later-discovered assets of the Estates.

**13.2   Five Year Term**

If, after five (5) years from the Effective Date of the Plan, the dissolution and termination of the Creditor Trust has not occurred pursuant to Section 13.1, and Trustee determines that the facts and circumstances necessitate an extension of the duration of the Creditor Trust in order to effectuate its purpose, the Creditor Trust may be extended for a period of twelve (12) months. Any extension of the duration of the Creditor Trust, as provided for herein, will be subject to approval by the Bankruptcy Court, *provided*, *however*, that prior to requesting such extension, the Trustee must retain an opinion of counsel or a favorable ruling from the IRS that any further extension would not adversely affect the status of the Trust as a Grantor Trust for federal income tax purposes. The Trustee must seek approval of any such extension within sixty (60) days of the expiration of the initial five (5) year term or any extension thereof.

**13.3   Termination Upon Distribution of all Creditor Trust Assets**

The Creditor Trust will terminate, and the Trustee will bear no additional responsibilities in connection to the Creditor Trust, except the actions necessary to effectuate termination under relevant law, and except as described in Section 13.1 of this Agreement, upon the occurrence of all of the following circumstances:

(a) payment of all costs, expenses, and obligations incurred in connection with administering the Creditor Trust;

(b) full resolution of all objections to Disputed Claims;

(c) full resolution of all Creditor Trust Causes of Action, or a determination by the Trustee that pursuing additional Creditor Trust Causes of Action is not likely to yield sufficient additional proceeds to justify pursuit of such Creditor Trust Causes of Action;

(d) distribution of all remaining Creditor Trust Assets;

25

(e) closure or dismissal of the Chapter 11 Cases; and

(f) completion of any necessary or appropriate reports, tax returns, or other documentation determined necessary by the Trustee, in its reasonable discretion.

**13.4    Diligent Administration**

The Trustee is responsible for diligently administering the Creditor Trust. The Trustee will seek to resolve, settle, or otherwise dispose of all claims that constitute Creditor Trust Assets, and make distributions of the Creditor Trust Assets to Beneficiaries according to the terms of the Plan Documents. The Trustee may not unduly prolong the duration of the Creditor Trust, seeking its termination as soon as practicable while carrying out its duties and responsibilities under the Plan Documents.

**13.5    Notice of Termination; Authority to Conclude Trust Administration; Retention of Documents**

Upon the termination of the Creditor Trust, the Trustee must file a written notice of the termination with the Bankruptcy Court.

After the termination of the Creditor Trust, the Trustee will retain the power to exercise all the rights, powers, and privileges conferred on him by the Plan Documents solely for the purpose of liquidating and concluding the affairs of the Creditor Trust.

For five years after the distribution of all of the Creditor Trust Assets, subject to there being sufficient funds remaining to cover the costs of storing the books and records of the Creditor Trust, the Trustee will retain the books, records, and files that were delivered to, or created by, the Trustee. After the conclusion of this five-year period, the Trustee may dispose of the books, records, and files in any manner it deems appropriate.

**Article XIV**
**OTHER GENERAL PROVISIONS**

**14.1    Privilege Preserved**

Any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications in connection with the Creditor Trust Assets are transferred to the Creditor Trust and vested in the Creditor Trust and its representatives. The Trustee, the Debtors, and the Committee may take any actions necessary to effect the transfer of such privileges. For the avoidance of doubt, neither the Trustee nor the Creditor Trust will be treated as a successor to the Debtors and their Estates for any purpose.

**14.2    Cooperation with the Creditor Trustee**

14.2.1 The Committee, the Debtors, and their respective professionals will reasonably cooperate with the Trustee and provide it with access to, or copies of, books and records the Trustee reasonably requires for the purpose of performing its duties and exercising its powers under the Plan Documents.

26

14.2.2 The Trustee will compensate the Debtors, the Committee, and their respective professionals for their reasonable costs and fees relating to compliance with this Section 14.2 from the Creditor Trust Assets.

14.2.3 All third parties in possession of the Debtors' books and records must similarly cooperate with the Trustee, and the Trustee may seek appropriate relief from the Bankruptcy Court to the extent that a third party unreasonably refuses to cooperate with a request made by the Trustee.

## 14.3   Statutory Fees

Following the transfer of all Creditor Trust Assets to the Creditor Trust on and after the Effective Date and through the date that a final decree is entered in the Chapter 11 Cases, the Creditor Trust will be obligated to pay any United States Trustee Fees under 28 U.S.C. § 1930(a)(6) on account of the Estates.

## 14.4   Prevailing Party

In the event of a dispute over the interpretation or enforcement of the provisions of this Agreement, the prevailing party will be entitled to collect all costs, expenses, and fees, including attorneys' fees, from the non-prevailing party incurred in connection with the dispute or enforcement action.

## 14.5   Creditor Trustee's Implied Authority

No person dealing with the Creditor Trust is obligated to inquire into the authority of the Trustee to protect, conserve, or dispose of the Creditor Trust Assets.

## 14.6   Confidentiality

The Confidential Parties may become aware of certain material, non-public information relating to the Creditor Trust Assets ("***Confidential Information***") in performing their duties under this Agreement. The Confidential Parties will hold any Confidential Information strictly confidential, and not use the Confidential Information for personal gain. Confidential Parties may only disclose Confidential Information if the Confidential Information:

(a) is, or becomes, generally available to the public other than by a disclosure made by a Confidential Party;

(b) was available to the Confidential Parties on a non-confidential basis before its disclosure to the Confidential Parties under this Agreement;

(c) becomes available to the Confidential Parties on a non-confidential basis from a source other than their work in connection with the Debtors or the Creditor Trust, provided that the source is not also bound by a confidentiality agreement with the Debtors or the Creditor Trust; or

(d) must be disclosed by the Confidential Parties because of a legal process including a subpoena or other court order, or other applicable laws or regulations.

27

If a third party makes a request for disclosure of Confidential Information from any Confidential Party under subparagraph (d) of this Section, the Confidential Party must promptly provide reasonable notice of the required disclosure to the Trustee in advance of the disclosure with enough time to allow the Trustee to object to, or otherwise prevent, disclosure of the Confidential Information by judicial or other means. The Confidential Party will cooperate reasonably with the Trustee to make any objection to disclosing Confidential Information, including appearing in any judicial or administrative proceeding in support of the Trustee's objection.

**14.7    Governing Law; Submission to Jurisdiction; Service of Process**

14.7.1    This Agreement is governed by and construed under the laws of the State of Illinois, without giving effect to its rules governing conflicts of law. The Bankruptcy Court will have exclusive jurisdiction over any dispute arising from, or in connection with, the transactions contemplated by this Agreement. The Parties consent to the exclusive jurisdiction of the Bankruptcy Court and its appropriate appellate courts, and irrevocably waive, to the fullest extent permitted by law, any objection they may have now or later to the laying of the venue of any dispute in the Bankruptcy Court, or that any dispute brought in the Bankruptcy Court is brought in an inconvenient forum.

14.7.2    This Agreement is subject to any order or act of the Bankruptcy Court applicable to the Agreement. Parties may be served with process anywhere in the world, within or without the jurisdiction of the Bankruptcy Court. Without limiting the provisions of this Section, the Parties agree that service of process on a party may be made upon the designated Person or entity at the address provided in Section 14.9 of this Agreement and will be deemed effective service of process on that party.

**14.8    Severability of Provisions**

If any provision of this Agreement, or the application of a provision of the Agreement to any Person or circumstance, is finally determined invalid or unenforceable, to any extent, by a court of competent jurisdiction, the remainder of this Agreement, or the application of the relevant provision of this Agreement to other Persons or circumstances, will not be affected, remaining valid and enforceable to the fullest extent permitted by law.

**14.9    Notices**

Any notice or other communication made under this Agreement to the Trustee must be in writing, and deemed sufficient for all purposes, if delivered via (i) personal delivery; (ii) first-class mail (unless registered or certified mail is required); or (iii) electronic mail, to the parties and addresses set forth below, or such other addresses as such parties may file with the Bankruptcy Court:

| **To the Creditor Trustee:** | **With a copy to:** |
|---|---|
| Michael A. Brandess | Levenfeld Pearlstein, LLC |
| c/o Husch Blackwell LLP | Attn: Elizabeth Vandesteeg, Jack O'Connor |
| 120 S. Riverside Plz., Ste. 2200 | 120 S. Riverside Plz., Ste. 1800 |
| Chicago, IL 60606 | Chicago, IL 60606 |
| | |
| Tel. 312.655.1500 | Tel. 312.346.8380 |
| Email: michael.brandess@huschblackwell.com | Email:  evandesteeg@lplegal.com |

joconnor@lplegal.com

| | |
|---|---|
| **To the Debtors:** | **With a copy to:** |
| St. Margaret's Health–Peru and | Adelman & Gettleman, Ltd. |
| St. Margaret's Health–Spring Valley | Attn:   Steven Chaiken, Erich Buck, Henry |
| Attn: Tim Muntz, President & CEO | Merens |
| 600 East First Street | 53 W. Jackson Blvd., Suite 1050 |
| Spring Valley, IL  61362 | Chicago, IL 60604 |
| | |
| Tel. 815-664-1372 | Tel. 312-435-1050 |
| Email: Tim.Muntz@aboutsmh.org | Email: schaiken@ag-ltd.com; hmerens@ag-ltd.com; ebuck@ag-ltd.com |

**14.10   Notices to Beneficiaries**

Any notice or other communication made under this Agreement will be in writing, and deemed sufficient for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address set forth on the Claims List.

**14.11   Counterparts & Electronic Signatures**

This Agreement may be executed in counterparts and a facsimile or other electronic form of signature will bear the same force and effect as an original signature.

**14.12   Amendment or Waiver**

Any substantive provision of this Agreement may be materially amended or waived by the Trustee with the approval of the Bankruptcy Court, upon notice and an opportunity for a hearing; but no change may be made to this Agreement that would adversely affect the federal income tax status of the Creditor Trust as a "grantor trust," if applicable.

Technical or non-material amendments to or waivers of portions of this Agreement may be made by the Trustee without the approval of the Bankruptcy Court, as necessary, to clarify this Agreement, or to enable the Creditor Trust to effectuate the terms of this Agreement.

**14.13   Intervention**

On the Effective Date, the Trustee will be deemed to have intervened or substituted as plaintiff, movant, defendant, or additional party, as appropriate, in any adversary proceeding, contested matter, Claim objection, or other motion filed before the Effective Date, where the subject matter of the action involves any Disputed Claim, Creditor Trust Asset, or Claim, to the extent the Claim impacts the Creditor Trust Assets.

**[Execution Page Follows]**

*In Witness Whereof*, the Parties to the Creditor Trust Agreement have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers as of the date of the Agreement.

**St. Margaret's Health – Peru**

By: _____

Its: _____

**St. Margaret's Health – Spring Valley**

By: _____

Its: _____

**Official Committee of Unsecured Creditors of St. Margaret's Health – Peru and St. Margaret's Health – Spring Valley**

By: _____
    Dr. Michael D. Coulson
    Anesthesia Associates, Ltd.
    Chairperson

**Michael A. Brandess, solely as Creditor Trustee of the SMH Creditor Trust**

By: _____
    Michael A. Brandess
    Partner
    Husch Blackwell LLP

30

**Schedule 1**
**Creditor Trustee Compensation Structure**

Beginning on and after the Effective Date of the Plan, the Creditor Trustee's compensation will be as follows:

| | |
|---|---|
| **Periodic fee:** | $15,000.00 per month for the first 24 months of the Creditor Trust's administration, and thereafter the Creditor Trustee shall be compensated on an hourly basis at his then-prevailing hourly compensation rate. |
| **Contingent fee:** | The Trustee will be entitled to 3% of gross recoveries to the Creditor Trust, *except* with respect to: |

    (a) Any matter that is subject to a settlement or settlement in principle as of the Effective Date of the Plan;

    (b) The OSF Holdback; *see* (Dkts. 71, 178);

    (c) Amounts recovered on account of the Debtors' 457(b) plan assets, which is the subject of adversary proceeding 24-00063 pending before the Bankruptcy Court;

    (d) Any asset sales that have been completed or proposed by motion before the Effective Date of the Plan;

    (e) Amounts recovered on account of certain Volume Discount Adjustments ("VDAs") owed to the Debtors or their estates from the U.S. Department of Health and Human Services and/or Medicare/Medicaid;

    (f) Amounts recovered on account of St. Margaret's Health – Spring Valley's ("SMH-SV") claim against CFC Underwriting Limited for reimbursement under the Cyber Policy in connection with the February 2021 ransomware attack against SMH-SV; and

    (g) Any sale of the following parcels of real property, if such sale is effectuated by Hilco Real Estate, LLC as broker, pursuant to the Bankruptcy Court's order at docket number 383 in the Chapter 11 Cases granting the Debtors' request for relief at docket number 372:

        i.    600 E. First Street, Spring Valley, IL 61362; PIN 18-35-178-004;

        ii.   600 E. First Street, Spring Valley, IL 61362; PIN 18-35-178-006; and

        iii.  620 E. First Street, Spring Valley, IL 61362; PIN 18-35-178-007.

31

# Exhibit A

## *Plan*

# Exhibit B

## *Confirmation Order*

# <u>Exhibit B</u>

# **SIR Trust Agreement**

1320266v2

FIRST RESTATEMENT OF
GENERAL/PROFESSIONAL LIABILITY LOSS FUND
TRUST AGREEMENT

THIS FIRST RESTATEMENT of the Trust Agreement establishing the General/Professional Liability Loss Fund Trust Agreement is made this _____ day of _____, 2024, by and between ST. MARGARET'S HEALTH – PERU AND ST. MARGARET'S HEALTH – SPRING VALLEY (collectively, the "Manager"), and _____, as Trustee (the "Trustee");

W I T N E S S E T H :

WHEREAS, ILLINOIS VALLEY COMMUNITY HOSPITAL created the GENERAL/PROFESSIONAL LIABILITY LOSS FUND TRUST (the "Trust") on April 1, 1978, by and between itself, and CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as original Trustee;

WHERAS, the Trust was established to satisfy any covered hospital professional liability or comprehensive general liability of SMH-P (as defined herein);

WHEREAS, Part 11 of the Agreement provided for limited amendments to the Agreement from time to time by a signed resolution by SMH-P delivered to the Trustee;

WHEREAS, this Trust is being amended pursuant to the [*Order Confirming the Joint Liquidating Plan Proposed by the Debtors and Official Committee of Unsecured Creditors*] entered in the case styled *In re St. Margaret's Health – Peru and St. Margaret's Health*

– *Spring Valley*, Case No. 23-11641 in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court"); and

WHEREFORE, it is the intention of the Manager and the Trustee, with permission of the Bankruptcy Court, to restate the terms of the Agreement, with the intent that the Trust shall continue and be known as the "GENERAL/PROFESSIONAL LIABILITY LOSS FUND TRUST".

NOW, THEREFORE, pursuant to Part 11 of the Agreement, order of the Bankruptcy Court, and agreement of the Manager and the Trustee, the Agreement is hereby restated in its entirety as provided in this written instrument.

## I.   DEFINITIONS

1.1 _____ shall be the Trustee hereunder to take, hold, invest, administer, and distribute the Trust in accordance with the following provisions.

1.2 ST. MARGARET'S HEALTH – PERU f/k/a ILLINOIS VALLEY COMMUNITY HOSPITAL shall be referred to herein as "SMH-P".

1.3 The assets at any time held hereunder by the Trustee are hereinafter referred to as the "Fund".

1.4 Whenever used herein, "actuary" means an independent actuary who is a fellow of the Society of Actuaries, insurance company, or broker employing actuarial personnel experienced in the field of medical malpractice and general liability insurance selected by the Manager.

-2-

1.5   The term "covered hospital professional liability and comprehensive general liability losses" shall have the meaning assigned to it hereinafter in Part 4, Paragraph 4.2.

1.6   The term "certain covered persons" shall have the meaning assigned to it hereinafter in Part 4, Paragraph 4.1.

## II.  CONTRIBUTIONS

2.1   The Trustee shall be accountable for all contributions received by it, but shall have no duty to require that any contributions be made to it, or to determine that the Fund is adequate at any time to satisfy any covered hospital professional liability or comprehensive general liability of SMH-P, except as specifically set forth in this Agreement.

2.2   The Manager shall periodically notify the Trustee in writing to engage an actuary to assess existing and potential future claims to determine how much of the Fund the Trustee should maintain in reserves for future claims. The Trustee shall be fully protected in relying upon the opinion of its actuary in making a determination regarding the adequacy of such reserves. Any income earned by the Fund shall become a part of the Fund and shall be used in establishing adequate Fund levels.

## III. PAYMENTS FROM TRUST FUND

3.1   The Trustee shall make payments from the Fund as follows:

    (a)   Expenses of the administration of the Fund;

    (b)   Fees and expenses involved with the maintenance of the Fund by the Trustee;

-3-

(c)   All legal expenses directly or indirectly incurred for the maintenance or operation of the Trust;

(d)   Actuarial expenses; and

(e)   Claims as set forth in Part 3, Paragraph 3.2.

3.2  Payment of claims of certain covered persons or of covered hospital professional liability and comprehensive general liability losses, as described in Part 4, shall be made from the Fund only upon the prior receipt by the Trustee of: (a) a brief description of the nature of the claim or expense to be paid, which clearly sets forth the amount of the requested disbursement and to whom the disbursement is payable; and (b) either (i) a certified copy of the judgment against one or more certain covered persons that is final and non-appealable, or (ii) a written, fully-executed settlement agreement signed by the Trustee. The receipt by the Trustee of the information described above shall be conclusive evidence of the propriety of any disbursement by the Trustee but shall not require the Trustee to make any disbursement on account of such claim.

3.3  Upon approval of a claim pursuant to Part 3, Paragraph 3.2, the person whose claim has been approved shall become a "Claimant." No payments may be made to a Claimant unless such Claimant has executed a beneficiary designation form indicating the person or persons to receive distributions owed to Claimant if Claimant shall die prior to payment in full.

-4-

3.4  The Trustee shall make a disbursement to a Claimant if and only if the Trustee determines that the Fund will be adequate to pay the same proportion of the Claimant's claim and all other pending claims.

3.5  The Trustee shall be entitled to reasonable fees for its services hereunder in accordance with its written agreement with the Manager. Such fees and any expenses incurred by the Trustee in connection with the assets held hereunder by the Trustee shall be charged to the Fund. To the extent that the Fund does not pay such fees and expenses, they shall be paid by the Manager.

3.6  Neither the income of the Fund nor the Fund itself shall be liable to any person other than a Claimant.

## IV.  COVERAGE AND EXCLUSIONS

4.1  The term "certain covered persons" as used in this Agreement shall mean:

(a)  SMH-P;

(b)  Any agent or employee of SMH-P, including interns and residents, whether professional, para-professional, whether full time or, part time, or any member of SMH-P's board of trustees, directors, or governors, or any member of any advisory board of the hospital;

(c)  Volunteer workers performing their duties on behalf of SMH-P, or in connection with any corporation, organization or entity which SMH-P controls, or is affiliated with SMH-P;

(d)  Any person (whether or not an employee of or a staff member of SMH-P), while serving at the request or direction of SMH-P as a member of any duly constituted medical staff committee, board

-5-

committee, or other hospital committee, the activities of which in whole or in part relate directly or indirectly to the rendering or surveillance of the quality of medical care, patient care, hospital utilization, safety, medical - legal responsibility, credentialling, or any other activity affecting in whole or in part any of the above, or a person charged with the duty of executing directives or any such board or committee, or any person who is responsible for the care, supervision, or surveillance of any department, section, activity, or other area of the involvement of SMH-P with respect to the liability arising out of such service;

(e)     For purposes of this Paragraph 4.1, the term "SMH-P" shall include any subsidiary or affiliated corporation of SMH-P (including St. Margaret's Health – Spring Valley), or any school, program, educational endeavor (including students thereof), out-patient organization or entity; ·research or any other organization, corporation, or entity controlled or affiliated with SMH-P, whether owned in whole or in part by SMH-P.

(f)     For purposes of this Paragraph 4.1, the term "SMH-P" shall also include any trustee under any existing financial arrangement of SMH-P, or any mortgagee, lease holder, landlord, trustee, under-writer, issuing municipality, or any other financial or bonding entity, corporation or organization, with which SMH-P has existing financial arrangements.

(g)     Any person, whether or not an employee of or staff member of SMH-P or a professional, para-professional or nonprofessional, corporation, organization or other entity which SMH-P may, from time to time, name as additional certain covered persons under this Agreement in accordance with the provisions relating to the amendments set forth in Part 11, Paragraph 11.2.

4.2  The term "covered hospital professional liability and comprehensive general liability losses" as used in this Agreement shall mean:

-6-

All sums which SMH-P and any subsidiary or affiliated institution of SMH-P shall become legally obligated to pay as damages because of bodily injury to a person or property damage to the property of a person (1) arising out of the rendering or failure to render professional, medical or patient care services (2) arising directly or indirectly out of or in connection with the maintenance and operation of SMH-P and any affiliated health care facilities and (3) all expenses, including attorneys' fees and costs incurred in connection with the investigation and defense of any claim or cause of action described above.

As used herein, the term "covered hospital professional liability and comprehensive general liability losses" does not include claims for damages arising out of:

(a)   bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

(1)   Any automobile or aircraft owned or operated by or rented or loaned to SMH-P, or

(2)   any other automobile or aircraft operated by any person in the course of his employment by SMH-P;

(b)   This exclusion does not apply to any automobile or aircraft used as an ambulance, or other vehicles used for the purpose of transporting patients, blood, medical supplies, equipment, and the like;

(c)   bodily injury or property damage arising out of (i) the ownership, maintenance, operation, use, loading or unloading of any mobile equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (ii) the operation or use of any snowmobile or trailer designed for use therewith; ·

(d)   Bodily injury or property damage arising out of and in the course of the transportation of mobile

-7-

equipment by an automobile owned or operated by or rented or loaned to SMH-P;

(e)     Bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of

(f)     Any watercraft owned or operated by or rented or loaned to SMH-P, or

(g)     Any other watercraft operated by any person In the course of his employment by SMH-P; but this exclusion does not apply to watercraft while ashore on premises owned by, rented to Or controlled by SMH-P;

(h)     Bodily injury or property damage arising out of the discharge, dispersion, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(i)     Bodily injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing;

(j)     Any obligation for which SMH-P or any insurance carrier, as its insurer may be held liable under any workmen's compensation, un- employment compensation or disability benefits law, or under any similar law;

(k)     Bodily injury to any employee of SMH-P arising out of and in the course of his employment by SMH-P;

(l)     Any claim for damages arising out of a physician's personal risk for direct medical care services rendered to a patient, but not the derivative, vicarious or other imputed liability of SMH-P;

(m)     Bodily injury or property damage due to theft.

4.3  If any insurance is available to any entity or person whose claim for damage is within the scope of coverage as herein defined, the Claimant may receive payment from the Fund only upon providing proof of the exhaustion of all such available insurance proceeds.

4.4  In the event of any payment pursuant to this Agreement, the Trustee agrees that the Trust, and not the Trustee, shall have the sole and complete right of recovery therefor against any person or organization, by way of subrogation or indemnity or otherwise.

## V.   LIMITATIONS

5.1  Regardless of the number of Claimants hereunder, the disbursements or payments made by the Trustee shall be subject to the following limitations:

(a)    The total disbursement from the Fund for all damages because of a covered loss other than property damage sustained by one or more persons as a result of any one occurrence shall not exceed One Million ($1,000,000) Dollars.

(b)    The total disbursement from the Fund for all damages because of a covered loss for property damage sustained by one or more persons or organizations as a result of any one occurrence shall not exceed One Million ($1,000,000) Dollars.

(c)    Subject to the above provisions respecting each occurrence, the total disbursement from the Fund for all damages because of the occurrence of covered losses sustained within one annual period of the Trust shall not exceed Three Million ($3,000,000) Dollars.

## VI.   <u>INVESTMENT OF THE FUND</u>

6.1   The Trustee is hereby authorized to make investments and reinvestments of the Fund in accordance with the laws of the State of Illinois. The Trustee shall invest in such property as the Trustee, in its opinion, shall consider to be consistent with the primary objective of the Manager to preserve the principal of the Fund and with the secondary objective of the Manager to provide growth and income.

6.2   Prior to engaging in an investment plan, the Trustee may consult with the Manager. The receipt by the Trustee of the approval from the Manager for its investment plan shall be conclusive evidence of the propriety of such investment plan by the Trustee.

6.3   The Trustee shall maintain a schedule of expected disbursements from the Fund for covered hospital professional liability and comprehensive general liability losses and for the expenses authorized herein.

6.4   All investments made by the Trustee shall be made with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent individual acting in like capacity and familiar with such matters would use. The Trustee shall use all reasonable care, skill, prudence, and diligence to assure that assets in the Fund are not left uninvested, and in that regard, the Trustee may consult with the Manager in deciding whether to

-10-

leave any portion of the assets of the Fund uninvested. The receipt by the Trustee of the approval from the Manager to leave a portion of the assets of the Fund uninvested shall be conclusive evidence of the propriety of such action by the Trustee.

6.5   The net income and earnings of the Fund shall be accumulated, added to the principal of the Fund, and invested and re-invested.

## VII.  POWERS, RIGHTS, AND DUTIES OF TRUSTEE

7.1   The Trustee shall have the power to take possession of the Trust property, to hold, manage, and control all property at any time forming part of the Fund; to sell, convey, transfer, and otherwise dispose of same from time to time and in such manner, and for such consideration and upon such terms and conditions as the Trustee shall determine, and to collect and receive the monies, interests, profits and income arising therefrom, with full power in the Trustee to manage, administer and control the Fund, except as otherwise provided in this Agreement.

7.2   The Trustee shall have the power to vote, in person or by proxy with respect to any and all securities; to exercise, or sell, options, conversion privileges or rights to subscribe for additional securities and to make payments therefor; to consent to or join in any voting trusts, reorganizations, consolidations, mergers, foreclosures, and liquidations, and in connection therewith to deposit securities with or under the direction of any

-11-

protective committee under such terms as may be advisable, and to accept and hold any securities or other property received through the exercise of any of the foregoing powers.

7.3   The Trustee is hereby authorized and empowered to incur, and pay from the Fund, all reasonable expenses in connection with the management, preservation and administration of the Trust, including reasonable compensation for the services or the fees and charges of such agents as the Trustee may employ in the administration of the Trust hereunder.

7.4   Except as may be herein specifically provided, the Trustee shall have the power to determine in accordance with the Principal And Income Act of Illinois in effect at the time of the determination, or in an equitable manner in those cases not then clearly covered by that law, and in good faith, the allocation or apportionment of all receipts and disbursements between income and principal.

7.5   The Trustee shall not have the power to appoint or engage the services of auditors, financial advisers, or any other agents or to pay reasonable compensation to such appointees, except upon the prior written approval of the Manager.  With  respect  to legal counsel, the Trustee shall use the Manager's counsel, unless the Trustee notifies the Manager in writing that it deems the Manager's counsel not to be independent or for other valid reasons.

7.6   The Trustee shall not have the power to delegate to a co-trustee for any period of time any or all of the Trustee's rights, powers, and duties.

7.7   The Trustee shall not have the power to compromise, contest, prosecute, or abandon claims or other charges in favor of or against the Fund.

7.8   All duties and obligations imposed upon the Trustee by this Agreement shall be carried out with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent individual acting in like capacity and familiar with such matters would use.

7.9   The permissive right of the Trustee to do things enumerated in this Agreement shall not be construed as a duty.

7.10  The Trustee is hereby authorized and empowered to charge any premium on bonds purchased above par value to the principal of the Fund without amortization from the income of the Fund, regardless of any law relating thereto.

7.11  Whenever the Trustee may consult with independent counsel in respect of any of its duties or obligations hereunder, the Trustee shall be fully protected in acting or refraining from acting in accordance with the advice of such counsel.

## VIII.     ACCOUNTS OF TRUSTEE

8.1   The Trustee shall maintain accurate and detailed records and accounts of all transactions hereunder.

-13-

8.2   The Trustee shall submit to the Manager's auditors and to the actuary such evaluations, reports, or other information as they may reasonably require.

8.3   Within thirty (30) days following the close of each quarter after the effective date of this Agreement, or following the close of such other reporting period as may be agreed upon by the Trustee and the Manager, and following the effective date of the removal or resignation of the Trustee, the Trustee shall file with the Manager a written account, hereinafter called "Financial Statement", setting forth the balance in the Fund at the beginning of the period, current period contributions, the amount and nature of final payments, including a separate accounting for claims management, legal expenses, claims paid, actuarial expenses, excess insurance coverage costs, risk management, expenses involved with maintenance of the Fund by the Trustee, and the Fund balance.

8.4   Upon the receipt by the Trustee of the Manager's written approval of any such Financial Statement, or upon the expiration of sixty (60) days after delivery of any such Financial Statement (as originally stated if no objection has been theretofore filed by the Manager, or as theretofore adjusted pursuant to agreement between the Manager and the Trustee), said Financial Statement shall be deemed to be approved by the Manager except as to matters, if any, covered by written objections theretofore delivered to the

-14-

Trustee by the Manager regarding which the Trustee has not given an explanation, or made adjustments, satisfactory to the Manager. Upon expiration of said sixty (60) day period, the Trustee shall be released and discharged as to all items, matters, and things set forth in such Financial Statement which are not covered by such written objections as if such Financial Statements had been settled and allowed by a decree of a court having jurisdiction regarding such Financial Statement and of the Trustee, SMH-P, and all persons having or claiming to have any interest in the Fund. The Trustee, nevertheless, shall have the right to have its accounts settled by judicial proceedings if it so elects, in which event the Manager and the Trustee shall be the only necessary parties.

IX.  <u>RESIGNATION, REMOVAL AND SUCCESSION OF TRUSTEE</u>

9.1  The Manager may remove the Trustee at any time and appoint a successor to replace the Trustee (the "Successor Trustee") and such removal or appointment shall become effective when written notice is provided to the Trustee by the Manager, and an acceptance of the Trust signed by the Successor Trustee, is delivered to the Trustee.

9.2  The Trustee may resign by delivering to the Manager a written resignation to take effect ninety (90) days after the delivery thereof to the Manager unless otherwise agreed to by the Manager, the Trustee, and the Successor Trustee.

-15-

9.3  All of the provisions set forth herein with respect to the Trustee shall relate to each Successor Trustee with the same force and effect as if such Successor Trustee originally had been named herein as the Trustee.

9.4  Upon the appointment of a Successor Trustee, the removed or resigning Trustee shall transfer and deliver the Fund to such Successor Trustee, after reserving such reasonable amount as it shall deem necessary to provide for any sums chargeable against the Fund for which it may be liable. No Successor Trustee shall be liable for acts or omissions of any prior Trustee or be obliged to examine the accounts, records or acts of any prior Trustee or Trustees.

9.5  Any corporation or association into which the Trustee may be converted or merged, or with which it may be consolidated, or to which it may sell or transfer its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any such conversion, sale, merger, consolidation, or transfer to which it is a party, ipso facto, shall be and become Successor Trustee hereunder with the same effect as though originally so named.

9.6  Every Successor Trustee appointed hereunder shall execute, acknowledge, and deliver to its predecessor and also to the Manager a written instrument accepting such appointment and thereupon the Successor Trustee, without any further act, deed or

conveyance, shall become fully vested with all the estate, properties, rights, powers, trusts, duties, and obligations of its predecessor. The predecessor shall, on the written request of the Manager, execute and deliver an instrument transferring to such Successor Trustee all the estates, properties, rights, powers, and trusts of such predecessor hereunder; and every predecessor Trustee shall deliver all securities and monies held by it as Trustee hereunder to its successor. Should any instrument in writing from the Manager be required by any Successor Trustee for more fully and certainly vesting in such Successor Trustee the estates, rights, powers, and duties hereby vested or intended to be vested in the predecessor, any and all such instruments in writing shall, on request, be executed acknowledged and delivered by the Manager.

## X.   TERMINATION

10.1 The Trust shall terminate upon final resolution of all cases filed on or before June 16, 2041 involving a claim that is covered by the Trust, herein referred to as "Cases". The Trustee shall be responsible for monitoring the status of all Cases and shall notify the Manager that the Trust is scheduled to terminate by delivering to the Manager, at least thirty (30) days prior to the effective date of termination ("Termination Date"), a notice of intent to terminate with a schedule of payees to receive the balance of the Fund upon termination of the Trust.

10.2 As soon as reasonably possible following the Termination Date, the remaining balance of the Fund shall be payable pro rata to all Claimants whose claims were not paid in full by the Trust prior to the Termination Date. In the event that any funds shall remain after the payment in full of all claims, the Trustee may transfer the remaining balance of the Fund to a non-profit charitable 501(c)(3) organization.

10.3 The Trustee shall be fully protected from all liability in making payments under this Part 10 pursuant to the directions of the Manager or independent counsel retained by the Manager.

## XI.   AMENDMENTS

11.1 The Trustee shall have the right to amend this Agreement only by an order of a court of competent jurisdiction.

11.2 No amendment shall be made to this Agreement pursuant to the foregoing provisions without notice to the Manager.

## XII.  CONTROLLING LAW AND LEGAL ACTIONS

12.1 The Trust created hereunder has been established in The State of Illinois and all questions pertaining to its validity, construction, and administration shall be determined in accordance with the laws of that State, and the Trustee is authorized and empowered to invoke the jurisdiction of the Circuit Court of Cook County, whenever the Trustee deems such action necessary in connection with the interpretation of the Agreement or for

-18-

instructions, or with relation to any matters arising out of the administration Of this Trust.

12.2 The Manager shall have the authority to enforce this Agreement on behalf of any and all persons having or claiming any interest in the Fund.

XIII.     <u>MISCELLANEOUS</u>

13.1 No person other than SMH-P dealing with the Trustee shall be required or entitled to see to the application of any money paid or property delivered to the Trustee, or to determine whether or not the Trustee is acting pursuant to authorities granted to it hereunder, or to authorizations or directions herein required. The Certificate of the Trustee that it is acting in accordance with this Agreement shall protect any person relying thereon.

13.2 Neither the creation of this Trust nor anything contained in this Agreement shall be construed as giving any person entitled to benefit hereunder an equity or other interest in the assets, business, or affairs of the Manager.

13.3 This Agreement shall inure to and be binding upon any successor, assign, or any successor or resulting corporation in the event of a merger or consolidation to the same extent to which SMH-P is obligated or benefited hereunder.

13.4 The Trustee shall have no liability arising from this Agreement, except for gross negligence or willful misconduct.

IN WITNESS WHEREOF, the Manager and the Trustee have executed this First Restatement on the date first shown above.

Manager:

St. Margaret's Health – Peru and
St. Margaret's Health – Spring
Valley

BY:  _____
        [_____]

Trustee:

_____
[Trustee]

# EXHIBIT 2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ST. MARGARET'S HEALTH – PERU | ) | Case No. 23-11641 |
| and ST. MARGARET'S HEALTH – | ) | (Jointly Administered) |
| SPRING VALLEY, | ) | |
| | ) | Honorable David D. Cleary |
| Debtors. | ) | |
| | ) | |

**NOTICE OF (A) CONFIRMATION; (B) EFFECTIVE DATE;
AND (C) BAR DATES FOR FILING ADMINISTRATIVE CLAIMS,
PROFESSIONAL FEE CLAIMS, AND REJECTION CLAIMS**

**PLEASE TAKE NOTICE THAT:**

1.       **Confirmation of the Plan.**  On June ___, 2024 (the "**Confirmation Date**"), the *Joint Liquidating Plan Proposed by the Debtors and Official Committee of Unsecured Creditors* (the "**Plan**")[1] proposed jointly by St. Margaret's Health – Peru and St. Margaret's Health – Spring Valley (collectively, the "**Debtors**," and each, a "**Debtor**") and the Official Committee of Unsecured Creditors (the "**Committee**") was confirmed by order [Docket No. ____] (the "**Confirmation Order**") of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "**Bankruptcy Court**"), in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). The Confirmation Order approves the Plan. A copy of the Confirmation Order, which attaches the Plan as its Exhibit 1, is available at the website for the Chapter 11 Cases maintained by the Debtors' claims, noticing and solicitation agent, Epiq Corporate Restructuring, LLC, at https://dm.epiq11.com/stmargarets, or upon written request to the undersigned counsel.

2.       **Effective Date.**  Except as otherwise provided by the Plan, the "**Effective Date**" of the Plan shall be _____, 2024.

3.       **Claims Bar Dates.**

    a.   **Administrative Claims.**  Any Person requesting allowance and payment of an Administrative Claim (other than a 503(b)(9) Claim or Professional Fee Claim) for goods and/or services provided to the Debtor on or after May 2, 2024,[2] shall file with the Bankruptcy Court a request, in accordance with section 503(a) of the Bankruptcy Code, for allowance and payment of such

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms by the Plan.

[2] Previous Bankruptcy Court-approved deadlines applied to 503(b)(9) Claims and Administrative Claims accruing prior to May 2, 2024. *See* ECF Nos. 177, 353. Professional Fee Claims are discussed below.

Administrative Claim, along with all documentation supporting such Administrative Claim, no later than thirty (30) days after the Effective Date – *i.e.*, **on or before _____, 2024**. Any objection to such a request for payment, if any, must be written, filed with the Bankruptcy Court, and served on the applicable parties within twenty-one (21) days after such request is filed. Failure by the holder of such Administrative Claim to timely file a request for allowance and payment of such Administrative Claim shall result in such Administrative Claim being disallowed and expunged in its entirety, with the affected creditor having been deemed to waive its right to a distribution from the Estates or the Creditor Trust on account of such Administrative Claim.

b. **Professional Fee Claims.** Any Professional requesting allowance and payment of a Professional Fee Claim shall be entitled to file a final application for allowance and payment of such claim until not later than thirty (30) days after the Effective Date – *i.e.*, **on or before _____, 2024**. Any objection to such application for payment, if any, must be written, filed with the Bankruptcy Court, and served upon the applicable parties within twenty-one (21) days after such application is filed. Failure by a Professional to timely file an application for allowance and payment of a Professional Fee Claim shall result in such Professional Fee Claim being disallowed and expunged in its entirety, with the affected Professional having been deemed to waive its right to a distribution from the Estates or the Creditor Trust on account of such Professional Fee Claim.

c. **Rejection Claims.** All proofs of Claim with respect to Claims arising from the rejection of executory contracts and unexpired leases pursuant to Section 6.1 of the Plan and/or the Confirmation Order shall, unless another order of the Bankruptcy Court provides for a different date, be filed with the Bankruptcy Court by no later than thirty (30) days after the Effective Date – *i.e.*, **on or before _____, 2024**. The Claims of any creditor arising from the rejection of executory contracts and unexpired leases pursuant to the Plan and/or Confirmation Order that fails to timely file a proof of Claim shall be released, discharged and forever barred from assertion against the Debtors, their Estates or their property, the Creditor Trust, or the Creditor Trust Assets.

4. **Dissolution of the Committee.** Pursuant to Section 7.04 of the Plan, the Committee dissolved upon the Effective Date, with its members released of their duties and responsibilities in connection with the Chapter 11 Cases or the Plan and its implementation. The retention or employment of the Committee's counsel has terminated, except for ministerial duties or any duties imposed pursuant to the Plan (including, without limitation, filing applications for allowance and payment of Professional Fee Claims).

5. **Creditor Trustee.** Pursuant to Section 8.03 of the Plan, on the Effective Date, the Creditor Trustee will be Michael A. Brandess of Husch Blackwell LLP, 120 S. Riverside Plz., Ste. 2200, Chicago, IL 60606, (312) 655-1500, michael.brandess@huschblackwell.com.

6.    **Counsel to the Creditor Trustee.**  After the Effective Date, all inquiries should be directed to: [TO BE INSERTED].

7.    **SIR Trustee.**  Pursuant to Section 9.03 of the Plan and the *Plan Supplement* [Docket No. 385], on the Effective Date, the SIR Trustee will be Michael L. Gesas of Gesas Consulting Group, 77 South Birch Road, Unit 14D, Fort Lauderdale, FL 33316, (312) 218-8100, michael.gesas@gesasconsult.com.

8.    **Notice.**  A copy of this notice will be served by CM/ECF and/or first-class mail, postage prepaid, to: (a) all Potential Creditors[3]; (b) all holders of record of equity security interests in the Debtors; (c) the U.S. Securities and Exchange Commission; (d) the Office of the U.S. Trustee for Region 11; (e) counsel to the Committee; (f) counsel to Spring Valley City Bank; and (g) all other parties who have requested notice and service of all documents in the Chapter 11 Cases.

Dated: _____, 2024

By: _____           By: _____

Erich S. Buck, Esq.                     Jack R. O'Connor, Esq.
Steven B. Chaiken, Esq.             Elizabeth B. Vandesteeg, Esq.
Adelman & Gettleman, Ltd.          Levenfeld Pearlstein, LLC
53 West Jackson Blvd, Suite 1050    120 S. Riverside Plz., Ste. 1800
Chicago, Illinois 60604              Chicago, Illinois 60606
Tel: (312) 435-1050                 Tel: (312) 346-8380
ebuck@ag-ltd.com                  joconnor@lplegal.com
schaiken@ag-ltd.com              evandesteeg@lplegal.com
*Counsel for the Debtors*            *Counsel for the Committee*

---

[3] "**Potential Creditors**" means all entities: (a) listed in the Schedules as holding liquidated, non-contingent, and undisputed claims against a Debtor; (b) that have filed a proof of claim or request for allowance of an section 503(b)(9) administrative expense in the Chapter 11 Cases as of the applicable Bar Date; (c) listed as counterparties to unexpired leases or executory contracts in the Debtors' amended Schedules G filed on April 17, 2024; or (d) with whom the Debtors did business after the Petition Date and may therefore hold postpetition administrative expense claims.